## CIRCUIT COURT FOR HAMILTON COUNTY
### State of Tennessee

SHANDLE MARIE RILEY,

       *Plaintiff,*

~V~

HAMILTON COUNTY
GOVERNMENT,

DEPUTY DANIEL WILKEY,
In his capacity as a deputy sheriff
for Hamilton County Government and
in his individual capacity,

DEPUTY JACOB GOFORTH,
In his capacity as a deputy sheriff
for Hamilton County Government and
in his individual capacity,

       *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

No. **19C1101**

**JURY DEMAND**



### COMPLAINT

PLAINTIFF, for her causes of action, will show the Court:

**Introduction:**

    1.    This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to Plaintiff by the First, Fourth, and Fourteenth Amendments to the United States Constitution and for violations of the laws of the State of Tennessee by the Defendants.

    2.    Plaintiff further brings this action against the Defendant, Hamilton County Government ("County") pursuant to TENN. CODE ANN. § 8-8-302.

    3.    Plaintiff avers that the individually named defendant, Deputy Daniel Wilkey ("Wilkey"), acted as a deputy sheriff, agent, and law enforcement officer employed by the

~ 1 ~

DEFENDANT COPY

County and was at all times relevant to this matter acting under color of law and under color of his office with the County.

4.     Plaintiff avers that the individually named defendant, Deputy Jacob Goforth ("Goforth"), acted as a deputy sheriff, agent, and law enforcement officer employed by the County and was at all times relevant to this matter acting under color of law and under color of his office with the County.

5.     Plaintiff maintains that the individual Defendants committed these violations, further set forth herein, as a result of policies, customs, practices, and/or procedures of the County.

6.     In addition, Plaintiff avers that individual Defendants' acts and omissions subjected Plaintiff to mental anguish, humiliation, and emotional distress.

**Jurisdiction and Venue:**

7.     This is an action to redress the deprivation of rights secured to Plaintiff by the First, Fourth, and Fourteenth Amendments to the United States Constitution and for violations of Tennessee common law. Thus, as to the § 1983 claims, this Court is vested with original jurisdiction pursuant to the authority stated in Haywood v. Drown, 556 U.S. 729 (2009) and Poling v. Goins, 713 S.W.2d 305, 306 (Tenn. 1986). This Court is vested with original jurisdiction over Plaintiff's state claims pursuant to TENN. CODE ANN. § 16-10-101, et seq.

8.     Venue is proper in this Court pursuant to TENN. CODE ANN. § 20-4-102. All acts complained of occurred within Hamilton County.

    a.   Plaintiff is a resident of Hamilton County, Tennessee.

b. To the best of Plaintiff's knowledge, the individual Defendants are residents of Hamilton County, Tennessee, or in the alternative, perform their livelihood as employees of the County within Hamilton County, Tennessee.

c. The County is a political sub-division of the State of Tennessee.

**The Parties:**

9. At all times relevant to this cause of action, Plaintiff was a citizen of the United States and a resident and a citizen of the State of Tennessee.

10. At all times relevant to this cause of action, the County was a political sub-division of the State of Tennessee organized and existing under the laws of the State of Tennessee.

a. The County finances its law enforcement department identified and averred as the Hamilton County Sheriff's Department ("sheriff's department") and provides rules and regulations for the operation of the sheriff's department.

b. The County provides oversight of the hiring, training, discipline, and retention of all personnel in its law enforcement department.

11. At all times relevant to this cause of action, the County is responsible for the creation and maintenance of its sheriff's department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee as to:

a. The safe and humane treatment of all persons taken into and held in the custody of its sheriff's deputies and to not treat such person with unnecessary rigor.

b. The training and certification of its law enforcement employees.

~ 3 ~

    c.       The safety of persons detained or otherwise within the custody of its individual deputies[1] and agents.

    d.       To properly and promptly investigate claims of misconduct by its officers and to ensure that officers who pose a risk of harm to the Plaintiff in particular and the public as a whole are not performing law enforcement duties.

12.    Plaintiff brings this action against the County.

13.    At all times relevant to this cause of action, the County employed the individual Defendants who in turn were appointed by the sheriff as sheriff's deputies. The individual Defendants acted under the color of their office and under the color of law, statute, ordinance, regulation, custom, or usage of the County. In addition:

    a.       At all times relevant to this cause of action, the individual Defendants acted in their official capacities as employees for the County as defined under TENN. CODE ANN. § 29-20-102.

    b.       At all times relevant to this cause of action, the individual Defendants acted by virtue of or under the color of their offices as a deputy sheriff pursuant to TENN. CODE ANN. § 8-8-302.

    c.       Plaintiff sues the individual Defendants in their individual capacities.

**Factual Basis:**

**Individual Defendants:**

14.    On February 6, 2019, between 10pm and 11pm, Plaintiff was alone driving a white, 2016 Chrysler 300.

---

[1] Hereinbefore and after the terms, "officers" and "deputies" are used interchangeably to refer to all of the County's law enforcement and correctional employees.

15.     Plaintiff pulled into a Mapco gas station.

16.     Wilkey was also at the same gas station.

17.     Plaintiff exited her vehicle, entered the gas station and paid for cigarettes and gas.

18.     Plaintiff completed her purchases and drove away from the gas station to the residence of Diane King ("King") where Plaintiff intended to visit her minor child.

19.     As Plaintiff pulled into King's driveway, Wilkey initiated a traffic stop of Plaintiff without any justification.

20.     Wilkey approached Plaintiff as she sat in her vehicle and ordered Plaintiff to exit the vehicle.

21.     Without any lawful justification, Wilkey told Plaintiff that he believed Plaintiff possessed methamphetamine.

22.     Plaintiff complied with Wilkey's order to exit her vehicle.

23.     Without any lawful justification, Wilkey then conducted a search of the Plaintiff's person by feeling, through Plaintiff's clothing, her breasts, abdomen, buttocks, inner thighs, and her crotch.

24.     Without any lawful justification, Wilkey further ordered Plaintiff to reach under her shirt and pull out her bra and shake the bra and shirt.

25.     Plaintiff asked Wilkey if a female officer should not be present to conduct the search as described herein, and Wilkey stated that "the law" did not require a female officer to conduct the search.

26.     Wilkey, without any Miranda warnings, asked Plaintiff if she had anything illegal in her vehicle. Plaintiff stated she had a "roach" in a pack of cigarettes, and she gave Wilkey the pack.

~ 5 ~

27.    A second, unidentified deputy arrived. Plaintiff describes this unidentified deputy as a white male with a bald head.

28.    Wilkey conducted a search of Plaintiff's vehicle.

29.    During the vehicle search, Wilkey continually insulted the Plaintiff, telling her she was a "piece of sh*t" and that Plaintiff was lying about not having other drugs in the vehicle. Wilkey further told Plaintiff that he knew she had a criminal record.

30.    Other than the "roach" Plaintiff produced, Wilkey did not find any other contraband.

31.    Wilkey then approached Plaintiff and asked her if she was "saved" and believed in Jesus Christ.

32.    Plaintiff stated that she believed in Jesus Christ, but that she was not "saved" by her own choice.

33.    Wilkey then told Plaintiff that God was talking to him during the vehicle search, and Wilkey felt the Lord wanted him to baptize the Plaintiff.

34.    Wilkey further told Plaintiff that he felt "the spirit."

35.    Sometime during this dialogue about baptism, the unidentified deputy left the scene.

36.    Wilkey told Plaintiff to go inside King's residence and get two towels for the baptism.

37.    Wilkey told Plaintiff that if she would let him baptize her, he would issue her only a criminal citation for marijuana and not take her to jail. Wilkey further told Plaintiff he would also go to court and speak to the judge on her behalf.

a. At no time did Wilkey ever court on Plaintiff's behalf and speak to the judge.

38. Plaintiff went inside as directed by Wilkey and got two towels.

39. King, who was inside, asked Plaintiff why she needed the towels, and Plaintiff told King that Wilkey said he would not take her to jail and he would go to court and speak to the judge on her behalf if she allowed Wilkey to baptize her.

40. King asked Plaintiff if it was safe for Wilkey to baptize her, and Plaintiff said she was not sure, but that she would find out and she would be baptized if it helped her avoid going to jail.

41. Plaintiff went back outside with the two towels, and Wilkey told her to drive her vehicle and follow him.

42. Wilkey did not say where he was taking her. At no time did Plaintiff feel free to simply ignore Wilkey and not do as he commanded.

43. Plaintiff followed Wilkey to a boat ramp at Soddy Lake near the corporate limits of Soddy-Daisy, Tennessee.

44. Goforth arrived in his patrol car at the same time as Wilkey and Plaintiff arrived at the boat ramp.

45. Goforth exited his vehicle, and stood by and observed Wilkey and Plaintiff.

46. Wilkey told Plaintiff that Goforth was present because, in order for a baptism to be valid, a witness must "attest" to the ritual.

47. Wilkey then stripped nearly naked, with only his boxer shorts on.

48. Wilkey then gave Plaintiff the option to strip too, but Plaintiff declined.

~ 7 ~

49.     Wilkey then lead Plaintiff into the near waist deep and frigid water, placed one hand on Plaintiff's back, and his other hand on Plaintiff's breasts, and completely submerged Plaintiff under the water.

50.     Wilkey held Plaintiff under water for several moments, then with his hands still positioned on her back and breasts, raised Plaintiff from the cold water.

51.     Plaintiff was shivering uncontrollably, and felt horribly violated.

52.     Wilkey used one towel to dry off while Plaintiff used the other one. Wilkey returned the towel to Plaintiff.

53.     Goforth smirked at Plaintiff as she was drying herself off. At no time did Goforth ever intervene to stop Wilkey nor did he ever report Wilkey's actions to anyone within his chain of command at the County nor any other entity or persons whatsoever.

**County:**

### *Rodney Terrell*

54.     The County failed to suspend or terminate county corrections officer Rodney Terrell ("Terrell") after Terrell unlawfully used a Taser on Nancy Mason ("Mason") while in the custody of the Sheriff in March 2015.

55.     In an effort to cover-up his unreasonable use of force on Mason, Terrell wrote a use of force report wherein he falsely claimed a justified use of the Taser on Mason, which 3 of Terrell's supervisors holding the ranks of Lieutenant, Captain, and Administration approved and endorsed as Terrell having "followed Policy/Training."

56.     However, the County then reopened the investigation as to Terrell's use of force on Mason, and merely reprimanded Terrell.

57.     Despite a finding by the Sheriff's own Internal Affairs investigation that Terrell used excessive force on Mason and that the force caused Mason to suffer a serious fractured arm, the Sheriff merely stated the following in regard to the incident:

> "Policy needs review & better clarification made. It appears the employees involved had no malicious intent, but training & policies need to be addressed with each employee involved."

58.     Despite a finding by the Sheriff's own Internal Affairs investigation that Terrell used excessive force on Mason and that the force caused Mason to suffer a serious fractured arm, the County did not suspend or terminate Terrell. Rather, sometime later, the County actually promoted Terrell to the rank of Lieutenant.

### *Daniel Hendrix*

59.     On August 15, 2015, the late Deputy Daniel Hendrix ("Hendrix") savagely assaulted a fully handcuffed and shackled prisoner identified as Leslie Hayes ("Hayes") at the Silverdale Complex.

60.     This assault was captured in its entirety on video.

61.     Hendrix then lied to Sheriff's Department investigators about his assault upon Hayes and lied when he brought false felony criminal charges against Hayes, which were later dismissed.

62.     Although criminal charges were brought against Hendrix, they were eventually dropped based upon a false claim that County authorities did not know the whereabouts of Hayes to prosecute Hendrix despite the fact the County knew Hayes was held in the Sequatchie County Jail. County authorities could have easily transported Hayes to Hamilton County to allow her to testify against Hendrix but refused or failed to do so.

~ 9 ~

63.     Subsequent to the state's dismissal of the criminal charges against him, the county returned Hendrix to his full duties as a Deputy.

64.     On March 29, 2017, Hendrix was shot and killed by law enforcement after Hendrix became violent with two female Chattanooga Police officers while celebrating Hendrix's birthday.

65.     Upon Chattanooga Police law enforcement's arrival, Hendrix drew his County issued gun, became agitated and refused commands to drop the weapon, whereupon law enforcement shot and killed Hendrix.

66.     Despite the full knowledge of Hendrix's propensity to use extreme violence against citizens in general, the County allowed Hendrix to return to full duty with the full use and benefit of his county issued gun.

## *Edmond Blake Kilpatrick*

67.     Edmond Blake Kilpatrick ("Kilpatrick") was hired by the County sometime in 2009 as a deputy sheriff. At the present time, he is a detective with the sheriff's department.

68.     Prior to his employment by the County, Kilpatrick was a defendant in an Order of Protection petition filed by Sylvana Johnson ("Johnson") in Meigs County, Tennessee under case number OP370. This Petition was at the time the County employed Kilpatrick, a public record and readily available to anyone.

69.     In the petition, Johnson claimed that Kilpatrick forced his way into her residence, attacked a person she named "Matt," as well as herself.

70.     Forced entry into a residence to commit a crime therein constitutes the state felony of aggravated burglary.

~ 10 ~

71. Kilpatrick stands accused of killing Christopher Sexton in U.S. District Court Case No. 1:18-cv-17.

72. Kilpatrick also stands accused of beating Charles Toney, Jr. ("Toney"), which was recorded by a bystander.

73. In this recording, while handcuffed and on the ground, Kilpatrick is beating and pummeling Toney without any lawful and believable justification.

74. This video recorded beating happened on December 3, 2018.

75. The recording was "viral" on "YouTube," and was the focus of much media exposure to the command staff of the County's sheriff's department.

76. It was not until on or about December 19, 2018, that the County, through its sheriff's department, placed Kilpatrick on suspension (with pay) pending further investigations by federal authorities.

77. Although the office of the District Attorney General for Hamilton County referred the Kilpatrick matter to federal authorities some days prior to December 19, 2018, the suspension happened almost immediately after much pressure from two Hamilton County Commissioners, the local chapter of the NAACP, and local grass-roots protests.

### *Sheriff Jim Hammond*

78. The sheriff of the County is Jim Hammond ("Hammond").

79. In 2012, when addressing civic leaders about black gang members Hammond said the following: "We need to run them out of town, put them in jail or send them to the funeral home."

80. In response to the conduct of Kilpatrick, and in response to a video recorded beating, strip search, and anal cavity search of a handcuffed James Mitchell (that happened on

July 10, 2019) by Wilkey and Deputy Bobby Brewer, Hammond stated he stood by his deputies, that the same deputies were "seasoned" officers, "good" officers, and that he stood by their "ability and training."

81.     Despite Wilkey's questionable killing of an unarmed man by gunshot to the head while Wilkey worked for the Rhea County Sheriff, Hammond approved the hire of Wilkey as a deputy for the County.

82.     Consequently, by setting the example through Terrell, Hendrix, Kilpatrick, and Hammond, the County created an environment that allowed the individual Defendants to believe that abusive behavior would not be properly monitored, investigated, nor punished and was tantamount to a policy of the County. This failure constitutes deliberate indifference by the County and was the direct and proximate cause of Plaintiff's damages, and suffering and mental and physical injuries.

**Count One:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Freedom from Religion**

83.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

84.     The individual Defendants had non-delegable duties to not force Plaintiff to participate in the religious ritual of baptism. Goforth had the absolute duty to intervene and prevent Wilkey from forcing Plaintiff to baptism against her will.

85.     The individual Defendants had non-delegable duties to report the misconduct of their fellow defendant to the command staff of the County's sheriff's department.

86.     No reasonable law enforcement officer would have acted in this manner.

87.     In addition, the failure of the individual Defendants to intervene and stop the others in their actions as set forth herein and their failure to report the misconduct of their fellow officers constituted a joint effort in which they participated as equals.

88.     The County's continued employment of Terrell and Hendrix and the County's failure to discipline Terrell and Hendrix in any meaningful manner, created an atmosphere that other County employees, including the individual defendants, could act in a similar manner, and thus not be punished in any significant way.

89.     The County's promotion of Terrell to lieutenant after his unnecessary use of force against Nancy Mason created an atmosphere that other County employees, including the individual defendants, could act in a similar manner, and thus not be punished in any significant way.

90.     The County's employment of Kilpatrick despite his history of violence against women during the commission of at least one felony, the continued display of violence in the unnecessary killing of Christopher Sexton, the promotion of Kilpatrick to a detective position, and the delay suspension of Kilpatrick despite overwhelming video evidence of Kilpatrick's propensity to use violence against a helpless and handcuffed arrestee created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

91.     The County's employment of Wilkey despite his history of violence against an unarmed person created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

92.     Hammond's comments created an atmosphere that other County employees, including the individual Defendants, could act as they have in this instance, and thus not be punished in any significant way.

93.     The failures of the County set forth in previous paragraphs constituted deliberate indifference on the part of the County, created an environment that allowed the misconduct of the individual Defendants against the Plaintiff, constituted a policy of the County, and was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

94.     The County hired Kilpatrick despite Kilpatrick's 2006 history of extreme violence. The County's employment of Kilpatrick was either with the full knowledge of the Meigs County incident, and thus condoned by the County, or was a product of a slip-shod vetting process before hiring Kilpatrick. Either way, the County's employment of Kilpatrick constituted a message to other County employees, including the individual Defendants, that no matter your conduct, you can become employed with the County as a deputy sheriff.

95.     The failures of the County in regard to Kilpatrick's employment created an environment that allowed the misconduct of the individual Defendants against the Plaintiff, constituted a policy of the County, and was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

96.     The individual Defendants acted under color of law and their negligence and intentional acts along with the deliberate indifference of the County deprived the Plaintiff of her rights secured to her under the First and Fourteenth Amendments to United States Constitution to be free from the imposition of religion upon her without the Due Process of Law.

96.     Plaintiff sues the County and the individual Defendants in their official and individual capacities under this Count.

**Count Two:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Failure to Protect and Render Aid**

96.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

97.     Both individual Defendants had non-delegable duties to intervene and prevent his fellow defendant from forcing Plaintiff to participate in a baptism against her will. No reasonable law enforcement officer would have acted in this manner.

98.     The individual Defendants had non-delegable duties to report the misconduct of their fellow defendants to the command staff of the County's sheriff's department.

99.     Once the Plaintiff was in the joint custody of the individual Defendants there existed a special relationship between the Plaintiff and all Defendants.

100.     Once Plaintiff was in the custody of the individual Defendants, they had an affirmative duty to protect Plaintiff from injury from one another and to report the misconduct of their fellow co-defendants to those charged with the oversight of officer conduct.

101.     The County had a non-delegable duty to ensure that it properly trained officers to intervene when fellow officers acted as Wilkey and Goforth did in this matter.

102.     The failure of the individual Defendants to intervene and stop the other in his actions as set forth herein and their failure to report the misconduct of their fellow officers constituted a joint effort in which they participated as equals.

103.     The County's continued employment of Terrell and Hendrix and the County's failure to discipline Terrell and Hendrix in any meaningful manner, created an atmosphere that

~ 15 ~

other County employees, including the individual defendants, could act in a similar manner, and thus not be punished in any significant way.

104. The County's promotion of Terrell to lieutenant after his unnecessary use of force against Nancy Mason created an atmosphere that other County employees, including the individual defendants, could act in a similar manner, and thus not be punished in any significant way.

105. The County's employment of Kilpatrick despite his history of violence against women during the commission of at least one felony, the continued display of violence in the unnecessary killing of Christopher Sexton, the promotion of Kilpatrick to a detective position, and the delay suspension of Kilpatrick despite overwhelming video evidence of Kilpatrick's propensity to use violence against a helpless and handcuffed arrestee created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

106. The County's employment of Wilkey despite his history of violence against an unarmed person created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

107. Hammond's comments created an atmosphere that other County employees, including the individual Defendants, could act as they have in this instance, and thus not be punished in any significant way.

108. The failures of the County set forth in previous paragraphs constituted deliberate indifference on the part of the County, created an environment that allowed the misconduct of the individual Defendants against the Plaintiff, constituted a policy of the County, and was the

direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

109.    The County hired Kilpatrick despite Kilpatrick's 2006 history of extreme violence. The County's employment of Kilpatrick was either with the full knowledge of the Meigs County incident, and thus condoned by the County, or was a product of a slip-shod vetting process before hiring Kilpatrick. Either way, the County's employment of Kilpatrick constituted a message to other County employees, including the individual Defendants, that no matter your conduct, you can become employed with the County as a deputy sheriff.

110.    The failures of the County in regard to Kilpatrick's employment created an environment that allowed the misconduct of the individual Defendants against the Plaintiff, constituted a policy of the County, and was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

111.    The individual defendants acted under color of law and their negligence and intentional acts along with the deliberate indifference of the County deprived the Plaintiff of her rights secured to her under the Fourteenth Amendment to United States Constitution to be free from injury and/or harm while in the custody of the individual Defendants and the County.

112.    Plaintiff sues the County and the individual Defendants in their official and individual capacities under this Count.

**Count Three:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Unreasonable Seizure**

113.    Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

Case 1:19-cv-00304-TRM-CHS    Document 1-1    Filed 10/29/19    Page 17 of 29
PageID #: 20

114.    The individual Defendants had a non-delegable duty to refrain from seizing Plaintiff without probable cause for the purpose of a baptism.

115.    Wilkey had no lawful basis to coerce Plaintiff into obtaining towels, following Wilkey to a remote location, and participate in a baptism in exchange for not going to jail. No reasonable law enforcement officer would have acted in this manner.

116.    The County's continued employment of Terrell and Hendrix and the County's failure to discipline Terrell and Hendrix in any meaningful manner, created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

117.    The County's promotion of Terrell to lieutenant after his unnecessary use of force against Nancy Mason created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

118.    The County's employment of Kilpatrick despite his history of violence against women during the commission of at least one felony, the continued display of violence in the unnecessary killing of Christopher Sexton, the promotion of Kilpatrick to a detective position, and the delay suspension of Kilpatrick despite overwhelming video evidence of Kilpatrick's propensity to use violence against a helpless and handcuffed arrestee created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

119.    The County's employment of Wilkey despite his history of violence against an unarmed person created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

120.    Hammond's comments created an atmosphere that other County employees, including the individual Defendants, could act as they have in this instance, and thus not be punished in any significant way.

121.    The failures of the County set forth in previous paragraphs constituted deliberate indifference on the part of the County, created an environment that allowed the misconduct of the individual Defendants against the Plaintiff, constituted a policy of the County, and was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

122.    The County hired Kilpatrick despite Kilpatrick's 2006 history of extreme violence. The County's employment of Kilpatrick was either with the full knowledge of the Meigs County incident, and thus condoned by the County, or was a product of a slip-shod vetting process before hiring Kilpatrick. Either way, the County's employment of Kilpatrick constituted a message to other County employees, including the individual Defendants, that no matter your conduct, you can become employed with the County as a deputy sheriff.

123.    The failures of the County in regard to Kilpatrick's employment created an environment that allowed the misconduct of the individual Defendants against the Plaintiff, constituted a policy of the County, and was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

124.    The individual Defendants acted under color of law and their negligence and intentional acts along with the deliberate indifference of the County deprived the Plaintiff of her rights secured to her under the Fourth Amendment to United States Constitution to be free from unreasonable seizures.

125.     Plaintiff sues the County and the individual Defendants in their official and individual capacities under this Count.

**Count Four:**
**Violation of Civil Rights Under**
**Color of Law 42 U.S.C. §1983 –**
**Unreasonable Search**

126.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

127.     Wilkey had a non-delegable duty to refrain from searching the Plaintiff without probable cause by touching her genitals in such a manner as to constitutes a criminal sexual battery. No reasonable law enforcement officer would have acted in this manner.

128.     Wilkey had no lawful basis to, in essence, fondle Plaintiff. Goforth had no lawful basis to participate as an equal with Wilkey as Wilkey fondled and submerged the Plaintiff in freezing water.

129.     The County's continued employment of Terrell and Hendrix and the County's failure to discipline Terrell and Hendrix in any meaningful manner, created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

130.     The County's promotion of Terrell to lieutenant after his unnecessary use of force against Nancy Mason created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

131.     The County's employment of Kilpatrick despite his history of violence against women during the commission of at least one felony, the continued display of violence in the unnecessary killing of Christopher Sexton, the promotion of Kilpatrick to a detective position,

and the delay suspension of Kilpatrick despite overwhelming video evidence of Kilpatrick's propensity to use violence against a helpless and handcuffed arrestee created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

132.    The County's employment of Wilkey despite his history of violence against an unarmed person created an atmosphere that other County employees, including the individual Defendants, could act in a similar manner, and thus not be punished in any significant way.

133.    Hammond's comments created an atmosphere that other County employees, including the individual Defendants, could act as they have in this instance, and thus not be punished in any significant way.

134.    The failures of the County set forth in previous paragraphs constituted deliberate indifference on the part of the County, created an environment that allowed the misconduct of the individual Defendants against the Plaintiff, constituted a policy of the County, and was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

135.    The County hired Kilpatrick despite Kilpatrick's 2006 history of extreme violence. The County's employment of Kilpatrick was either with the full knowledge of the Meigs County incident, and thus condoned by the County, or was a product of a slip-shod vetting process before hiring Kilpatrick. Either way, the County's employment of Kilpatrick constituted a message to other County employees, including the individual Defendants, that no matter your conduct, you can become employed with the County as a deputy sheriff.

136.    The failures of the County in regard to Kilpatrick's employment created an environment that allowed the misconduct of the individual Defendants against the Plaintiff,

constituted a policy of the County, and was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

137.   The individual Defendants acted under color of law and their negligence and intentional acts along with the deliberate indifference of the County deprived the Plaintiff of her rights secured to her under the Fourth Amendment to United States Constitution to be free from unreasonable searches.

138.   Plaintiff sues the County and the individual Defendants in their official and individual capacities under this Count.

**Count Five:**
**Negligence**

139.   Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

140.   As stated previously, the individual Defendants, at the time of the events averred in this Complaint, acted under the color of their offices as deputy sheriffs for the County.

141.   TENN. CODE ANN. § 8-8-302, allows anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff to bring suit against the County.

142.   The Tennessee Constitution, article 1, section 13, prohibits the treatment of Plaintiff upon arrest and confinement with unnecessary rigor. Consequently, the individual Defendants had an affirmative and non-delegable duty to not treat the Plaintiff in the manner averred in this Complaint.

143.   The individual Defendants' failures to protect Plaintiff from one another, to not force Plaintiff to participate in a baptism, to not seize Plaintiff without probable cause, and to not

search Plaintiff in the manner described herein, were the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

144. The County, as stated in this Complaint, had an affirmative duty to properly supervise, discipline, and train its deputies to not use act as averred herein, to report fellow deputy misconduct, and to not hire persons as deputies with easily discoverable histories of violence.

145. The failures of the County were the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

146. Plaintiff sues the County and the individual Defendants in their individual and official capacities under this Count.

**Count Six:**
**Battery – Both Individual Defendants**

147. Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

148. The individual Defendants' concerted acts and omissions as averred in this Complaint were not based on any lawful execution of their duties as law enforcement officers. Rather, the individual defendants acted in concert to inflict physical and mental harm upon Plaintiff.

149. The individual Defendants' conduct was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

150. Plaintiff sues the individual Defendants in their individual capacities under this Count.

**Count Seven:**
**Battery – Wilkey**

151. Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

152. Wilkey's acts and omissions in regard to the search at the King residence as averred in this Complaint were not based on any lawful execution of his duties as a law enforcement officer. Rather, the Wilkey acted to inflict physical and mental harm upon Plaintiff and for his own sexual gratification.

153. Wilkey's conduct was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

154. Plaintiff sues Wilkey in his individual capacity under this Count.

**Count Eight:**
**Assault – Both Individual Defendants**

155. Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

156. The individual Defendants' acts and omissions as averred in this Complaint were not based on any lawful execution of their duties as law enforcement officers. Rather, the individual Defendants acted in concert to inflict physical harm upon Plaintiff.

157. The individual defendants' conduct was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

158. Plaintiff sues the individual Defendants in their individual capacities under this Count.

**Count Nine:**
**Assault – Wilkey**

159. Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

160.     Wilkey's acts and omissions in regard to the search at the King residence as averred in this Complaint were not based on any lawful execution of his duties as a law enforcement officer. Rather, the Wilkey acted to inflict physical and mental harm upon Plaintiff and for his own sexual gratification.

161.     Wilkey's conduct was the direct and proximate cause of Plaintiff's injuries both physical and mental, needless suffering, and loss of enjoyment of life.

162.     Plaintiff sues Wilkey in his individual capacity under this Count.

**Count Ten:**
**Intentional Infliction**
**of Emotional Distress –**
**Both Individual Defendants**

163.     Plaintiff incorporates all the prior averments in the previous paragraphs as if fully set forth herein.

164.     At the time of the events averred in this Complaint, a special relationship existed between the individual Defendants and Plaintiff.

165.     Despite their full knowledge of the pain and harm their actions caused Plaintiff during their physical encounter with the Plaintiff, the individual Defendants continued in their actions.

166.     No reasonable deputy would have acted in this manner toward the Plaintiff.

167.     As a direct and proximate cause of the individual Defendants' conduct, Plaintiff has suffered mental injury.

168.     Plaintiff sues the individual Defendants in their individual capacities under this Count.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants both joint and several and requests the following relief:

A. The omissions of the County constituted willful and wanton indifference to and with deliberate disregard for the constitutional civil rights of the Plaintiff. Thus, the Plaintiff is entitled to actual damages, and attorney fees pursuant to 42 U.S.C. §1988.

B. The individual defendants committed their acts against Plaintiff with actual malice toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional civil rights of the Plaintiff. Thus, Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. §1988.

C. The Court to enter judgment against the Defendants and to award Plaintiff compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000).

D. The Court to enter judgment against the individual Defendants and to award Plaintiff punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000).

E. That the Court award costs, and discretionary costs.

F. Any other relief the Court may deem fit and proper.

G. Any other relief the Court may deem fit and proper pursuant to 42 U.S.C. § 1988, and

H. Allow a jury trial on all issues.

Respectfully submitted,

By: _____

**ROBIN RUBEN FLORES**
**TENN. BPR #20751**
**GA. STATE BAR #200745**
Attorney for Plaintiff
4110-A Brainerd Road
Chattanooga, TN 37411
(423) 267-1575
robin@robinfloreslaw.com

~ 26 ~

## CIRCUIT COURT FOR HAMILTON COUNTY
### State of Tennessee

SHANDLE MARIE RILEY,                    §
                                        §
                    *Plaintiff,*        §
                                        §          No. **19C1101**
                                        §
~v~                                     §
                                        §          **JURY DEMAND**
                                        §
HAMILTON COUNTY                         §
GOVERNMENT,                             §
                                        §
DEPUTY DANIEL WILKEY,                   §
In his capacity as a deputy sheriff     §
for Hamilton County Government and      §
in his individual capacity,             §
                                        §
DEPUTY JACOB GOFORTH,                   §
In his capacity as a deputy sheriff     §
for Hamilton County Government and      §
in his individual capacity,             §
                                        §
                    *Defendants.*       §

### SUMMONS

**To:    HAMILTON COUNTY GOVERNMENT**
c/o Rheubin Taylor, County Attorney
625 Georgia Avenue, Room 204
Chattanooga, TN 37402

You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Circuit Court for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the ____1____ day of ___October___, 20_19_

**LARRY HENRY, CLERK**

BY: _____
    DEPUTY CLERK

Attorneys for Plaintiff: _ROBIN RUBEN FLORES_
_____4110 BRAINERD ROAD, CHATTANOOGA, TN 37411_

DEFENDANT COPY

**CIRCUIT COURT FOR HAMILTON COUNTY**
**State of Tennessee**



RECEIVED
OCT 04 2019
HAMILTON
ATTORNEY'S

SHANDLE MARIE RILEY, §
§
   *Plaintiff,* §
§
§
~v~ §
§
§
HAMILTON COUNTY §
GOVERNMENT, §
§
§
DEPUTY DANIEL WILKEY, §
In his capacity as a deputy sheriff §
for Hamilton County Government and §
in his individual capacity, §
§
§
DEPUTY JACOB GOFORTH, §
In his capacity as a deputy sheriff §
for Hamilton County Government and §
in his individual capacity, §
§
§
   *Defendants.* §

No. 19C1101

**JURY DEMAND**



**SUMMONS**

To: **DEPUTY DANIEL WILKEY**
   Hamilton County Sheriff's Office
   600 Market Street
   Chattanooga, TN 37402

   You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Circuit Court for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the 1 day of October, 20 19.

     **LARRY HENRY, CLERK**

     BY: _____
       DEPUTY CLERK

Attorneys for Plaintiff:  ROBIN RUBEN FLORES
     4110 BRAINERD ROAD, CHATTANOOGA, TN 37411

DEFENDANT COPY


**CIRCUIT COURT FOR HAMILTON COUNTY**
**State of Tennessee**

SHANDLE MARIE RILEY,                    §
                                        §
       *Plaintiff,*            §
                                        §
                                        §        No. **19C110l**
~v~                                     §
                                        §        **JURY DEMAND**
HAMILTON COUNTY                         §
GOVERNMENT,                             §
                                        §
DEPUTY DANIEL WILKEY,                   §
In his capacity as a deputy sheriff     §
for Hamilton County Government and      §
in his individual capacity,             §
                                        §
DEPUTY JACOB GOFORTH,                   §
In his capacity as a deputy sheriff     §
for Hamilton County Government and      §
in his individual capacity,             §
                                        §
       *Defendants.*          §

## SUMMONS

**To:**   **DEPUTY JACOB GOFORTH**
      Hamilton County Sheriff's Office
      600 Market Street
      Chattanooga, TN 37402

     You are hereby summoned to answer and make defense to a Bill of Complaint, which has been filed in the Circuit Court for Hamilton County, Tennessee in the above styled case. Your defense to this Complaint must be filed in the office of the Clerk of Circuit Court for Hamilton County, Tennessee on or before thirty (30) days after service of this summons upon you. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

WITNESSED and issued this the ____1____ day of ___October___, 20_19_.

               **LARRY HENRY, CLERK**

               BY: _____
                    **DEPUTY CLERK**

Attorneys for Plaintiff: __ROBIN RUBEN FLORES__
      __4110 BRAINERD ROAD, CHATTANOOGA, TN 37411__

<span style="color:red">**DEFENDANT COPY**</span>