```
1                 UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF TENNESSEE
2                          CHATTANOOGA

3

   SHANDLE MARIE RILEY,
4
        Plaintiff,
5
   v.                          Case No. 1:19-cv-304-TRM-CHS
6
   HAMILTON COUNTY GOVERNMENT,
7
   DANIEL WILKEY,
8  individually and in his capacity as deputy sheriff
   for Hamilton County Government, and
9
   JACOB GOFORTH,
10 individually and in his capacity as deputy sheriff
   for Hamilton County Government,
11
        Defendants.
12

13 _____

14

15

16                 The above-captioned cause came on for
   hearing when and where the following proceedings which
17 were transcribed from an audio recording were had:

18

19

20

21

22 _____
                        PARADOX REPORTING
23                    Denise Parker Gonzalez
                    www.paradoxreporting.com
24                   8000 Highway 99, No. 456
                    Rockvale, Tennessee 37153
25                       (615)225-2210
```

1           **A P P E A R A N C E S**

2

3

4    For the Plaintiffs:

5                        JOHN C. CAVETT, JR.

6                        WILLIAM EUGENE KLAVER

7                        JAMES F. EXUM

8                        ROBIN FLORES

9                        W. GERALD TIDWELL, JR.

10                       JAMES MICAH GUSTER

11

12

     For the Defendants:

13
                         R. DEE HOBBS
14
                         SHARON MILLING
15

16

17

18

19

20

21

22

23

24

25

```
 1                   P R O C E E D I N G S

 2

 3          THE COURT:  First of all, is the connection good?

 4   Is it -- is anyone having trouble hearing me?

 5          UNIDENTIFIED MALE SPEAKER:  I'm not, sir.

 6          THE COURT:  Okay.

 7          UNIDENTIFIED MALE SPEAKER:  No, sir.

 8          THE COURT:  Unless -- okay.  I don't need

 9   responses from each of you, but do let us know if you're

10   having trouble hearing at any point during the proceedings

11   today.

12          Second thing I will tell you is that the

13   courtroom is empty.  Everyone has elected, I believe, to

14   participate by telephone including I believe we have -- we

15   may have some reporters -- news reporters in.  Everybody

16   will identify themselves in a moment.

17          I wanted to talk about some house rules to make

18   sure that everything proceeds smoothly.  Number one, I'm

19   going to ask people each time they speak to first identify

20   themselves even if you've just spoken, you know, a moment

21   before and then somebody else has spoken, I need you to

22   identify yourselves each time that you're speaking so that

23   we can keep the cast of characters straight.

24          The -- let me ask this, is there a court reporter

25   covering this hearing today?
```

```
 1            UNIDENTIFIED MALE SPEAKER:  I do not have

 2    one, Judge.

 3            THE COURT:  There's no court reporter.  Okay.

 4    All right.  Are there any news reporters on the line

 5    with us?

 6            MR. JACKSON:  Yes, this is Dan Jackson with

 7    Courthouse News Service.

 8            UNIDENTIFIED FEMALE SPEAKER:  This is

 9    Roseanne --

10            THE COURT:  Okay.

11            UNIDENTIFIED FEMALE SPEAKER:  (Inaudible)

12    Free Press.

13            THE COURT:  Mr. Jackson, thank you.  And I'm

14    sorry, I spoke over you, ma'am.  What's your name?

15            UNIDENTIFIED FEMALE SPEAKER:  Roseanne

16    (inaudible due to cross talking) with the Times Free

17    Press.

18            THE COURT:  Okay.  Thank you.  So at the

19    outset, again, just doing some housekeeping.

20    Mr. Jackson had reached out to the Court yesterday

21    because he wanted to know whether he could attend in

22    person or participate by telephone.  And we -- I

23    called him and laid out those options.  Mr. Jackson

24    raised a good question that I was not in a position to

25    address when he asked me last night.  He is aware of
```

the local rule that prohibits bringing a recording
device into the courtroom and activating it and
recording the proceedings.  And he asked me whether
since he's not going to be in the courthouse he could
record the proceedings on his iPhone or recording --
otherwise on a recording device.

        Frankly, I never thought about that and
looked at the local rules and then put out an email to
the other judges in our -- some -- most of the other
judges in our district and division.

        And what followed was a robust discussion of
the topic, but for -- the judge has discretion, and
the consensus among the judges is that we should treat
these telephonic hearings, which are being done right
now because of the exigent circumstances involving the
Covid 19 pandemic, we should treat the telephonic
hearings the same as we treat in-court hearings.

        And consequently I would ask the reporters to
turn -- to off their recorders and not -- not record
the hearing today.  We would extend the local rule to
these telephonic hearings.  So I'll put you on your
honor, news reporters, and just ask you to do that.
So --

        MR. JACKSON:  That's understood.

        THE COURT:  The next thing I'd like to do is

```
1    have the attorneys and any other participants identify

2    themselves.  But why don't we start with the

3    Plaintiff's attorneys and any folks who are here as

4    Plaintiffs or Plaintiff representatives.

5              And Mr. Flores, I suppose we'll start with

6    you.  Go ahead.

7              MR. FLORES:  Yes, sir.  Robin Flores for

8    Plaintiff.  And shall I list all of them, Your Honor?

9              THE COURT:  Well, you don't need to tell me

10   everyone you represent.  Just, do you have any -- or

11   are any of the Plaintiffs participating in this call

12   with you?

13             MR. FLORES:  No, Your Honor, I'm here on my

14   office phone.

15             THE COURT:  Okay.  So, Mr. Flores.  Who else

16   is here about half of a Plaintiff?

17             MR. KLAVER:  I'm representing myself, Your

18   Honor, William Klaver, case 119-CV-198.

19             THE COURT:  Okay.  Mr. Klaver, thank you,

20   sir.

21             And is John Cavett on the line with us today?

22             UNIDENTIFIED MALE SPEAKER:  I do not hear

23   him, Judge.  I'm going to call his office and see --

24   maybe he thought it was a different time.  I'm only

25   taking a guess here.
```

```
 1              THE COURT:  Yeah.  I would expect Mr. Cavett
 2    to be on the line with us.
 3              UNIDENTIFIED MALE SPEAKER:  Yes, Your Honor.
 4    Let me see what I can do to get him.
 5              THE COURT:  Okay.  Who is -- are there any
 6    individual Plaintiffs who are on the line today?  Or
 7    relatives of Plaintiffs?
 8              MR. KLAVER:  Just myself, Your Honor, William
 9    Klaver.
10              THE COURT:  Yes, I got you Mr. Klaver.  But I
11    was wondering if there was any others who haven't
12    identified themselves.  Okay.
13              MR. KLAVER:  Okay.  Thank you.
14              THE COURT:  And -- and who is here on -- who
15    is here on behalf of the -- just a second.
16              MR. FLORES:  This is Robin Flores for
17    everyone.  I'm going to go to mute on my cell phone
18    while I try on my office phone to get a hold of
19    Mr. Cavett.
20              THE COURT:  Okay.  Let us know when you're
21    back, Mr. Flores.
22              Who's here behalf of Hamilton County?
23              MR. HOBBS:  Dee Hobbs.
24              MS. MILLING:  And Sharon Milling also.
25              THE COURT:  All right.  Thank you, Counsel.
```

1    All right.  And then we have other

2  Defendants.  Go ahead and identify yourselves.

3        MR. TIDWELL:  Your Honor, this is Jerry

4  Tidwell.  I'm here for Bobby Brewer, Deputy Bobby

5  Brewer, Deputy Jacob Goforth, and Deputy Colin McRae.

6  And my representation covers several of the individual

7  suits. (Inaudible) I believe (inaudible) in another

8  suit, but I don't represent him.

9        THE COURT:  Okay.

10        MR. EXUM:  Your Honor, this is Jim Exum on

11  behalf of Deputy Daniel Wilkey, and I represent him in

12  the Shandle Riley, Janice Mitchell, and Kelsey Wilson

13  matters.

14        THE COURT:  All right.  Thank you.

15        MR. GUSTER:  This is attorney Micah Guster

16  for Daniel Wilkey in Klaver's case and the

17  (inaudible,) Your Honor.

18        THE COURT:  Okay.  Thank you.  Micah

19  Custer -- Guster.

20        I was telling my court deputy, Mr. Guster, he

21  -- she didn't hear your name, so that's why I repeated

22  it.

23        Are there any other attorneys on the line?

24        MR. FLORES:  Your Honor, this is Robin

25  Flores.  I just got a hold of Mr. Cavett.  They're

```
1    working, like we are, long distance.  He is attempting

2    to call as we speak, so hopefully we'll hear from him

3    in the next couple minutes.

4              THE COURT:  All right.  He's -- he's got

5    the -- you gave me a call-in number?

6              MR. FLORES:  Yes -- yes, Your Honor.  I gave

7    him the call-in number and my code.  I assume it's the

8    same for everybody.

9              THE COURT:  It should be.

10             All right.  Everybody sit tight for a second,

11   and let's let Mr. Cavett call in.

12             MR. FLORES:  Judge, I'm  get someone at my

13   door.  I'm going to put this on mute, and I'll be

14   right back.

15             THE COURT:  All right.  Thank you.  All

16   right.

17             MR. CAVETT:  Hello, everybody.  I'm in

18   trouble, ain't I?

19             THE COURT:  No, that's all right.  Is -- is

20   this Mr. Cavett?

21             MR. CAVETT:  Yes, sir.

22             THE COURT:  All right.  Mr. Cavett, this is

23   Judge Steger.  We have on the line reporters -- two

24   reporters.  Then we have as counsel Robin Flores.  We

25   also have Mr. Klaver representing himself, Dee
```

1    Hobbs -- Dee Hobbs and Sharon Milling on behalf of the

2    County, Jerry Tidwell --

3              MR. CAVETT:  All right.

4              THE COURT:  I tell you, Mr. Cavett, just

5    because we're on the phone, why don't you not -- you

6    don't have to agree with me, because we'll end up

7    talking over each other.

8              So Jerry Tidwell is representing some of the

9    individual sheriff's deputies.  Jim Exum is

10   representing Officer Wilkey in some of the cases, and

11   Micah Guster is representing Officer Wilkey, also, in

12   another case or cases.

13             So that -- those are all of the people

14   identified as being on the call at this point.  And we

15   haven't gotten into any of the substance of the

16   hearing.  What I did say to everybody, Mr. Cavett, is

17   that because we have so many people on the call, I'm

18   going to ask that each person identified themselves

19   before they speak, even if they -- and every time you

20   speak, you need to identify yourself so that we know

21   who is speaking.

22             So let me just ask, Mr. Flores, are you back

23   on the line?

24             MR. FLORES:  Yes, Your Honor.

25             THE COURT:  All right.  Counsel --

1          MR. FLORES:  Yes, Your Honor, I'm back on the

2     line.

3          THE COURT:  All right.  I'm ready to proceed.

4     Is there -- are there any preliminary matters that any

5     of you feel like must urgently be taken up before we

6     get into a discussion of the motions?

7          All right.  I hear nothing, so I am going to

8     do some stage setting to perhaps eliminate some of the

9     discussion that might otherwise need to take place.

10         There are two motions pending before the

11    Court.  That's why we're having this hearing today.

12    There is a motion filed on behalf of Shandle Riley by

13    Mr. Flores.  It's a motion for an order requiring

14    Hamilton County to preserve electronic evidence and

15    data and for an order allowing the Plaintiff to

16    conduct a forensic examination of all computers and

17    data preserving devices involved with the transmission

18    and preservation of in-car video created by Hamilton

19    County deputies.

20         I'll summarize that a little bit because it's

21    a long caption, but that's the relief requested in the

22    motion.  There is an identical -- virtually identical

23    motion filed on the same date, February 28, by

24    Mr. Cavett, and that is on behalf of Maxwell Jarnigan.

25    And that was joined in -- that motion was also filed

1  by Mr. Biggs, Mr. Cavett's co-counsel.

2          I have, of course, read these motions and

3  accompanying memoranda of law.  I have looked at the

4  docket yesterday.  I do not see that Hamilton County

5  has filed a written response to either of these

6  motions.

7          Mr. Hobbs, would you confirm that Hamilton

8  County has not filed a written response to these

9  motions?

10          MR. HOBBS:  We have not.

11          THE COURT:  All right.  So the -- the

12  reason -- the reason for these motions is that at some

13  point Plaintiff's counsel learned that a server

14  operated by the Hamilton County Sheriff's Department

15  containing in-car video footage from the Sheriff's

16  Department had experienced a software failure and that

17  resulted in the loss of in-car video footage from

18  October 25, 2018 to January 23, 2020.

19          And apparently included all video footage on

20  that server during that time period.  Apparently a new

21  server was built, and so video footage -- in-car video

22  footage from January 23, 2020 to present is being

23  stored again.

24          Hamilton County has done some internal

25  investigation to determine what caused the server to

1    fail and the video footage to be lost.  And I'll just

2    leave it at that for the moment.  For right now it

3    appears that much of the video footage is indeed a

4    lost.

5            So against that backdrop, we have nine

6    different lawsuits which were filed, and I believe

7    that Mr. Klaver's was first.  His was filed on July 9,

8    2019.  And then there are eight other lawsuits filed.

9    Mr. Flores I believe represents the Plaintiffs in

10   seven of those lawsuits, and Mr. Cavett represents a

11   Plaintiff in one of those lawsuits and has filed it as

12   a class action or punitive class action.

13           These lawsuits as I indicated, Mr. Klaver's

14   was the first lawsuit filed, and it was filed on July

15   9, 2019.  The other lawsuits were filed over a period

16   of time with the last lawsuit being filed on December

17   17, 2019.

18           So with the last lawsuit being filed on

19   December 17, 2019, a question arises in my mind that I

20   don't have an answer to, so I'm going to -- I'm not

21   going to invite a discussion yet or argument, but I am

22   going to ask question to Mr. Hobbs.

23           It -- it would appear to me that since the --

24   all the video footage in the server was lost

25   through -- from October 2018 through January 23, 2020

1    that the server failure occurred on January 23, 2020.

2    But I don't have anything before me that confirms

3    that, so I'm going to ask Mr. Hobbs now or

4    Ms. Milling, is that the date that the server failed

5    and the footage was lost?

6              MR. HOBBS:  That is our information.

7              THE COURT:  Okay.  So generally speaking, a

8    party's duty to preserve evidence arises when a party

9    has a reasonable anticipation of litigation.  And it

10   arises in any event no later than when the person is

11   sued, that is when there is notice of the commencement

12   of litigation.

13             So the duty to preserve evidence arises at

14   that time.  So between July of 2019 and December of

15   2019, there were nine lawsuits filed, all of which

16   named Deputy Daniel Wilkey -- I believe, all or most

17   of which involved traffic stops which the Plaintiffs

18   allege were conducted illegally in violation of their

19   civil rights with various different kinds of facts and

20   nuances.

21             But when the County learned of these series

22   of lawsuits, it created an affirmative obligation --

23   affirmative obligation on the County to preserve

24   evidence.  And given the fact that these patrol cars

25   that -- or patrol car that were the subject of various

1    allegations in the complaints were equipped with

2    video dash cams, it -- it seems logical that the

3    County was under a duty to preserve evidence of the

4    video dash cams as a result of these lawsuits.

5            And there are two things that that obligation

6    involves.  Generally, the first thing that needs to

7    happen is a written litigation hold needs to be

8    issued.  And that hold is supposed to go to -- the

9    written litigation hold is supposed to go to

10   individual custodians believed to possess relative

11   material.  And it's supposed to advise them to

12   preserve the relevant material.  It's supposed to give

13   them specific instruction about that.

14           And so to the extent that -- to the extent

15   that there were emails or written communications or

16   reports filled out relating to these traffic stops and

17   other incidents in which Daniel Wilkey and other named

18   Defendant deputy -- deputies were named, all -- all of

19   those custodians should have been placed on notice

20   that they needed to retain their documents and videos.

21           And to the extent that those deputies,

22   officers were to turn in reports in certain

23   repositories, whether electronically or paper copies,

24   the custodians of those records should have been

25   notified that there -- that they were subject to

litigation hold, that those records needed to be
preserved.

      And whomever had custody of the dash-cam
videos and certainly if there were any body-cam videos
or any other recordings of these events which are
involved in the lawsuit, various lawsuits, those
persons should have been provided written notification
that they needed to preserve the evidence they had in
their custody.

      So that's the first step that is supposed to
be adhered to when litigation is anticipated and
certainly after it is filed.

      The next thing that is supposed to be done
with respect to electronically stored information,
which is commonly referred to as ESI, is collection.
Such that to avoid losing emails, videotapes,
recordings, any other documents or data that is
preserved electronically, collection is supposed to
be -- is supposed to take place such that if you have
a recording that is over written in a loop, you want
to preempt it being overwritten.  So you want to go
capture that before the overriding takes place.  Or if
you have data on a hard drive that could be
susceptible to being deleted, you would go make a copy
of the hard drive to make sure that you're storing it

1   someplace secure.

2           And if you have a server that contains a

3   bunch of data, normally what you would do is you would

4   go to that server, you would identify the video

5   evidence that -- that could be susceptible to being

6   lost for whatever reason and you would copy it onto a

7   hard drive, onto another server, onto something that

8   would preserve it for litigation purposes.

9           And that's a duty that all attorneys have in

10  all litigation, to impose a litigation hold and then

11  to take reasonable efforts to assure that evidence is

12  not lost.

13          So the first question I've got, and this

14  relates to rule -- Federal Rule of Civil Procedure

15  37(e), which specifically addresses the failure to

16  preserve electronically stored information.

17          The preamble to that rule provides if

18  electronically stored information that should have

19  been preserved in the anticipation or conduct of

20  litigation is lost because a party failed to take

21  reasonable steps to preserve it, and it cannot be

22  restored or replaced through additional discovery,

23  then it sets forth a list of things the Court can do.

24          But the first question that needs to be

25  asked -- the first question that needs to be asked is,

1    is it truly lost.  So far the County is telling us

2    that the video footage is lost.  But we need to -- the

3    Court is not going to be satisfied with a simple

4    representation that it is, and that's something we're

5    going to discuss.  We really need to find out if it's

6    truly lost, or whether there's any possible way it

7    could be recovered.

8            The second thing we need to determine is

9    whether it was lost because a party failed to take

10   reasonable steps to preserve it.

11           And then the third thing that we need to look

12   at is, is there any way for us to restore or replace

13   through additional discovery the evidence that was

14   lost.

15           So I know -- the first part of this rule,

16   this electronically stored information these -- this

17   video footage of Mr. Wilkey and other deputies making

18   traffic stops interacting with the Plaintiffs in these

19   cases, there is no question that that should have been

20   preserved.  That's -- it would be hard to argue

21   there's anymore evidence that could possibly be more

22   relevant to these cases.

23           The second part of this analysis, was this

24   evidence lost because a party failed to take

25   reasonable steps to preserve it.  Well, in answer to

that, the Court has no idea.  And the reason the Court
has no idea is because the County has not given the
Court any information in response to these motions.

I don't know sitting here today whether any
written litigation holds were put in place when these
series of lawsuits were filed.  None have been
produced.  I don't know whether any measures were
taken by the Hamilton County Sheriff's Department to
preserve evidence that was to identify and preserve
evidence that was relevant to the claims of these nine
different lawsuits.

And I guess that's our starting point.  So
Mr. Hobbs and Ms. Milling, I need an explanation as to
what steps were taken to preserve this evidence by way
of litigation holds, and then there's a practical
matter, what steps were actually then implemented to
preserve the evidence that's relevant to these claims.

MR. HOBBS:  Your Honor, we told you at the
previous hearing that we believed we had preserved,
prior to the loss, the general data loss, copies of
information.  We have at least 180 hours of video
preserved.  The problem is that the originating source
has disappeared, not -- and we said this, Your Honor,
at a previous hearing.

So there was certainly efforts made to

preserve this information.  That's number one.  Number

two, what we did is what we would do in any case where

there's a request for preservation or a lawsuit filed.

We will contact, as we did in this circumstance, the

sheriff's office, relate these events, the date, and

as much information as we can so that a litigation

hold can be created.

        And, in fact, in this case I cannot represent

because I do not know if all -- literally, all

information regarding these cases was preserved.

However, I can assure you it is a matter of public

record that information -- video relative to Daniel

Wilkey was, in fact, preserved.  It was in the public

domain.

        So the short answer to your question, yes,

copies of information was made.  Two, efforts were

made to preserve the information.  Three, that is not

really the problem here.  The problem here is that

requests are being made for events other than these

cases in order to try to develop some claim of a

custom or practice of unconstitutional conduct.

        And when it comes to that, for instance,

Officer Sharon Milling's beating of someone on January

1st of 2020, any car video or any dash-cam or any

body-cam information would not be preserved at present

```
 1    because the system failed.

 2              I hope the Court understands what I'm saying.

 3              THE COURT:  Well, let's backup to what you

 4    are saying.  You indicated just now that there are --

 5    there exists 180 hours of video footage.  You still

 6    have that?

 7              MS. MILLING:  At least, Your Honor.

 8              THE COURT:  And does that -- does that video

 9    footage capture all of the traffic stops that

10    Mr. Wilkey made that are the subject of these

11    lawsuits?

12              MS. MILLING:  Do not know that yet.

13              MR. HOBBS:  But, Your Honor, we are informed

14    that is what it is and that we were able to do that

15    prior to the system, this underlying system fail.

16              THE COURT:  And how did -- how did you go

17    about doing that, Mr. Hobbs, or how did the County do

18    that?  How did they extricate -- who did it, and what

19    sort of search parameters did they run to get

20    information relevant to these, I'm going to call them

21    the nine Daniel Wilkey lawsuits?

22              MS. MILLING:  Your Honor, this is Sharon

23    Milling.  My understanding, and this comes from the IT

24    department of the sheriff's office, is that they were

25    requested by the district attorneys office to be able
```

```
 1    to view a certain portion back.  I want to say it was
 2    a year back, but I'm not sure about that.  At the time
 3    that all this first started coming up in the press and
 4    the DA's office wanted to look back that far, and they
 5    made that accessible to the DA, and it was preserved.
 6    All of that was preserved is my understanding.
 7              THE COURT:  Have you had discussions with
 8    Plaintiff's counsel in these cases to let them know
 9    that that video footage is available for them to
10    review?
11              MS. MILLING:  I can't -- I can't remember if
12    I have or not, Your Honor.  I don't believe I have
13    with Mr. Cavett.  I'm not certain about Mr. Flores.
14    We talked a lot.
15              MR. FLORES:  Your Honor, this is Robin
16    Flores.  In response to my friend and colleague,
17    Ms. Milling, we did have a very specific discussion
18    about a case that is now been removed, which this
19    particular issue is going to rise in the (inaudible)
20    bond matter.
21              Otherwise I do have -- I have attached to
22    document 50 in my brief the efforts that I've made in
23    preserving the evidence at least in the Riley matter.
24    That's the extent that I have diaries as being
25    discussions about this video loss at this point.
```

1    THE COURT:  All right.  So, Mr. Hobbs and

2    Ms. Milling, it's your understanding that after these

3    lawsuits arose sequentially, you had notified --

4    Mr. Hobbs, you had notified the County that they

5    needed to preserve evidence; is that correct?

6    MR. HOBBS:  Yes, Your Honor.

7    THE COURT:  And how do you do that,

8    Mr. Hobbs?  Did you just call them and tell them, or

9    do you issue a written litigation hold?

10    MR. HOBBS:  We call them and tell them, Your

11    Honor.

12    THE COURT:  And do they generate any written

13    litigation hold as a result of the conversation with

14    you?

15    MR. HOBBS:  No, Your Honor.  They endeavor to

16    send us the records that we ask for or that we ask to

17    be preserved.

18    THE COURT:  And those are --

19    MR. HOBBS:  And, Your Honor, if I may, I

20    cannot represent that all possible information, video

21    information relative to do these cases was preserved.

22    However, I can tell you that substantial information

23    regarding this litigation -- each of these cases, has

24    been preserved.

25    And, again -- again, sequentially, how -- whether

```
1   this is before the DA requested the information or

2   afterwards, I do not recall, but we had occasion as

3   did the DA, to request a substantial amount of video.

4       We do not know -- we do not know that any video

5   regarding these cases -- these cases, the particular

6   transactions, are lost whatsoever.  That isn't the

7   problem, and that's what were trying to say.  The

8   problem is we have an overall data loss.

9            THE COURT:  So is it fair to say, Mr. Hobbs,

10  that nobody has gone back to -- to your knowledge, to

11  review the video footage that you do have, you said

12  you had 180 hours, nobody has gone back to look at

13  that to determine whether it does reflect the

14  incidents which are the subject of these nine

15  different lawsuits against Mr. Wilkey and others?

16           MR. HOBBS:  Not -- not as of yet.  And you

17  would recall the Court directed us not -- I call it

18  the mother system or mothership -- we were

19  specifically directed not to make any -- put any hands

20  on the mothership in any regard, and we have not.

21           THE COURT:  Well, the mothership is --

22           MR. HOBBS:  (Inaudible due to cross talking.)

23           THE COURT:  -- you're referring to the --

24  hang on.

25           The -- the colloquial term, the "mothership"
```

```
1    that you're referring to refers to the server that
2    failed.  And what I was talking to you about was I
3    didn't want anybody making any changes to that server,
4    because part of what we need to talk about is having
5    an independent forensic examiner come in and determine
6    whether it failed for the reason that the County said
7    that it failed, or whether failed for some other
8    reason.
9            But I wasn't -- where -- where are these --
10   presumably the 180 hours of footage that you say were
11   preserved, were not preserved on a broken server.
12   Where are those being kept?
13           MS. MILLING:  They are preserved on a
14   terabyte thumb drive.
15           THE COURT:  Say that again, Ms. Milling.
16   Somebody was -- try to avoid the background noise.
17           Go ahead.
18           MR. HOBBS:  A terabyte external hard drive,
19   Your Honor.
20           THE COURT:  Where's that hard drive being
21   kept?
22           MS. MILLING:  Right now it's at the sheriff's
23   office.
24           THE COURT:  All right.  So there's -- there's
25   one copy of it on a disk?
```

1          MS. MILLING:  It's on a hard drive, and I

2    believe the hard drive has been provided to

3    Mr. Wilkey's attorney, Mr. McGowan.

4          THE COURT:  All right.  But --

5          MR. CAVETT:  Your Honor, this is John Cavett.

6    Can I ask a question for clarification purposes.  When

7    using the language all evidence relevant to these

8    cases and we're talking about 180 hours of recordings,

9    my question is, do -- does the DA's office have or the

10   terabyte drive have all of Wilkey's video-cam arrests

11   for the year preceding, say, December 2019, or are we

12   just talking about the named Plaintiffs?  Because I

13   can say that the evidence in my case is far more than

14   that, which relates just to the just to the named

15   Plaintiffs.

16         And I don't know whether 180 hours is

17   everything the man -- every arrest the man made or

18   not, that's (inaudible) the Court to make.

19         THE COURT:  Mr. Cavett, what I understood

20   Mr. Hobbs and Ms. Milling to say is that they don't

21   know.

22         MR. CAVETT:  Okay.  I'm happy with that.  I

23   understand that.

24         UNIDENTIFIED MALE SPEAKER:  And, Your

25   Honor -- Your Honor, I'll go so far as to say that

```
1    when we receive a litigation hold, or when a lawsuit
2    is filed, we do not ask the sheriff's office to
3    preserve all information that metaphysically might
4    result in (inaudible) for a person making a custom
5    practices and procedure claim.
6             I will -- I will -- I will tell you that if
7    someone wants to allege and they want to prove their
8    case against a municipal defendant such as Hamilton
9    County by asking for a thousand other arrests to show
10   them we don't properly train, no.  We've never made
11   such a preservation request.
12            THE COURT:  Yeah, well -- yeah, I understand
13   that.
14            UNIDENTIFIED MALE SPEAKER:  I believe we
15   have -- I believe we have ,on hand, available, video
16   information relevant to these cases.  That is what we
17   typically would ask for, and that is what we typically
18   would receive.  It would not be unusual as discovery
19   proceeds in a case to realize that we might have a
20   need to go back and obtain other information regarding
21   other events.  That is what we apparently cannot do
22   right now.
23            MR. FLORES:  Your Honor, this is Robin
24   Flores, and a couple things I'm going to say I don't
25   want it to seem like I'm, you know, taking any attacks
```

```
 1   against the County attorneys here.  I consider them my
 2   friends and colleagues.
 3          But there's something real pointed that I've
 4   got -- a point I've got to make here is -- and the
 5   document 50 that I filed I attached some exhibits.
 6   And early on in the Riley matter I sent a spoliation
 7   request out by certified mail which is pretty specific
 8   as to what I'm looking for.  And then a request for
 9   production, which the County is yet to answer.  And
10   that was back in October 2nd.  And that -- that's
11   document 54, and it -- it focuses on specific video
12   footage.
13          My concern is that I don't know if this has
14   been preserved or not.  Ms. Milling did send me a
15   response email to my spoliation demand, but, you know,
16   here we are now in March or April, and I still don't
17   have anything responsive to the request for
18   production, and now I'm hearing that maybe the
19   district attorney may be the sole source or the County
20   has got these things somewhere and has yet to respond.
21          So I want to make sure that point -- you
22   know, that that point is out there in regard to at
23   least my end, I requested to preserve this evidence,
24   and we don't lose sight of that.
25          MR. HOBBS:  I -- Ms. Milling needs to respond
```

1    to that, Your Honor.

2            MS. MILLING:  Your Honor, I don't think we

3    said that the DA was the sole source.

4            THE COURT:  You didn't.  You said the County

5    has the hard drive.

6            MS. MILLING:  And also, Your Honor, there's

7    been an issue with the District Attorney's Office as

8    far as what we have been able to release and what we

9    have not been able to release.  There's been some

10   discrepancy about the different case law that we

11   filed.

12           In fact, there was one -- I can't remember

13   which one it was, it may have even been Riley, but we

14   were intending to release, and then the DA's office

15   called, and -- and we were told not to release.

16           MR. HOBBS:  That is correct, Your Honor.  I

17   will confirm that.  I got that (inaudible) from

18   Mr. Pinkston (phonetic) --

19           UNIDENTIFIED MALE SPEAKER:  And would -- I'm

20   sorry I didn't mean to speak over you.

21           MR. HOBBS:  I got the call from Mr. Pinkston,

22   and I'll be honest, the only thing I remember it was

23   about was Wilkey.  I do not -- I do not right offhand

24   recall which of these nine or ten plaintiffs against

25   Mr. Wilkey it pertained to.

```
 1              I frankly protested due to the fact that
 2      other video had obviously been released by the
 3      district attorney, because it's been on television.
 4      You know, I don't get it.  But I'm sorry, and it does
 5      I -- I -- I respect that Mr. (inaudible) is entitled
 6      to the information.  I didn't question it.  But -- but
 7      I don't know the DA's the only source of information.
 8              THE COURT:  Well, we're speaking in the
 9      abstract now.  I don't know what information the
10      district attorney could have that was not furnished to
11      it by Hamilton County, the Hamilton County Sheriff's
12      Department.
13              UNIDENTIFIED MALE SPEAKER:  That -- that
14      video.
15              THE COURT:  Well --
16              UNIDENTIFIED MALE SPEAKER:  Your Honor --
17              THE COURT:  I'm not -- no requests are being
18      made at this point to my knowledge from the -- from
19      the District Attorney's Office.  The requests are
20      going to be made from Hamilton County Sheriff's
21      Department.  And -- and I assume that if Hamilton
22      County Sheriff's Department produced some information
23      to the district attorney, it didn't disgorge all of
24      its originals and fail to keep copies.  Do you think
25      that's what happened?  Do you think that --
```

1      UNIDENTIFIED MALE SPEAKER:  Yes, Your Honor.
2    Yes, Your Honor, exactly.
3      THE COURT:  You -- you think that -- the
4    Hamilton County Sheriff's Department did not keep
5    copies of the documents and videos that he gave to the
6    District Attorney's Office?
7      UNIDENTIFIED MALE SPEAKER:  We -- we kept
8    them, Your Honor.
9      THE COURT:  Who -- I'm sorry say it again.
10      UNIDENTIFIED MALE SPEAKER:  We kept them.
11    The sheriff's office.
12      THE COURT:  Okay.  The sheriff's department
13    has them?  And -- are you telling me that the district
14    attorney is telling you or telling the County that it
15    cannot produce materials relating to the Wilkey case
16    to the Plaintiff's counsel in the Wilkey case?
17      UNIDENTIFIED MALE SPEAKER:  Pending the
18    charges against Mr. Wilkey, we were told then not to
19    give that information -- we were told not to review
20    that information, obtain that information, disseminate
21    that information.
22      THE COURT:  All right.  Well, we'll work
23    through -- we'll work through that.  That's a -- if
24    you get in a conflict between what your obligations
25    are here in federal court in compliance with discovery

1  and what the DA's telling you to do, we'll just have

2  to work that out.  That's not really the purpose of

3  this hearing today.

4          UNIDENTIFIED MALE SPEAKER:  And, Your Honor,

5  let me state, I don't think that is a problem at this

6  point because now the grand jury's been trying to

7  indict, so I think we're beyond that.

8          THE COURT:  Yeah, I think so.

9          UNIDENTIFIED MALE SPEAKER:  That -- that was

10  a problem some time ago.

11          THE COURT:  All right.  All right, counsel,

12  what we need to do is we need to determine what

13  evidence that is relevant to this case, to these nine

14  lawsuits, has been lost.  If all of the evidence that

15  is relevant to the lawsuits that are pending before

16  this court still exist and is still in the custody and

17  control of the Hamilton County government, then we

18  don't have a problem.

19          But if some of this evidence, which should

20  have been preserved, has been lost, then we need to

21  work through that.  That is a problem.  What I'm

22  realizing from this hearing today is that nobody on

23  the call can tell me whether evidence related to the

24  Daniel Wilkey lawsuits has, in fact, been lost.

25          UNIDENTIFIED MALE SPEAKER:  (Inaudible due to

cross talking.)

　　　　MR. FLORES:  Your Honor, it's Robin Flores.
We are almost -- Your Honor, this very issue seems
almost circular to me because in -- (inaudible due to
cross talking) Judge I got a little benefit and that I
have participated with my clients in, you know, the
criminal investigation.  So I'm aware and I had a
request from the district attorney not to disclose the
contents of those interviews, but I am aware that
there is over 500 hours of video recordings that the
district attorney had difficulty getting from the
sheriff.  And, in fact, had to use -- say, you got
problems with your recording, you know, being able to
pull these recordings up, we'll get TBI to come out
there and look at the equipment and get it.

　　　　And then shortly after that, the County
produced 500-something hours of videos.  But the
problem I've got on my end as Plaintiffs counsel in
the civil case --

　　　　THE COURT:  Wait -- wait a minute,
Mr. Flores.  Did you -- you said audio recordings at
one point, and then you said videos.  Are you --

　　　　MR. FLORES:  Well, video.  Video.  My
apology.  I -- I'm interchanging the terms the same,
the same subject matter.

1    THE COURT:  Okay.  This is -- this is new
2  information.  Are you telling me that the district
3  attorney was able to obtain 500 hours of video footage
4  relating to traffic stops by sheriff's deputies?
5    MR. FLORES:  Yes -- yes, Your Honor.
6    THE COURT:  500 hours?
7    MR. FLORES:  Approximately -- the number --
8  it was it was a little more than that.
9    THE COURT:  Did you -- did you talk to the
10  sheriff's department -- excuse me -- to the DA about
11  whether that encompassed all of the Daniel Wilkey
12  traffic stops?
13    MR. FLORES:  That, as I understand it from
14  Tom Landis (phonetic), who is the assistant district
15  attorney that's taken the lead on -- on --
16  prosecution, is that it is -- it does encompass
17  traffic stops.
18    The content of it -- of -- are also the
19  transportations of particular individuals, which I
20  believe was the basis for the reckless endangerment
21  and reckless driving charge.
22    The problem I've got as Plaintiff's counsel,
23  is access and usability of that being able to use
24  that.  For example, when -- I think the request for --
25  that Mr. Hobbs was talking about where the DA got an

1    opinion from the state attorney general in whether

2    they disclose or disseminate information or video, I

3    think that was a request from the media if memory

4    serves me and not so much from me.

5          The problem I have with getting this evidence

6    is if the district attorney seems to be the sole

7    source of getting this video, we're going to have a

8    devil of a time forcing the DA, who is not a party, to

9    disclose that to us.

10          So even if the DA's got all this, it's not

11   the DA's duty to preserve and present that evidence,

12   it's the County.  And early on in this case, I've done

13   what I needed to do to try to get the County to

14   preserve that and then we find out from this letter in

15   the Janice Hines (phonetic) matter that there's a

16   problem with it.

17          So I think there's more than 180 hours that

18   needs have been preserved and protected, and I'm

19   hearing that that's all that's been preserved so far.

20   I think there's more, and that would give more to John

21   Cavett's class-action.  So I'll leave it at that.

22          THE COURT:  Well, let me ask -- let me ask

23   Mr. Hobbs and Ms. Millings.  Mr. Flores has indicated

24   that the DA -- the DA's office has told him that they

25   have over 500 hours of video footage from the

1     sheriff's department. And what I'm hearing from the

2     two of you is that you believe that there are only 180

3     hours of video footage preserved.

4            MR. HOBBS: Your Honor, the term -- the term

5     was "at least." We don't know. Not -- I don't know

6     how many hours. I don't know.

7            MR. CAVETT: Your Honor, John Cavett. I also

8     wonder whether the disparity in numbers -- you know,

9     at one point we're talking about dash-cam footage.

10    But these officers have cameras on their bodies.

11    There's -- there's cameras in the cars that are

12    sometimes pointed back in the backseat and so forth so

13    there may be a despair -- a disparity in that sense as

14    well.

15           THE COURT: Yeah, let -- let's talk about

16    that. The letter that I'm looking at the Mr. Flores

17    has attached to his motion just talks about the failed

18    server having lost in-car video. It -- it refers only

19    to a data loss of in-car video footage.

20           Let -- let me ask this question first.

21    Ms. Milling, Mr. Hobbs, is in-car video footage --

22    does that -- is -- should that be interpreted broadly

23    enough to also mean dash-cam video?

24           MS. MILLING: Your Honor, yes, Your Honor.

25    In-car camera footage for County purposes, he has

1    dash-cam videos.

2              MR. HOBBS:  Not body-cams.

3              MS. MILLING:  Not body cameras.  Again, the

4    County does not have -- Sheriff's Office does not have

5    cameras in the car on the rear seat like the city

6    does, if that's what you're referring to.

7              THE COURT:  Does it have any -- it doesn't

8    have video facing -- looking at the backseat of the

9    car, does it -- does it video the officer who's

10   driving the car?

11             MS. MILLING:  It does not.

12             THE COURT:  Okay.

13             MS. MILLING:  It is a dash-cam.  It is

14   looking out the front window.

15             THE COURT:  All right.  So the -- the video

16   footage that was lost refers only to dash-cam videos;

17   is that correct?

18             MS. MILLING:  That -- well, not -- Your

19   Honor, I think the system they were talking about also

20   encompasses body camera video for those officers who

21   have body camera video.  My understanding is that none

22   of the officers involved in these lawsuits had body

23   cameras.  They -- they had not been issued then

24   because it has been -- they've been in beta testing.

25             THE COURT:  All right.

```
 1            MR. EXUM:  Your Honor, this is Jim Exum.  May
 2      I interject for just a moment?
 3            THE COURT:  Sure.
 4            MR. EXUM:  There's been a lot of talk this
 5      morning about 180 hours of video, which is 500.  I
 6      want an absolute candor with the Court and the
 7      counsel.  I have recently come into possession of a
 8      terabyte drive that has a great number of videos on
 9      it.
10            Now, I cannot estimate to the Court how many
11      hours are on there.  I have not had a chance to get
12      through it.  I only had about a week, and I don't know
13      what's on there and what's not on there.  So -- and
14      this came from the DA's office as part of the
15      discovery in the criminal matter involving Deputy
16      Wilkey.
17            So I do have that drive, and, you know, if
18      somebody asked me for it, I'd have to produce it as
19      part of discovery in this case anyway, but I just want
20      the Court to know that, that the DA is probably not
21      the only source for that information.
22            At this point I cannot estimate what's on
23      there, what's not on there.  I assume all this came
24      from the County at some point, but I just -- I
25      don't -- there's a lot of files on there that I
```

1  don't -- I haven't looked at, and I don't know

2  anything about them.

3          THE COURT:  Mr. -- and Mr --

4          MR. FLORES:  Your Honor, may I -- it's Robin

5  Flores.  May I ask Mr. Exum a question --

6          THE COURT:  Well, let me ask him a question.

7  Hang on, Mr. Flores.

8          Mr. Exum, is it your understanding that you

9  have a copy of a hard drive that the DA maintained its

10  own either the original or it's own copy?

11          MR. EXUM:  Your Honor, I have a drive of

12  videos that was produced as part of the discovery in

13  Mr. Wilkey's criminal matter, which were given to

14  Mr. McGowan.

15          THE COURT:  Okay.  Again, though, you don't

16  think that you're in possession of the only version of

17  those videos at this point; is that correct?

18          MR. EXUM:  That's correct, I'm not.

19          THE COURT:  All right.

20          MR. TIDWELL:  Your Honor, if I could

21  interject.  This is Jerry Tidwell.  I had a face-to-

22  face conversation with Neil Pinkston in late December

23  where he told me he possessed hundreds of hours of

24  videos.  He didn't tell me how many, but he said his

25  staff looked at every single dash-cam video of Daniel

1   Wilkey for approximately a year.

2           When we had the last hearing in court, I sent

3   him an email advising him that if he still had that

4   stuff, he really needs to preserve it, which I didn't

5   think was necessary, I'm sure they're preserving it.

6   But he didn't respond to that email, but -- but he --

7   I'm sure has that video, whatever it consists of.

8           MR. FLORES:  Your Honor, it's Robin Flores.

9   That's the -- pretty much the same information I got

10  from Mr. Pinkston and Mr. Landis that Mr. Tidwell just

11  imparted to the Court.  And for about a year's

12  worth -- the number 500-plus is specific to

13  Mr. Landis's representation to me that he looked at

14  and that the County -- the district attorney did split

15  up -- out, you know, chunks of it between the various

16  ADAs to review, because there is just so much.

17          So that -- that -- if Mr. Exum -- Your Honor,

18  if I could get -- ask Mr. Exum a particular question

19  because there's another issue that's coming up about

20  footage that was created not on a dash-cam, and I

21  believe may exist.

22          THE COURT:  How is that footage supposedly

23  prepared?

24          MR. FLORES:  It was on a person's cell phone.

25  And that would have been by Mr. Goforth in the Shandle

1    Riley matter.

2              MR. TIDWELL:  Your Honor, this is Jerry

3    Tidwell.  I represent Goforth.  He did, in fact, make

4    a cell phone video of the actual baptism.  He was

5    asked to turn it over to the DA's office, which he

6    did.

7              He no longer has a copy of it.  I know a copy

8    exists, and the DA described that video to me.  And,

9    actually, I've seen it.  I know it exists.  It's very

10   short.  It's less than two minutes.

11             THE COURT:  Was that turned over to the DA's

12   office before the lawsuit was filed against

13   Mr. Goforth?

14             MR. TIDWELL:  That's my understanding.  When

15   they were criminally investigating this case, he was

16   ordered by -- he was interviewed by his superiors.  He

17   identified, I think, that he had a video.  He then was

18   instructed to turn it over to the DA's office.

19             And I don't know -- I -- and I'm trying to

20   recall this.  If I understand correctly, the DA's

21   office to get off the phone themselves, and -- and

22   made a copy.  But I don't think it survived -- it does

23   not survive on his phone, okay?

24             But -- but General Pinkston -- my purpose of

25   my conversation with him was to find out if they could

tell me what they have, so I would know where to ask

for it eventually whenever they could reveal some of

their investigation.  And it -- it exists, because I

actually got to see it.

THE COURT:  Okay.  Well, Counsel, this is --

this is productive.  I started out by -- I started out

where we should in this case, which is rule 37(e) of

the Federal Rules of Civil Procedure.

And -- and we -- we have determined that

certain information that should have been preserved

has been lost.  It was lost because of the failure of

a server.  And we'll talk a little bit more about that

in a second, but under the rule what we need to do is

determine whether the data that was lost can be

restored or replaced through additional discovery.

And I'm hearing different bits of information

as to how we might do that.  But it sounds like much

of the information that was on the server that failed

had already been transferred to the district

attorney's office prior to the failure of the server.

No -- no one on this call has been able to

tell me whether all of the relevant footage from the

various allegations against Mr. Wilkey and his

codefendants is represented among the footage that is

still available to some combination of Neil

1    Pinkerton's office and Hamilton County -- and Hamilton

2    County's Sheriff's Office.

3              And then, of course, Mr. Tidwell, a video

4    taken by Mr. Goforth of the baptism of Ms. Riley would

5    obviously be extremely relevant to her claims against

6    Mr. Goforth and Mr. Wilkey.

7              And so that's something that absolutely needs

8    to be preserved and needs to be in connection with

9    this lawsuit.

10             And so what -- what needs to happen here that

11   has not happened thus far is -- is the attorneys for

12   Hamilton County have got to figure out what

13   information actually exists that -- that still exists

14   either through some combination of the district

15   attorney and their own archives that is relevant to

16   these claims against Mr. Wilkey and his codefendants.

17             And right now, at least, Mr. Hobbs you raise

18   this point.  I'm not talking about pattern and

19   practice allegations that would try to make relevant

20   every alleged bad act that has ever occurred involving

21   the Sheriff's Department.  But what I am totally

22   focused on is Hamilton County's duty to preserve all

23   of the evidence that is relevant to these allegations

24   against Daniel Wilkey and Deputy Goforth and any other

25   individual deputies who have been named.

1    That -- that needs to be done and needs to be

2  done immediately.  That information needs to be

3  compiled, it needs to be reviewed, and then you need

4  to come back to me and tell me what's been lost and

5  what hasn't been lost.

6    There -- there's no reason for the Court to

7  be expending a lot of energy on trying to reconstruct

8  this -- this evidence or figure out what was lost when

9  the first thing that needs to happen is for you to

10 look at what you already have the tell the Court

11 what's been lost and what hasn't been lost.

12   So that needs to be done.  The second thing

13 that I think needs to be done from a standpoint of

14 public confidence is to assure that the failure of

15 this server happened in the normal course of things

16 and that it wasn't a deliberate effort by somebody to

17 get rid of evidence.

18   UNIDENTIFIED MALE SPEAKER:  Thank you.

19   THE COURT:  Pardon me?

20   MR. KLAVER:  I said thank you, Your Honor.

21 This is William Klaver.  Because I don't -- I don't

22 believe a word they say so far.  (inaudible) seems to

23 me and all the (inaudible) that happens to help them.

24 I don't -- I don't believe it.  And -- and they kept

25 us in the dark -- (inaudible due to bad audio).  We

1    don't know.

2            THE COURT:  Yeah.

3            MR. KLAVER:  Thank -- thank you (inaudible).

4            THE COURT:  Well, I -- I understand,

5    Mr. Klaver, you've stated what I'm sure -- a thought

6    that probably some of the other Plaintiffs have, is

7    the timing does look suspicious.

8            So the -- so, first thing we need to figure

9    out is whether evidence was truly lost or whether it

10   still exists because it was preserved for the District

11   Attorney's Office or for some other reason prior to

12   the failure of that server.

13           But if evidence has been lost, we need to

14   determine why it was lost.  And to that end, I don't

15   think there's anybody on this call that can shed any

16   light on that.  The Sheriff's Department has stated

17   what their position is.

18           I think the only way for us to truly find

19   that out would be to retain an independent third-party

20   with -- forensic examiner who would have access to the

21   server and could go in there and look at the reason it

22   failed and whether that the information can be

23   reconstructed or it can't be reconstructed.

24           But I'm hesitant to order that that be done

25   until I know whether the evidence was actually lost or

whether it was already extricated from the server and
is preserved somewhere between the DA's office and
Hamilton County Sheriff's Office presently.

          And, I guess, the third thing I would say is
just to reiterate that until we are in a position to
make that decision, I'll reiterate that the plans for
this data was stored, the server that failed is a
physical object.  And what I repeated previously is
that that physical object, the server where the data
was stored, needs to be preserved, does not need to be
changed in any way or altered.  It does need to be
accessible to people in the Sheriff's Department other
than somebody who has custody and control of it, so
that if we do need to bring in an independent third-
party forensic examiner, it will be in an unaltered
state from the point in time that I advised counsel
not to let anybody make any changes to it through the
time that the forensic examiner examines it.

          So let me -- those are the three points I
just made.  And they're all directed to the County at
this point.  Be thinking about that for a second, and
let me say one other thing before I forget about it.

          Mr. Flores, you raise the point that you have
served discovery requests on the County, and they
haven't responded to your discovery requests.  Let me

```
 1    just add a little bit of context.  Generally speaking,
 2    in Federal court -- I know you guys were in State
 3    court originally, but after you came to Federal court,
 4    normally discovery requests are placed in abeyance
 5    pending your discovery planning meeting.
 6           I don't know at what point in time that you
 7    had a discovery planning meeting prior to the
 8    scheduling conference that we had fairly recently, but
 9    we addressed certain deadlines in the scheduling
10    order.  Or I should more accurately say Judge McDonagh
11    (phonetic) did.
12           And so at this point in time, if -- if there
13    are discovery requests that are overdue, talking to me
14    about them in this hearing is -- is -- is not really
15    helpful.  It's not an action item for me, but if you
16    file a motion to compel because somebody's overdue on
17    some discovery requests or interrogatories, the Court
18    will deal with that.
19           Right now I'm not aware of those motions
20    being pending.  So let -- before I go back to the
21    County, Mr. Flores and Mr. Cavett, have you guys filed
22    any motions to compel discovery requests here in
23    Federal court?
24           MR. FLORES:  For -- it's Robin Flores.  I --
25    I have not, Judge.
```

1          THE COURT:  Couldn't understand you.

2          MR. CAVETT:  John Cavett, I have not.

3          THE COURT:  You -- you have not, Mr. Flores?

4          MR. FLORES:  That's correct, I have not --

5          THE COURT:  Okay.  Well, if you -- yeah.

6    Well, that's what you're going to have to do if you

7    feel like some of them are overdue.  So -- so -- and

8    that will tee up that issue.

9          Now, as -- as to the County, counsel, what --

10   what does the County intend to do to try to determine

11   whether information has actually been lost or whether

12   it's within some combination of your control and that

13   of Neil Pinkston?

14         MR. HOBBS:  Your Honor, this is quite

15   (inaudible) hearsay, but as think I tried say before

16   and on previous occasions, we do not believe that any

17   information -- I'm sorry, video information

18   relative -- or documentation relative to these cases

19   has, in fact, been lost.

20         We will endeavor to obtain -- I guess we're

21   going to have to do -- (inaudible).  I think the

22   easiest thing for us to do is -- is compile everything

23   we've got and send it to everybody.  These cases are

24   consolidated.  We'll make sure everybody has

25   everything we have.

```
 1              THE COURT:  All right.  And let me ask, the

 2     discrepancy that I'm hearing is, is it sounds like for

 3     whatever reason that the DA's office may have more

 4     video footage than the -- than you -- you do.  And

 5     when I say you, I'm talking to the Hamilton County

 6     Sheriff's Office.

 7              MR. HOBBS:  (Inaudible due to cross talking)

 8     And that may be correct.  But now understand and

 9     pardon me for interrupting, I -- I am informed that

10     everything the DA has, the sheriff has.

11              THE COURT:  Well, I -- I need you to verify

12     that.

13              UNIDENTIFIED MALE SPEAKER:  (Inaudible due to

14     cross talking).

15              UNIDENTIFIED MALE SPEAKER:  That's actually

16     what the sheriff has said all along.  He just stated

17     that he had a hundred and something hours, and now

18     we're discovering that Pinkston has over 500.  There's

19     a discrepancy there.

20              MR. HOBBS:  Is that Mr. Klaver?  Is that

21     Mr. Klaver?

22              MR. KLAVER:  Yes, it was.

23              MR. HOBBS:  Mr. Klaver, (inaudible due to

24     cross talking).

25              UNIDENTIFIED MALE SPEAKER:  You just said
```

1    that the -- that Sheriff's Department has the same

2    thing as the district attorney has.  You made that

3    statement here today.  You just stated that you had

4    the same thing that the district attorney has.

5            THE COURT:  Well, here -- here's the

6    discrepancy.  Earlier in the conversation counsel for

7    the County indicated that they thought they had

8    directionally about 180 hours of footage.  And then --

9            MR. HOBBS:  At least.

10           THE COURT:  At least.  But that's a pretty

11   big difference from 500 hours that -- that we've also

12   been told that the District Attorney's Office has.

13   And so that's -- that's something that needs to be

14   reconciled to see if -- if there's a difference

15   between the amount of footage that the district

16   attorney has and that which the Hamilton County

17   Sheriff's Department has.

18           Because -- because we need to at best as

19   possible re-create all of the footage that was lost

20   from the server.  And we -- and -- and the only way to

21   do that is -- is -- is to figure out what footage

22   still exists in any repository, whether it's the

23   district attorney's office or the sheriff department

24   or any other place it might exist.

25           And we need to look at it and determine

1    whether it reflects all of these stops that Mr. Wilkey

2    made or whether it apparently does not reflect all the

3    stops that Mr. Wilkey made.

4            UNIDENTIFIED MALE SPEAKER:  Your Honor --

5            THE COURT:  And -- and County let me just say

6    this.  I mean, the legal duty that the County has is

7    to preserve the evidence.  And at this point, I know

8    evidence has been lost, but I -- the Court does not

9    know in truth whether the evidence has been lost,

10   whether it still exists, and the only persons who can

11   tell me that are the county's attorneys.  That is your

12   burden.

13           It -- I'm not blaming either one of you for

14   failure of a server.  You had nothing to do with that.

15   But as soon as these lawsuits were filed, you as the

16   county's attorney had a duty to make sure that the

17   County preserve this evidence.

18           Now that I know a server failed and video

19   footage for two or three years has been lost, I need

20   you to figure out what evidence was lost and let the

21   Court know that.  That is your duty.

22           And I -- I can't say it strongly enough, but

23   I'm not sure I'm making myself clear enough about

24   this.

25           MR. HOBBS:  Yes, we are clear Your Honor.

1        THE COURT:  Okay.

2        MR. HOBBS:  We -- we will endeavor to provide

3    everything we have, and we will report to the Court

4    and the parties anything we think we do not have.

5        THE COURT:  Okay.

6        MR. HOBBS:  I (inaudible) we can do it.

7        THE COURT:  How much time do you think you

8    need, Counsel, to do that?

9        MR. HOBBS:  Unfortunately, Your Honor, we

10    don't know -- we don't know what tomorrow brings.  We

11    understand there's a meeting today.  We may be -- we

12    may be sent home.  So I'm not --

13        THE COURT:  Well, I'll tell you what.  Why

14    don't you -- what I'd like for you to do is, is

15    provide a -- let's do a weekly status report on your

16    efforts.  I realize that the Covid 19 pandemic is

17    greatly complicating everybody's work schedules.  I

18    get it.  There's something that can be worked around.

19        This is a front-burner item, and is certainly

20    not going to be an excuse for the -- for the Sheriff's

21    Department to lose any other evidence that -- that we

22    might need for these cases.  So I think everybody

23    understands that.

24        But it may, of course, result in some

25    unavoidable delays when people are physically told

1   that they cannot come to work.  That's a problem.

2   Because we do need people physically to be present to

3   review things.

4        So, Mr. Hobbs and Ms. Milling, I would ask

5   that by Wednesday of next week you file a very short

6   something status report with the Court letting us know

7   of your efforts to compile the video footage that does

8   exist to ensure that no evidence is lost, and, you

9   know, what -- what your anticipated timetable will be.

10        And then we'll just -- we're going to stay on

11   this until -- until we can figure out a realistic date

12   by which this can be done.

13        MR. HOBBS:  Your Honor, if I may -- if I may

14   ask, I think it would be easier on everybody involved

15   if we disseminated the information (inaudible) or

16   documentation or video whatever as soon as we get it.

17   We will start from scratch, and we will -- in some

18   cases it's been provided, it does not matter.

19        MS. MILLING:  Your Honor, would you be okay

20   with us providing it without reviewing it and just say

21   here, here's what we have?

22        THE COURT:  Well, no.  What I want you to

23   do --

24        MS. MILLING:  (Inaudible due to cross

25   talking) --

1          THE COURT:  Ms. Milling, hang on a second.

2     The risk in doing it piecemeal is that we're not going

3     to be able to figure out exactly what has been

4     produced.  What I'd like you to do is to compile

5     everything to try to determine what's -- what has been

6     lost and what still remains.

7          MR. KLAVER:  Your Honor (inaudible) this is

8     William Klaver.  I would like to ask that any of the

9     information goes to the Court because -- before it

10    reaches any of us.

11         THE COURT:  Well, here's -- Mr. Klaver, yeah,

12    I understand what you're asking, but that's not how

13    things work.  Discovery generally is sent from one

14    party to another.  It -- the only thing unusual about

15    the situation is that we have a situation where a

16    server failed and lots of video footage was lost, and

17    that's why the Court is intervening at this point.

18         I don't need all the information sent to me.

19    What I need is a synopsis of what the County has done

20    to find the lost evidence, and they need to look at it

21    and then tell the Court what has been -- what they

22    believe has been lost and what still remains, so

23    that -- so that I can determine under rule 37(e) what

24    additional steps the Court needs to do.

25         And that could take a variety of forms.  It

1  may -- it may be me appointing a third-party forensic

2  examiner to come in and see if other evidence can be

3  reconstructed.  So that's an option.  And then another

4  option is if I find that evidence has been lost under

5  37(e), it may lead to some sanctions against the

6  County.

7          But we don't need to talk about sanctions yet

8  until we determine -- until we make a determination as

9  to whether evidence has truly been lost or whether it

10  can be reconstructed, okay?  Everybody understand me?

11          UNIDENTIFIED MALE SPEAKER:  Thank you, Your

12  Honor.

13          THE COURT:  All right.

14          MR. FLORES:  Your Honor, this is Robin

15  Flores.  May I make a suggestion as to how that may

16  occur as far as trying to just determine what they

17  have and what's been lost?

18          THE COURT:  Yeah, if you have a practical

19  suggestion along those lines, go ahead.

20          MR. FLORES:  Yes, sir.  Again, I base this

21  off my direct participation with the County and my

22  client talking with the district attorney and my

23  clients and the investigators is that the DA got over

24  500-something hours of video evidence over a period of

25  over a year involving Mr. Wilkey.

```
 1          And it took some effort for the DA to get it,
 2    but they finally did.  If we could use -- if the DA is
 3    going to cooperate with Mr. Hobbs and Ms. Milling, we
 4    can find out what the County has, what the DA actually
 5    has and then compare that to what the -- Ms. Milling
 6    and Mr. Hobbs, I believe that they are that they
 7    got -- in other words, if they -- if the County has
 8    180 hours that they can put their hands on, and the
 9    district attorney has about 300 hours more, then we --
10    that may give us a starting point as to what -- what
11    the County can do from that point on to find out if
12    the rest of this information, you know, the other
13    300-plus hours are missing.
14          That may be a starting point if I could
15    suggest that.  And if the DA will cooperate.  Sounds
16    like they would -- they would, but that's just a
17    suggestion.
18          THE COURT:  Well, I -- I -- thank you,
19    Mr. Flores.  I think that's what I did suggest was a
20    comparison of those two banks of data, the -- that the
21    DA has in his possession and compared those that the
22    Hamilton County Sheriff's Department has in its
23    possession.
24          I do think that the comparison needs to be
25    made.  And then I think the Sheriff's Department needs
```

1    to also really think about whether there's any other

2    place that these -- that any of this video evidence or

3    other evidence related to these incidents may exist.

4         And -- and I would say this to the county's

5    attorney, if -- I would not anticipate any resistance

6    from the -- from the from the DA, but this is -- this

7    is the Hamilton County Sheriff's Department's

8    evidence.

9         I presume that the only reason the DA has it

10   is because it was given to them by the Hamilton County

11   Sheriff's Office.  And at some point the Hamilton

12   County Sheriff's Office lost its copy of that

13   evidence.  Or some of it.

14        And so I wouldn't anticipate that the DA

15   would have a problem with restoring to the County a

16   copy of whatever evidence the sheriff's department has

17   given to the DA.  But if you do run into a problem

18   with that, let the Court know and maybe we'll try and

19   help work it out.

20        MS. MILLING:  We will, Your Honor.

21        THE COURT:  All right, Counsel.  I think we

22   have a -- I believe we have a plan in place to try to

23   recover the lost evidence and determine what was lost.

24        Is there -- while we're convened here

25   together, does anyone else have anything they would

1  like to bring up?

2          UNIDENTIFIED MALE SPEAKER:  Your Honor, are

3  you going to put this into an order?

4          THE COURT:  Yes.

5          UNIDENTIFIED MALE SPEAKER:  That would be --

6          MR. KLAVER:  It's William Klaver.  I -- I

7  have nothing, Your Honor.

8          THE COURT:  Okay.  All right, then.  We will

9  adjourn this hearing, and I appreciate everybody's

10 cooperation.  You guys did good job not talking over

11 each other, and I just would hope everybody will stay

12 safe and healthy.  Thank you.

13

14                    (Hearing concluded.)

15

16

17

18

19

20

21

22

23

24

25

# R E P O R T E R ' S  C E R T I F I C A T E

STATE OF TENNESSEE

COUNTY OF RUTHERFORD

         I, Denise Parker Gonzalez, Licensed Court
Reporter, with an office in Murfreesboro, Tennessee,
certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the
above-entitled matter as provided to me by counsel for the
plaintiff.

DENISE PARKER GONZALEZ
Paradox Reporting
Tennessee Licensed Court Reporter
LCR#578, Expires 06/30/2016
Notary Public
State of Tennessee at Large
My Commission Expires 04/24/2018

# A

**abeyance** (47:4)
**able** (21:14)(21:25)(29:8)(29:9)(33:13)(34:3)(34:23)
(42:21)(54:3)
**above-captioned** (1:16)
**above-entitled** (59:9)
**absolute** (38:6)
**absolutely** (43:7)
**abstract** (30:9)
**access** (34:23)(45:20)
**accessible** (22:5)(46:12)
**accompanying** (12:3)
**accurately** (47:10)
**act** (43:20)
**action** (13:12)(47:15)
**activating** (5:2)
**actual** (41:4)
**actually** (19:16)(41:9)(42:4)(43:13)(45:25)(48:11)
(49:15)(56:4)
**adas** (40:16)
**add** (47:1)
**additional** (17:22)(18:13)(42:15)(54:24)
**address** (4:25)
**addressed** (47:9)
**addresses** (17:15)
**adhered** (16:11)
**adjourn** (58:9)
**advise** (15:11)
**advised** (46:16)
**advising** (40:3)
**affirmative** (14:22)(14:23)
**after** (16:12)(23:2)(33:16)(47:3)
**afterwards** (24:2)
**again** (4:19)(12:23)(23:25)(25:15)(31:9)(37:3)(39:15)
(55:20)
**against** (13:5)(24:15)(27:8)(28:1)(29:24)(31:18)
(41:12)(42:23)(43:5)(43:16)(43:24)(55:5)
**ago** (32:10)
**agree** (10:6)
**ahead** (6:6)(8:2)(25:17)(55:19)
**ain't** (9:18)
**all** (3:3)(4:4)(4:6)(6:8)(7:25)(8:1)(8:14)(9:4)(9:10)(9:15)
(9:19)(9:22)(10:3)(10:13)(10:25)(11:3)(11:7)(11:16)
(12:11)(12:19)(13:24)(14:15)(14:16)(15:18)(17:9)
(17:10)(20:9)(21:9)(22:3)(22:6)(23:1)(23:20)(25:24)
(26:4)(26:7)(26:10)(27:3)(30:23)(31:22)(32:11)(32:14)
(34:11)(35:10)(35:19)(37:15)(37:25)(38:23)(39:19)
(42:22)(43:22)(44:23)(46:20)(49:1)(49:16)(50:19)(51:1)
(51:2)(54:18)(55:13)(57:21)(58:8)
**allegations** (15:1)(42:23)(43:19)(43:23)
**allege** (14:18)(27:7)
**alleged** (43:20)
**allowing** (11:15)
**almost** (33:3)(33:4)
**along** (49:16)(55:19)
**already** (42:19)(44:10)(46:1)
**also** (7:24)(9:25)(10:11)(11:25)(29:6)(34:18)(36:7)
(36:23)(37:19)(50:11)(57:1)
**altered** (46:11)
**among** (5:13)(42:24)
**amount** (24:3)(50:15)
**analysis** (18:23)
**another** (8:7)(10:12)(17:7)(40:19)(54:14)(55:3)
**answer** (13:20)(18:25)(20:15)(28:9)
**anticipate** (57:5)(57:14)
**anticipated** (16:11)(53:9)
**anticipation** (14:9)(17:19)
**any** (3:10)(4:4)(6:1)(6:3)(6:10)(6:11)(7:5)(7:11)
(8:23)(10:15)(11:4)(14:10)(16:4)(16:5)(16:17)(18:6)
(18:12)(19:3)(19:4)(19:7)(20:2)(20:24)(23:12)(24:4)
(24:19)(24:20)(25:3)(27:25)(37:7)(43:24)(45:15)(46:11)
(46:17)(47:22)(48:16)(50:22)(50:24)(52:21)(54:8)
(54:10)(57:1)(57:2)(57:5)
**anybody** (25:3)(45:15)(46:17)
**anymore** (18:21)
**anyone** (3:4)(57:25)
**anything** (14:2)(28:17)(39:2)(52:4)(57:25)

# B

**anyway** (38:19)
**apology** (33:24)
**apparently** (12:19)(12:20)(27:21)(51:2)
**appear** (13:23)
**appears** (13:3)
**appointing** (55:1)
**appreciate** (58:9)
**approximately** (34:7)(40:1)
**april** (28:16)
**archives** (43:15)
**are** (4:4)(5:14)(6:3)(6:11)(7:5)(7:6)(8:23)(9:1)
(10:13)(10:22)(11:4)(11:10)(13:8)(15:5)(16:5)(20:19)
(21:4)(21:10)(21:13)(23:18)(24:6)(24:14)(25:9)(25:12)
(25:13)(26:11)(28:16)(30:17)(30:19)(31:13)(31:25)
(32:15)(33:3)(33:22)(34:2)(34:18)(36:2)(36:11)(38:11)
(46:5)(46:19)(47:4)(47:13)(48:7)(48:23)(51:11)(51:25)
(52:25)(56:6)(56:13)(58:2)
**argue** (18:20)
**argument** (13:21)
**arises** (13:19)(14:8)(14:10)(14:13)
**arose** (23:3)
**around** (52:18)
**arrest** (26:17)
**arrests** (26:10)(27:9)
**ask** (3:19)(3:24)(5:18)(5:22)(10:18)(10:22)(13:22)
(14:3)(23:16)(26:6)(27:2)(27:17)(35:22)(36:20)(39:5)
(39:6)(40:18)(42:1)(49:1)(53:4)(53:14)(54:8)
**asked** (4:25)(5:3)(17:25)(38:18)(41:5)
**asking** (27:9)(54:12)
**assistant** (34:14)
**assume** (9:7)(30:21)(38:23)
**assure** (17:11)(20:11)(44:14)
**attached** (22:21)(28:5)(36:17)
**attacks** (27:25)
**attempting** (9:1)
**attend** (4:21)
**attorney** (8:15)(26:3)(28:19)(30:3)(30:10)(30:23)
(31:14)(33:8)(33:11)(34:3)(34:15)(35:1)(35:6)(40:14)
(43:15)(50:2)(50:4)(50:16)(51:16)(55:22)(56:9)(57:5)
**attorneys** (6:1)(6:3)(8:23)(17:9)(21:25)(28:1)(43:11)
(51:1)
**attorney's** (29:7)(30:19)(31:6)(42:20)(45:11)(50:12)
(50:23)
**audio** (1:17)(33:21)(44:25)
**available** (22:9)(27:15)(42:25)
**avoid** (16:16)(25:16)
**aware** (4:25)(33:7)(33:9)(47:19)

# B

**back** (7:21)(9:14)(10:22)(11:1)(22:1)(22:2)(22:4)
(24:10)(24:12)(27:20)(28:10)(36:12)(44:4)(47:20)
**backdrop** (13:5)
**background** (25:16)
**backseat** (36:12)(37:8)
**backup** (21:3)
**bad** (43:20)(44:25)
**banks** (56:20)
**baptism** (41:4)(43:4)
**base** (55:20)
**basis** (34:20)
**beating** (20:23)
**because** (4:21)(5:15)(10:5)(10:6)(10:17)(11:20)(17:20)
(18:9)(18:24)(19:2)(20:9)(21:1)(25:4)(26:12)(30:3)
(32:6)(33:4)(37:24)(40:16)(40:19)(42:3)(42:11)(44:21)
(45:10)(47:16)(50:18)(53:2)(54:9)(57:10)
**been** (15:19)(15:24)(16:7)(17:19)(18:19)(19:6)(22:18)
(23:24)(26:2)(28:14)(29:7)(29:8)(29:9)(29:13)(30:2)
(30:3)(32:6)(32:14)(32:20)(32:24)(35:18)(35:19)(37:23)
(37:24)(38:4)(40:25)(42:10)(42:11)(42:19)(42:21)
(43:25)(44:4)(44:5)(44:11)(45:13)(48:11)(48:19)(50:12)
(51:8)(51:9)(51:19)(53:18)(54:3)(54:5)(54:21)(54:22)
(55:4)(55:9)(55:17)
**before** (3:21)(10:19)(11:5)(11:10)(14:2)(16:22)(24:1)
(32:15)(41:12)(46:22)(47:20)(48:15)(54:9)
**behalf** (7:15)(7:22)(8:11)(10:11)(11:12)(11:24)
**being** (5:14)(10:14)(12:22)(13:16)(13:18)(16:21)
(16:24)(17:5)(20:19)(22:24)(25:12)(25:20)(30:17)
(33:13)(34:23)(47:20)

**believe**                                                    **correct**

**believe** (3:13)(3:14)(8:7)(13:6)(13:9)(14:16)(22:12)
(26:2)(27:14)(27:15)(34:20)(36:2)(40:21)(44:22)(44:24)
(48:16)(54:22)(56:6)(57:22)
**believed** (15:10)(19:19)
**benefit** (33:5)
**best** (50:18)
**beta** (37:24)
**between** (14:14)(31:24)(40:15)(46:2)(50:15)
**beyond** (32:7)
**big** (50:11)
**biggs** (12:1)
**bit** (11:20)(42:12)(47:1)
**bits** (42:16)
**blaming** (51:13)
**bobby** (8:4)
**bodies** (36:10)
**body** (37:3)(37:20)(37:21)(37:22)
**body-cam** (16:4)(20:25)
**body-cams** (37:2)
**bond** (22:20)
**brewer** (8:4)(8:5)
**brief** (22:22)
**bring** (46:14)(58:1)
**bringing** (5:1)
**brings** (52:10)
**broadly** (36:22)
**broken** (25:11)
**built** (12:21)
**bunch** (17:3)
**burden** (51:12)
**but** (3:9)(5:12)(6:2)(7:10)(8:8)(11:21)(13:21)(14:2)
(14:21)(17:24)(18:2)(21:13)(22:2)(24:2)(25:9)(26:4)
(28:3)(28:15)(29:13)(30:4)(30:6)(32:19)(33:9)(33:17)
(36:10)(38:19)(38:24)(39:24)(40:6)(41:22)(41:24)
(42:13)(42:17)(43:21)(45:13)(45:24)(47:3)(47:8)(47:15)
(48:15)(49:8)(50:10)(51:8)(51:15)(51:22)(52:24)(54:12)
(55:7)(56:2)(56:16)(57:6)(57:17)

**C**

**call** (6:11)(6:23)(9:2)(9:11)(10:14)(10:17)(21:20)
(23:8)(23:10)(24:17)(29:21)(32:23)(42:21)(45:15)
**called** (4:23)(29:15)
**call-in** (9:5)(9:7)
**came** (1:16)(38:14)(38:23)(47:3)
**camera** (36:25)(37:20)(37:21)
**cameras** (36:10)(36:11)(37:3)(37:5)(37:23)
**cams** (15:2)(15:4)
**can** (3:23)(7:4)(17:23)(20:6)(20:7)(20:11)(23:22)
(26:6)(26:13)(32:23)(42:14)(45:15)(45:22)(51:10)(52:6)
(52:18)(53:11)(53:12)(54:23)(55:2)(55:10)(56:4)(56:8)
(56:11)
**candor** (38:6)
**cannot** (17:21)(20:8)(23:20)(27:21)(31:15)(38:10)
(38:22)(53:1)
**can't** (22:11)(29:12)(45:23)(51:22)
**capacity** (1:8)(1:10)
**caption** (11:21)
**capture** (16:22)(21:9)
**car** (14:25)(20:24)(37:5)(37:9)(37:10)
**cars** (14:24)(36:11)
**case** (1:5)(6:18)(8:16)(10:12)(20:2)(20:8)(22:18)
(26:13)(27:8)(27:19)(29:10)(31:15)(31:16)(32:13)
(33:19)(35:12)(38:19)(41:15)(42:7)
**cases** (10:10)(10:12)(18:19)(18:22)(20:10)(20:20)
(22:8)(23:21)(23:23)(24:5)(26:8)(27:16)(48:18)(48:23)
(52:22)(53:18)
**cast** (3:23)
**cause** (1:16)
**caused** (12:25)
**cavett** (2:5)(6:21)(7:1)(7:19)(8:25)(9:11)(9:17)(9:20)
(9:21)(9:22)(10:3)(10:4)(10:16)(11:24)(13:10)(22:13)
(26:5)(26:19)(26:22)(36:7)(47:21)(48:2)
**cavett's** (12:1)(35:21)
**cell** (7:17)(40:24)(41:4)
**certain** (15:22)(22:1)(22:13)(42:10)(47:9)
**certainly** (16:4)(16:12)(19:25)(52:19)
**certified** (28:7)
**certify** (59:7)

**chance** (38:11)
**changed** (46:11)
**changes** (25:3)(46:17)
**characters** (3:23)
**charge** (34:21)
**charges** (31:18)
**chattanooga** (1:2)
**chunks** (40:15)
**circular** (33:4)
**circumstance** (20:4)
**circumstances** (5:15)
**city** (37:5)
**civil** (14:19)(17:14)(33:19)(42:8)
**claim** (20:20)(27:5)
**claims** (19:10)(19:17)(43:5)(43:16)
**clarification** (26:6)
**class** (13:12)
**class-action** (35:21)
**clear** (51:23)(51:25)
**client** (55:22)
**clients** (33:6)(55:23)
**co-counsel** (12:1)
**code** (9:7)
**codefendants** (42:24)(43:16)
**colin** (8:5)
**colleague** (22:16)
**colleagues** (28:2)
**collection** (16:15)(16:18)
**colloquial** (24:25)
**com** (1:23)
**combination** (42:25)(43:14)(48:12)
**come** (25:5)(33:14)(38:7)(44:4)(53:1)(55:2)
**comes** (20:22)(21:23)
**coming** (22:3)(40:19)
**commencement** (14:11)
**commission** (59:25)
**commonly** (16:15)
**communications** (15:15)
**compare** (56:5)
**compared** (56:21)
**comparison** (56:20)(56:24)
**compel** (47:16)(47:22)
**compile** (48:22)(53:7)(54:4)
**compiled** (44:3)
**complaints** (15:1)
**compliance** (31:25)
**complicating** (52:17)
**computers** (11:16)
**concern** (28:13)
**concluded** (58:14)
**conduct** (11:16)(17:19)(20:21)
**conducted** (14:18)
**conference** (47:8)
**confidence** (44:14)
**confirm** (12:7)(29:17)
**confirms** (14:2)
**conflict** (31:24)
**connection** (3:3)(43:8)
**consensus** (5:13)
**consequently** (5:18)
**consider** (28:1)
**consists** (40:7)
**consolidated** (48:24)
**contact** (20:4)
**containing** (12:15)
**contains** (17:2)
**content** (34:18)
**contents** (33:9)
**context** (47:1)
**control** (32:17)(46:13)(48:12)
**convened** (57:24)
**conversation** (23:13)(39:22)(41:25)(50:6)
**cooperate** (56:3)(56:15)
**cooperation** (58:10)
**copies** (15:23)(19:20)(20:16)(30:24)(31:5)
**copy** (16:24)(17:6)(25:25)(39:9)(39:10)(41:7)(41:22)
(57:12)(57:16)
**correct** (23:5)(29:16)(37:17)(39:17)(39:18)(48:4)

**correctly**

(49:8)(59:7)
**correctly** (41:20)
**could** (4:21)(5:4)(16:23)(17:5)(18:7)(18:21)(30:10)
(39:20)(40:18)(41:25)(42:2)(45:21)(54:25)(56:2)(56:14)
**couldn't** (48:1)
**counsel** (7:25)(9:24)(10:25)(12:13)(22:8)(31:16)
(32:11)(33:18)(34:22)(38:7)(42:5)(46:16)(48:9)(50:6)
(52:8)(57:21)(59:9)
**county** (1:6)(1:8)(1:10)(7:22)(10:2)(11:14)(11:19)
(12:4)(12:8)(12:14)(12:24)(14:21)(14:23)(15:3)(18:1)
(19:2)(19:8)(21:17)(23:4)(25:6)(27:9)(28:1)(28:9)
(28:19)(29:4)(30:11)(30:20)(30:22)(31:4)(31:14)(32:17)
(33:16)(35:12)(35:13)(36:25)(37:4)(38:24)(40:14)(43:1)
(43:12)(46:3)(46:20)(46:24)(47:21)(48:9)(48:10)(49:5)
(50:7)(50:16)(51:5)(51:6)(51:17)(54:19)(55:6)(55:21)
(56:4)(56:7)(56:11)(56:22)(57:7)(57:10)(57:12)(57:15)
(59:4)
**county's** (43:2)(43:22)(51:11)(51:16)(57:4)
**couple** (9:3)(27:24)
**course** (12:2)(43:3)(44:15)(52:24)
**court** (1:1)(3:3)(3:6)(3:8)(3:24)(4:3)(4:10)(4:13)
(4:18)(4:20)(5:25)(6:9)(6:15)(6:19)(7:1)(7:5)(7:10)
(7:14)(7:20)(7:25)(8:9)(8:14)(8:18)(8:20)(9:4)(9:9)
(9:15)(9:19)(9:22)(10:4)(10:25)(11:3)(11:11)(12:11)
(14:7)(17:23)(18:3)(19:1)(19:3)(21:2)(21:3)(21:8)
(21:16)(22:7)(23:1)(23:7)(23:12)(23:18)(24:9)(24:17)
(24:21)(24:23)(25:15)(25:20)(25:24)(26:4)(26:18)
(26:19)(27:12)(29:4)(30:8)(30:15)(30:17)(31:3)(31:9)
(31:12)(31:22)(31:25)(32:8)(32:11)(32:16)(33:20)(34:1)
(34:6)(34:9)(35:22)(36:15)(37:7)(37:12)(37:15)(37:25)
(38:3)(38:6)(38:10)(38:20)(39:3)(39:6)(39:15)(39:19)
(40:2)(40:11)(40:22)(41:11)(42:5)(44:6)(44:10)(44:19)
(45:2)(45:4)(47:2)(47:3)(47:17)(47:23)(48:1)(48:3)
(48:5)(49:1)(49:11)(50:5)(50:10)(51:5)(51:8)(51:21)
(52:1)(52:3)(52:5)(52:7)(52:13)(53:6)(53:22)(54:1)
(54:9)(54:11)(54:17)(54:21)(54:24)(55:13)(55:18)
(56:18)(57:18)(57:21)(58:4)(58:8)(59:5)(59:23)
**courthouse** (4:7)(5:4)
**courtroom** (3:13)(5:2)
**covering** (3:25)
**covers** (8:6)
**covid** (5:16)(52:16)
**created** (11:18)(14:22)(20:7)(40:20)
**criminal** (33:7)(38:15)(39:13)
**criminally** (41:15)
**cross** (4:16)(24:22)(33:1)(33:5)(49:7)(49:14)(49:24)
(53:24)
**custer** (8:19)
**custodians** (15:10)(15:19)(15:24)
**custody** (16:3)(16:9)(32:16)(46:13)
**custom** (20:21)(27:4)

**D**

**dan** (4:6)
**daniel** (1:7)(8:11)(8:16)(14:16)(15:17)(20:12)(21:21)
(32:24)(34:11)(39:25)(43:24)
**dark** (44:25)
**da's** (22:4)(26:9)(29:14)(30:7)(32:1)(35:10)(35:11)
(35:24)(38:14)(41:5)(41:11)(41:18)(41:20)(46:2)(49:3)
**dash** (15:2)(15:4)
**dash-cam** (16:3)(20:24)(36:9)(36:23)(37:1)(37:13)
(37:16)(39:25)(40:20)
**data** (11:15)(11:17)(16:17)(16:23)(17:3)(19:20)(24:8)
(36:19)(42:14)(46:7)(46:9)(56:20)
**date** (11:23)(14:4)(20:5)(53:11)
**deadlines** (47:9)
**deal** (47:18)
**december** (13:16)(13:19)(14:14)(26:11)(39:22)
**decision** (46:6)
**dee** (2:13)(7:23)(9:25)(10:1)
**defendant** (15:18)(27:8)
**defendants** (1:11)(2:12)(8:2)
**delays** (52:25)
**deleted** (16:24)
**deliberate** (44:16)
**demand** (28:15)
**denise** (1:23)(59:5)(59:22)
**department** (12:14)(12:16)(19:8)(21:24)(30:12)(30:21)

(30:22)(31:4)(31:12)(34:10)(36:1)(43:21)(45:16)(46:12)
(50:1)(50:17)(50:23)(52:21)(56:22)(56:25)(57:16)
**department's** (57:7)
**deputies** (10:9)(11:19)(15:18)(15:21)(18:17)(34:4)
(43:25)
**deputy** (1:8)(1:10)(8:4)(8:5)(8:11)(8:20)(14:16)
(15:18)(38:15)(43:24)
**described** (41:8)
**despair** (36:13)
**determination** (55:8)
**determine** (12:25)(18:8)(24:13)(25:5)(32:12)(42:14)
(45:14)(48:10)(50:25)(54:5)(54:23)(55:8)(55:16)(57:23)
**determined** (42:9)
**develop** (20:20)
**device** (5:2)(5:6)
**devices** (11:17)
**devil** (35:8)
**diaries** (22:24)
**did** (10:16)(20:2)(20:4)(21:16)(21:17)(21:18)(21:19)
(22:17)(23:8)(24:3)(28:14)(31:4)(33:21)(34:9)(40:14)
(41:3)(41:6)(47:11)(56:2)(56:19)(58:10)
**didn't** (8:21)(25:3)(29:4)(29:20)(30:6)(30:23)(39:24)
(40:4)(40:6)
**difference** (50:11)(50:14)
**different** (6:24)(13:6)(14:19)(19:11)(24:15)(29:10)
(42:16)
**difficulty** (33:11)
**direct** (55:21)
**directed** (24:17)(24:19)(46:20)
**directionally** (50:8)
**disappeared** (19:23)
**disclose** (33:8)(35:2)(35:9)
**discovering** (49:18)
**discovery** (17:22)(18:13)(27:18)(31:25)(38:15)(38:19)
(39:12)(42:15)(46:24)(46:25)(47:4)(47:5)(47:7)(47:13)
(47:17)(47:22)(54:13)
**discrepancy** (29:10)(49:2)(49:19)(50:6)
**discretion** (5:12)
**discuss** (18:5)
**discussion** (5:11)(11:6)(11:9)(13:21)(22:17)
**discussions** (22:7)(22:25)
**disgorge** (30:23)
**disk** (25:25)
**disparity** (36:8)(36:13)
**disseminate** (31:20)(35:2)
**disseminated** (53:15)
**distance** (9:1)
**district** (1:1)(5:10)(21:25)(28:19)(29:7)(30:3)(30:10)
(30:19)(30:23)(31:6)(31:13)(33:8)(33:11)(34:2)(34:14)
(35:6)(40:14)(42:19)(43:14)(45:10)(50:2)(50:4)(50:12)
(50:15)(50:23)(55:22)(56:9)
**division** (5:10)
**docket** (12:4)
**document** (22:22)(28:5)(28:11)
**documentation** (48:18)(53:16)
**documents** (15:20)(16:17)(31:5)
**does** (21:8)(24:13)(26:9)(30:4)(34:16)(36:22)(37:4)
(37:6)(37:7)(37:9)(37:11)(41:22)(45:7)(46:10)(46:11)
(48:10)(51:2)(51:8)(53:7)(53:18)(57:25)
**doesn't** (37:7)
**doing** (4:19)(21:17)(54:2)
**domain** (20:14)
**done** (5:14)(12:24)(16:13)(35:12)(44:1)(44:2)(44:12)
(44:13)(45:24)(53:12)(54:19)
**don't** (3:8)(6:2)(6:9)(8:8)(10:5)(10:6)(13:20)(14:2)
(19:4)(19:7)(22:12)(26:16)(26:20)(27:10)(27:24)(28:13)
(28:16)(28:24)(29:2)(30:4)(30:7)(30:9)(32:5)(32:18)
(36:5)(36:6)(38:12)(38:25)(39:1)(39:15)(41:19)(41:22)
(44:21)(44:24)(45:1)(45:14)(47:6)(52:10)(52:14)(54:18)
(55:7)
**door** (9:13)
**drive** (16:23)(16:25)(17:7)(25:14)(25:18)(25:20)(26:1)
(26:2)(26:10)(29:5)(38:8)(38:17)(39:9)(39:11)
**driving** (34:21)(37:10)
**due** (4:16)(24:22)(30:1)(32:25)(33:4)(44:25)(49:7)
(49:13)(49:23)(53:24)
**during** (3:10)(12:20)
**duty** (14:8)(14:13)(15:3)(17:9)(35:11)(43:22)(51:6)

(51:16)(51:21)

## E

each  (3:9)(3:19)(3:22)(10:7)(10:18)(23:23)(58:11)
earlier  (50:6)
early  (28:6)(35:12)
easier  (53:14)
easiest  (48:22)
eastern  (1:1)
effort  (44:16)(56:1)
efforts  (17:11)(19:25)(20:16)(22:22)(52:16)(53:7)
eight  (13:8)
either  (12:5)(39:10)(43:14)(51:13)
elected  (3:13)
electronic  (11:14)(59:8)
electronically  (15:23)(16:14)(16:18)(17:16)(17:18)
(18:16)
eliminate  (11:8)
else  (3:21)(6:15)(57:25)
email  (5:8)(28:15)(40:3)(40:6)
emails  (15:15)(16:16)
empty  (3:13)
encompass  (34:16)
encompassed  (34:11)
encompasses  (37:20)
end  (10:6)(28:23)(33:18)(45:14)
endangerment  (34:20)
endeavor  (23:15)(48:20)(52:2)
energy  (44:7)
enough  (36:23)(51:22)(51:23)
ensure  (53:8)
entitled  (30:5)
equipment  (33:15)
equipped  (15:1)
esi  (16:15)
estimate  (38:10)(38:22)
eugene  (2:6)
even  (3:20)(10:19)(29:13)(35:10)
event  (14:10)
events  (16:5)(20:5)(20:19)(27:21)
eventually  (42:2)
ever  (43:20)
every  (10:19)(26:17)(39:25)(43:20)
everybody  (3:15)(9:8)(9:10)(9:17)(10:16)(48:23)
(48:24)(52:22)(53:14)(55:10)(58:11)
everybody's  (52:17)(58:9)
everyone  (3:13)(6:10)(7:17)
everything  (3:18)(26:17)(48:22)(48:25)(49:10)(52:3)
(54:5)
evidence  (11:14)(14:8)(14:13)(14:24)(15:3)(16:8)
(17:5)(17:11)(18:13)(18:21)(18:24)(19:9)(19:10)(19:14)
(19:17)(22:23)(23:5)(26:7)(26:13)(28:23)(32:13)(32:14)
(32:19)(32:23)(35:5)(35:11)(43:23)(44:8)(44:17)(45:9)
(45:13)(45:25)(51:7)(51:8)(51:9)(51:17)(51:20)(52:21)
(53:8)(54:20)(55:2)(55:4)(55:9)(55:24)(57:2)(57:3)
(57:8)(57:13)(57:16)(57:23)
exactly  (31:2)(54:3)
examination  (11:16)
examiner  (25:5)(45:20)(46:15)(46:18)(55:2)
examines  (46:18)
example  (34:24)
excuse  (34:10)(52:20)
exhibits  (28:5)
exigent  (5:15)
exist  (32:16)(40:21)(50:24)(53:8)(57:3)
exists  (21:5)(41:8)(41:9)(42:3)(43:13)(45:10)(50:22)
(51:10)
expect  (7:1)
expending  (44:7)
experienced  (12:16)
expires  (59:23)(59:25)
explanation  (19:13)
extend  (5:20)
extent  (15:14)(15:21)(22:24)
external  (25:18)
extremely  (43:5)
extricate  (21:18)
extricated  (46:1)

## F

exum  (2:7)(8:10)(10:9)(38:1)(38:4)(39:5)(39:8)(39:11)
(39:18)(40:17)(40:18)

face-to-face  (39:22)
facing  (37:8)
fact  (14:24)(20:8)(20:13)(29:12)(30:1)(32:24)(33:12)
(41:3)(48:19)
facts  (14:19)
fail  (13:1)(21:15)(30:24)
failed  (14:4)(17:20)(18:9)(18:24)(21:1)(25:2)(25:6)
(25:7)(36:17)(42:18)(45:22)(46:7)(51:18)(54:16)
failure  (12:16)(14:1)(17:15)(42:11)(42:20)(44:14)
(45:12)(51:14)
fair  (24:9)
fairly  (47:8)
far  (18:1)(22:4)(26:13)(26:25)(29:8)(35:19)(43:11)
(44:22)(55:16)
february  (11:23)
federal  (17:14)(31:25)(42:8)(47:2)(47:3)(47:23)
feel  (11:5)(48:7)
female  (4:8)(4:11)(4:15)
figure  (43:12)(44:8)(45:8)(50:21)(51:20)(53:11)(54:3)
file  (47:16)(53:5)
filed  (11:12)(11:23)(11:25)(12:5)(12:8)(13:6)(13:7)
(13:8)(13:11)(13:14)(13:15)(13:16)(13:18)(14:15)
(16:12)(19:6)(20:3)(27:2)(28:5)(29:11)(41:12)(47:21)
(51:15)
files  (38:25)
filled  (15:16)
finally  (56:2)
find  (18:5)(35:14)(41:25)(45:18)(54:20)(55:4)(56:4)
(56:11)
first  (3:3)(3:19)(13:7)(13:14)(15:6)(16:10)(17:13)
(17:24)(17:25)(18:15)(22:3)(36:20)(44:9)(45:8)
flores  (2:8)(6:5)(6:7)(6:13)(6:15)(7:16)(7:21)(8:24)
(8:25)(9:6)(9:12)(9:24)(10:22)(10:24)(11:1)(11:13)
(13:9)(22:13)(22:15)(22:16)(27:23)(27:24)(33:2)(33:21)
(33:23)(34:5)(34:7)(34:13)(35:23)(36:16)(39:4)(39:5)
(39:7)(40:8)(40:24)(46:23)(47:21)(47:24)(48:3)(48:4)
(55:14)(55:15)(55:20)(56:19)
focused  (43:22)
focuses  (28:11)
folks  (6:3)
followed  (5:11)
following  (1:16)
footage  (12:15)(12:17)(12:19)(12:21)(12:22)(13:1)
(13:3)(13:24)(14:5)(18:2)(18:17)(21:5)(21:9)(22:9)
(24:11)(25:10)(28:12)(34:3)(35:25)(36:3)(36:9)(36:19)
(36:21)(36:25)(37:16)(40:20)(40:22)(42:22)(42:24)
(49:4)(50:8)(50:15)(50:19)(50:21)(51:19)(53:7)(54:16)
for  (1:8)(1:10)(1:16)(2:4)(2:12)(5:12)(6:7)(7:16)
(8:4)(8:16)(9:8)(10:9)(11:13)(11:15)(12:12)(13:2)
(17:6)(17:8)(18:12)(20:3)(20:19)(20:22)(22:9)(23:16)
(25:6)(25:7)(26:6)(26:11)(27:4)(27:9)(27:17)(28:8)
(28:17)(34:20)(34:24)(36:25)(37:20)(38:2)(38:18)
(38:21)(40:1)(40:11)(42:2)(43:11)(44:6)(44:9)(45:10)
(45:11)(45:18)(46:6)(46:21)(47:15)(47:24)(48:22)(49:2)
(49:9)(50:6)(51:13)(51:19)(52:14)(52:20)(52:22)(56:1)
(59:9)
forcing  (35:8)
foregoing  (59:7)
forensic  (11:16)(25:5)(45:20)(46:15)(46:18)(55:1)
forget  (46:22)
forms  (54:25)
forth  (17:23)(36:12)
frankly  (5:7)(30:1)
free  (4:12)(4:16)
friend  (22:16)
friends  (28:2)
from  (1:17)(3:9)(9:2)(12:15)(12:17)(12:22)(13:25)
(21:23)(29:17)(29:21)(30:18)(30:20)(32:22)(33:8)
(33:11)(34:13)(35:1)(35:3)(35:4)(35:14)(35:25)(36:1)
(38:14)(38:24)(40:10)(42:22)(44:13)(46:1)(46:16)
(50:1)(50:20)(53:17)(54:13)(56:11)(57:6)(59:7)
front  (37:14)
front-burner  (52:19)
furnished  (30:10)

# G

**gave** (9:5)(9:6)(31:5)
**general** (19:20)(35:1)(41:24)
**generally** (14:7)(15:6)(47:1)(54:13)
**generate** (23:12)
**gerald** (2:9)
**get** (7:4)(7:18)(9:12)(11:6)(21:19)(30:4)(31:24)
(33:14)(33:15)(35:13)(38:11)(40:18)(41:21)(44:17)
(52:18)(53:16)(56:1)
**getting** (33:11)(35:5)(35:7)
**give** (15:12)(31:19)(35:20)(56:10)
**given** (14:24)(19:2)(39:13)(57:10)(57:17)
**goes** (54:9)
**goforth** (1:9)(8:5)(40:25)(41:3)(41:13)(43:4)(43:6)
(43:24)
**going** (3:19)(5:4)(6:23)(7:17)(9:13)(10:18)(11:7)
(13:20)(13:21)(13:22)(14:3)(18:3)(18:5)(21:20)(22:19)
(27:24)(30:20)(35:7)(48:6)(48:21)(52:20)(53:10)(54:2)
(56:3)(58:3)
**gone** (24:10)(24:12)
**gonzalez** (1:23)(59:5)(59:22)
**good** (3:4)(4:24)(58:10)
**got** (7:10)(8:25)(9:4)(17:13)(28:4)(28:20)(29:17)
(29:21)(33:5)(33:12)(33:18)(34:22)(34:25)(35:10)(40:9)
(42:4)(43:12)(48:23)(55:23)(56:7)
**gotten** (10:15)
**government** (1:6)(1:8)(1:10)(32:17)
**grand** (32:6)
**great** (38:8)
**greatly** (52:17)
**guess** (6:25)(19:12)(46:4)(48:20)
**guster** (2:10)(8:15)(8:19)(8:20)(10:11)
**guys** (47:2)(47:21)(58:10)

# H

**had** (1:17)(4:20)(12:16)(16:3)(16:8)(19:19)(22:7)
(23:3)(23:4)(24:2)(24:12)(30:2)(33:7)(33:11)(33:12)
(37:22)(37:23)(38:11)(38:12)(39:21)(40:2)(40:3)(41:17)
(42:19)(47:7)(47:8)(49:17)(50:3)(50:7)(51:14)(51:16)
**half** (6:16)
**hamilton** (1:6)(1:8)(1:10)(7:22)(11:14)(11:18)(12:4)
(12:7)(12:14)(12:24)(19:8)(27:8)(30:11)(30:20)(30:21)
(31:4)(32:17)(43:1)(43:12)(43:22)(46:3)(49:5)(50:16)
(56:22)(57:7)(57:10)(57:11)
**hand** (27:15)
**hands** (24:19)(56:8)
**hang** (24:24)(39:7)(54:1)
**happen** (15:7)(43:10)(44:9)
**happened** (30:25)(43:11)(44:15)
**happens** (44:23)
**happy** (26:22)
**hard** (16:23)(16:25)(17:7)(18:20)(25:18)(25:20)(26:1)
(26:2)(29:5)(39:9)
**has** (3:13)(3:21)(5:12)(12:8)(12:24)(13:11)
(14:9)(19:1)(19:2)(19:23)(23:23)(24:10)(24:12)(26:2)
(28:13)(28:20)(29:5)(31:13)(32:14)(32:20)(32:24)
(35:23)(35:24)(36:17)(36:25)(37:24)(38:8)(40:7)(41:7)
(42:11)(42:21)(43:11)(43:20)(45:13)(45:16)(46:13)
(48:11)(48:19)(48:24)(49:10)(49:16)(49:18)(50:1)(50:2)
(50:4)(50:12)(50:16)(50:17)(51:6)(51:8)(51:9)(51:19)
(54:3)(54:5)(54:19)(54:21)(54:22)(55:4)(55:9)(56:4)
(56:5)(56:7)(56:21)(56:22)(57:9)(57:16)
**hasn't** (44:5)(44:11)
**have** (3:14)(3:15)(4:1)(6:1)(6:10)(8:1)(9:23)(9:24)
(9:25)(10:6)(10:17)(12:2)(12:3)(12:10)(13:5)(13:20)
(14:2)(15:19)(15:24)(16:7)(16:19)(16:23)(17:2)(17:9)
(17:18)(18:19)(19:6)(19:21)(21:6)(22:7)(22:12)(22:17)
(22:21)(22:24)(24:8)(24:11)(24:20)(26:9)(26:10)(27:15)
(27:19)(28:17)(29:8)(29:9)(29:13)(30:10)(32:1)(32:18)
(32:20)(33:6)(35:5)(35:7)(35:18)(35:25)(36:10)(37:4)
(37:7)(37:8)(37:21)(38:7)(38:11)(38:17)(38:18)(39:9)
(39:11)(40:25)(42:1)(42:9)(42:10)(43:12)(43:25)(44:10)
(45:6)(45:20)(46:23)(47:21)(47:25)(48:2)(48:3)(48:4)
(48:6)(48:21)(48:25)(49:3)(52:3)(52:4)(53:21)(54:15)
(55:17)(55:18)(57:15)(57:22)(57:25)(58:7)
**haven't** (7:11)(10:15)(39:1)(46:25)
**having** (3:4)(3:10)(11:11)(25:4)(36:18)

**healthy** (58:12)
**hear** (6:22)(8:21)(9:2)(11:7)
**hearing** (1:16)(3:4)(3:10)(3:25)(5:20)(10:16)(11:11)
(19:19)(19:24)(28:18)(32:3)(32:22)(35:19)(36:1)(40:2)
(42:16)(47:14)(49:2)(58:9)(58:14)
**hearings** (5:14)(5:17)(5:21)
**hearsay** (48:15)
**hello** (9:17)
**help** (44:23)(57:19)
**helpful** (47:15)
**her** (43:5)
**here** (6:3)(6:13)(6:16)(6:25)(7:14)(7:15)(7:22)(8:4)
(19:4)(20:18)(28:1)(28:4)(28:16)(31:25)(43:10)(47:22)
(50:3)(50:5)(53:21)(57:24)
**here's** (50:5)(53:21)(54:11)
**he's** (5:4)(9:4)
**hesitant** (45:24)
**highway** (1:24)
**him** (4:23)(6:23)(7:4)(8:8)(8:11)(9:2)(9:7)(35:24)
(39:6)(40:3)(41:25)
**himself** (9:25)
**hines** (35:15)
**his** (1:8)(1:10)(5:5)(6:23)(13:7)(36:17)(39:24)(41:16)
(41:23)(42:23)(43:16)(56:21)
**hobbs** (2:13)(7:23)(10:1)(12:7)(12:10)(13:22)(14:3)
(14:6)(19:13)(19:18)(21:13)(21:17)(23:1)(23:4)(23:6)
(23:8)(23:10)(23:15)(23:19)(24:9)(24:16)(24:22)(25:18)
(26:20)(28:25)(29:16)(29:21)(34:25)(35:23)(36:4)
(36:21)(37:2)(43:17)(48:14)(49:7)(49:20)(49:23)(50:9)
(51:25)(52:2)(52:6)(52:9)(53:4)(53:13)(56:3)(56:6)
**hold** (7:18)(8:25)(15:7)(15:8)(15:9)(16:1)(17:10)
(20:7)(23:9)(23:13)(27:1)
**holds** (19:5)(19:15)
**home** (52:12)
**honest** (29:22)
**honor** (5:22)(6:8)(6:13)(6:18)(7:3)(7:8)(8:3)(8:10)
(8:17)(8:24)(9:6)(10:24)(11:1)(19:18)(19:23)(21:7)
(21:13)(21:22)(22:12)(22:15)(23:6)(23:11)(23:15)
(23:19)(25:19)(26:5)(26:25)(27:23)(29:1)(29:2)(29:6)
(29:16)(30:16)(31:1)(31:2)(31:8)(32:4)(33:2)(33:3)
(34:5)(36:4)(36:7)(36:24)(37:19)(38:1)(39:4)(39:11)
(39:20)(40:8)(40:17)(41:2)(44:20)(48:14)(51:4)(51:25)
(52:9)(53:13)(53:19)(54:7)(55:12)(55:14)(57:20)(58:2)
(58:7)
**hope** (21:2)(58:11)
**hopefully** (9:2)
**hours** (19:21)(21:5)(24:12)(25:10)(26:8)(26:16)(33:10)
(33:17)(34:3)(34:6)(35:17)(35:25)(36:3)(36:6)(38:5)
(38:11)(39:23)(49:17)(50:8)(50:11)(55:24)(56:8)(56:9)
(56:13)
**house** (3:17)
**housekeeping** (4:19)
**how** (21:16)(21:17)(21:18)(23:7)(23:25)(36:6)(38:10)
(39:24)(40:22)(42:17)(52:7)(54:12)(55:15)
**however** (20:11)(23:22)
**hundred** (49:17)
**hundreds** (39:23)

# I

**i'd** (5:25)(38:18)(52:14)(54:4)
**idea** (19:1)(19:2)
**identical** (11:22)
**identified** (7:12)(10:14)(10:18)(41:17)
**identify** (3:16)(3:19)(3:22)(6:1)(8:2)(10:20)(17:4)
(19:9)
**i'll** (5:21)(9:13)(11:20)(13:1)(26:25)(29:22)(35:21)
(46:6)(52:13)
**illegally** (14:18)
**i'm** (3:5)(3:18)(4:13)(6:13)(6:17)(6:23)(6:24)(7:17)
(8:4)(9:12)(9:13)(9:17)(10:17)(11:1)(11:3)(13:20)
(14:3)(21:2)(21:20)(22:2)(22:13)(26:22)(27:24)(27:25)
(28:8)(28:18)(29:19)(30:4)(30:17)(31:9)(32:21)(33:7)
(33:24)(35:18)(36:1)(36:16)(39:18)(40:5)(40:7)(41:19)
(42:16)(43:18)(45:5)(45:24)(47:19)(48:17)(49:2)(49:5)
(51:13)(51:23)(52:12)
**immediately** (44:2)
**imparted** (40:11)
**implemented** (19:16)

**impose**

**impose** (17:10)
**inaudible** (4:11)(4:16)(8:7)(8:17)(22:19)(24:22)(26:18)(27:4)(29:17)(30:5)(32:25)(33:4)(44:24)(44:25)(45:3)(48:15)(48:21)(49:7)(49:13)(49:23)(52:6)(53:15)(53:24)(54:7)
**in-car** (11:18)(12:15)(12:17)(12:21)(36:18)(36:19)(36:21)(36:25)
**incidents** (15:17)(24:14)(57:3)
**included** (12:19)
**including** (3:14)
**in-court** (5:17)
**indeed** (13:3)
**independent** (25:5)(45:19)(46:14)
**indicated** (13:13)(21:4)(35:23)(50:7)
**indict** (32:7)
**individual** (7:6)(8:6)(10:9)(15:10)(43:25)
**individually** (1:8)(1:10)
**individuals** (34:19)
**information** (14:6)(16:14)(17:16)(17:18)(18:16)(19:3)(19:21)(20:1)(20:6)(20:10)(20:12)(20:16)(20:17)(20:25)(21:20)(23:20)(23:21)(23:22)(24:1)(27:3)(27:16)(27:20)(30:6)(30:7)(30:9)(30:22)(31:19)(31:20)(31:21)(34:2)(35:2)(38:21)(40:9)(42:10)(42:16)(42:18)(43:13)(44:2)(45:22)(48:11)(48:17)(53:15)(54:9)(54:18)(56:12)
**informed** (21:13)(49:9)
**instance** (20:22)
**instructed** (41:18)
**instruction** (15:13)
**intend** (48:10)
**intending** (29:14)
**interacting** (18:18)
**interchanging** (33:24)
**interject** (38:2)(39:21)
**internal** (12:24)
**interpreted** (36:22)
**interrogatories** (47:17)
**interrupting** (49:9)
**intervening** (54:17)
**interviewed** (41:16)
**interviews** (33:9)
**into** (5:2)(10:15)(11:6)(38:7)(57:17)(58:3)
**investigating** (41:15)
**investigation** (12:25)(33:7)(42:3)
**investigators** (55:23)
**invite** (13:21)
**involved** (11:17)(14:17)(16:6)(37:22)(53:14)
**involves** (15:6)
**involving** (5:15)(38:15)(43:20)(55:25)
**iphone** (5:5)
**is that** (20:18)
**isn't** (24:6)
**issue** (22:19)(23:9)(29:7)(33:3)(40:19)(48:8)
**issued** (15:8)(37:23)
**it is** (34:16)
**item** (47:15)(52:19)
**its** (30:24)(39:9)(56:22)(57:12)
**it's** (9:7)(11:13)(11:20)(15:11)(15:12)(18:5)(23:2)(25:22)(26:1)(30:3)(33:2)(35:10)(35:12)(39:4)(39:10)(40:8)(41:9)(41:10)(47:15)(47:24)(48:12)(50:22)(53:18)(58:6)
**i've** (17:13)(22:22)(28:3)(28:4)(33:18)(34:22)(35:12)(41:9)

**J**

**jackson** (4:6)(4:13)(4:20)(4:23)(5:24)
**jacob** (1:9)(8:5)
**james** (2:7)(2:10)
**janice** (8:12)(35:15)
**january** (12:18)(12:22)(13:25)(14:1)(20:23)
**jarnigan** (11:24)
**jerry** (8:3)(10:2)(10:8)(39:21)(41:2)
**jim** (8:10)(10:9)(38:1)
**job** (58:10)
**john** (2:5)(6:21)(26:5)(35:20)(36:7)(48:2)
**joined** (11:25)
**judge** (4:2)(5:12)(6:23)(9:12)(9:23)(33:5)(47:10)(47:25)
**judges** (5:9)(5:10)(5:13)

**losing**

**july** (13:7)(13:14)(14:14)
**jury's** (32:6)
**just** (3:20)(4:19)(5:22)(6:10)(7:8)(7:15)(8:25)(10:4)(10:22)(13:1)(21:4)(23:8)(26:12)(26:14)(32:1)(36:17)(38:2)(38:19)(38:24)(40:10)(40:16)(46:5)(46:20)(47:1)(49:16)(49:25)(50:3)(51:5)(53:10)(53:20)(55:16)(56:16)(58:11)

**K**

**keep** (3:23)(30:24)(31:4)
**kelsey** (8:12)
**kept** (25:12)(25:21)(31:7)(31:10)(44:24)
**kinds** (14:19)
**klaver** (2:6)(6:17)(6:18)(6:19)(7:8)(7:9)(7:10)(7:13)(9:25)(44:20)(44:21)(45:3)(45:5)(49:20)(49:21)(49:22)(49:23)(54:7)(54:8)(54:11)(58:6)
**klaver's** (8:16)(13:7)(13:13)
**know** (3:9)(3:20)(4:21)(7:20)(10:20)(18:15)(19:4)(19:7)(20:9)(21:12)(22:8)(24:4)(26:16)(26:21)(27:25)(28:13)(28:15)(28:22)(30:4)(30:7)(30:9)(33:6)(33:13)(36:5)(36:6)(36:8)(38:12)(38:17)(38:20)(39:1)(40:15)(41:7)(41:9)(41:19)(42:1)(45:1)(45:25)(47:2)(47:6)(51:7)(51:9)(51:18)(51:21)(52:10)(53:6)(53:9)(56:12)(57:18)
**knowledge** (24:10)(30:18)

**L**

**laid** (4:23)
**landis** (34:14)(40:10)
**landis's** (40:13)
**language** (26:7)
**large** (59:24)
**last** (4:25)(13:16)(13:18)(40:2)
**late** (39:22)
**later** (14:10)
**law** (12:3)(29:10)
**lawsuit** (13:14)(13:16)(13:18)(16:6)(20:3)(27:1)(41:12)(43:9)
**lawsuits** (13:6)(13:8)(13:10)(13:11)(13:13)(13:15)(14:15)(14:22)(15:4)(16:6)(19:6)(19:11)(21:11)(21:21)(23:3)(24:15)(32:14)(32:15)(32:24)(37:22)(51:15)
**lcr** (59:23)
**lead** (34:15)(55:5)
**learned** (12:13)(14:21)
**least** (19:21)(21:7)(22:23)(28:23)(36:5)(43:17)(50:9)(50:10)
**leave** (13:2)(35:21)
**legal** (51:6)
**less** (41:10)
**let** (3:9)(3:24)(7:4)(7:20)(9:11)(10:22)(22:8)(32:5)(35:22)(36:15)(36:20)(39:6)(46:17)(46:19)(46:22)(46:25)(47:20)(49:1)(51:5)(51:20)(57:18)
**let's** (9:11)(21:3)(36:15)(52:15)
**letter** (35:14)(36:16)
**letting** (53:6)
**licensed** (59:5)(59:23)
**light** (45:16)
**like** (5:25)(9:1)(11:5)(27:25)(37:5)(42:17)(48:7)(49:2)(52:14)(54:4)(54:8)(56:16)(58:1)
**line** (4:4)(6:21)(7:2)(7:6)(8:23)(9:23)(10:23)(11:2)
**lines** (55:19)
**list** (6:8)(17:23)
**literally** (20:9)
**litigation** (14:9)(14:12)(15:7)(15:9)(16:1)(16:11)(17:8)(17:10)(17:20)(19:5)(19:15)(20:6)(23:9)(23:13)(23:23)(27:1)
**little** (11:20)(33:5)(34:8)(42:12)(47:1)
**local** (5:1)(5:8)(5:20)
**logical** (15:2)
**long** (9:1)(11:21)
**longer** (41:7)
**look** (18:11)(22:4)(24:12)(33:15)(44:10)(45:7)(45:21)(50:25)(54:20)
**looked** (5:8)(12:3)(39:1)(39:25)(40:13)
**looking** (28:8)(36:16)(37:8)(37:14)
**loop** (16:20)
**lose** (28:24)(52:21)
**losing** (16:16)

**loss**

loss (12:17)(19:20)(22:25)(24:8)(36:19)
lost (13:1)(13:4)(13:24)(14:5)(17:6)(17:12)(17:20)
(18:1)(18:2)(18:6)(18:9)(18:14)(18:24)(24:6)(32:14)
(32:20)(32:24)(36:18)(37:16)(42:11)(42:14)(44:4)(44:5)
(44:8)(44:11)(45:9)(45:13)(45:14)(45:25)(48:1)(48:19)
(50:19)(51:8)(51:9)(51:19)(51:20)(53:8)(54:6)(54:16)
(54:20)(54:22)(55:4)(55:9)(55:17)(57:12)(57:23)
lot (22:14)(38:4)(38:25)(44:7)
lots (54:16)

**M**

ma'am (4:14)
made (19:25)(20:16)(20:17)(20:19)(21:10)(22:5)(22:22)
(26:17)(27:10)(30:18)(30:20)(41:22)(46:20)(50:2)(51:2)
(51:3)(56:25)
mail (28:7)
maintained (39:9)
make (3:17)(16:24)(16:25)(24:19)(26:18)(28:4)(28:21)
(41:3)(43:19)(46:6)(46:17)(48:24)(51:16)(55:8)(55:15)
making (18:17)(25:3)(27:4)(51:23)
male (3:5)(3:7)(4:1)(6:22)(7:3)(26:24)(27:14)(29:19)
(30:13)(30:16)(31:1)(31:7)(31:10)(31:17)(32:4)(32:9)
(32:25)(44:18)(49:13)(49:15)(49:25)(51:4)(55:11)(58:2)
(58:5)
man (26:17)
many (10:17)(36:6)(38:10)(39:24)
march (28:16)
marie (1:3)
material (15:11)(15:12)
materials (31:15)
matter (19:16)(20:11)(22:20)(22:23)(28:6)(33:25)
(35:15)(38:15)(39:13)(41:1)(53:18)(59:9)
matters (8:13)(11:4)
maxwell (11:24)
may (3:15)(23:19)(28:19)(29:13)(36:13)(38:1)(39:4)
(39:5)(40:21)(49:3)(49:8)(52:11)(52:12)(52:24)(53:13)
(55:1)(55:5)(55:15)(56:10)(56:14)(57:3)
maybe (6:24)(28:18)(57:18)
mcdonagh (47:10)
mcgowan (26:3)(39:14)
mcrae (8:5)
mean (29:20)(36:23)(51:6)
measures (19:7)
media (35:3)
meeting (47:5)(47:7)(52:11)
memoranda (12:3)
memory (35:3)
metaphysically (27:3)
micah (2:10)(8:15)(8:18)(10:11)
might (11:9)(27:3)(27:19)(42:17)(50:24)(52:22)
milling (2:14)(7:24)(10:1)(14:4)(19:13)(21:7)(21:12)
(21:22)(21:23)(22:11)(22:17)(23:2)(25:13)(25:15)
(25:22)(26:1)(26:20)(28:14)(28:25)(29:2)(29:6)(36:21)
(36:24)(37:3)(37:11)(37:13)(37:18)(53:4)(53:19)(53:24)
(54:1)(56:3)(56:5)(57:20)
millings (35:23)
milling's (20:23)
mind (13:19)
minute (33:20)
minutes (9:3)(41:10)
missing (56:13)
mitchell (8:12)
moment (3:16)(3:20)(13:2)(38:2)
more (18:21)(26:13)(34:8)(35:17)(35:20)(42:12)(47:10)
(49:3)(56:9)
morning (38:5)
most (5:9)(14:16)
mother (24:18)
mothership (24:18)(24:20)(24:21)(24:25)
motion (11:12)(11:13)(11:22)(11:23)(11:25)(36:17)
(47:16)
motions (11:6)(11:10)(12:2)(12:6)(12:9)(12:12)(19:3)
(47:19)(47:22)
much (13:3)(20:6)(35:4)(40:9)(40:16)(42:17)(52:7)
municipal (27:8)
murfreesboro (59:6)
must (11:5)
mute (7:17)(9:13)

**only**

myself (6:17)(7:8)(51:23)

**N**

name (4:14)(8:21)
named (14:16)(15:17)(15:18)(26:12)(26:14)(43:25)
necessary (40:5)
need (3:8)(3:21)(6:9)(10:20)(11:9)(18:2)(18:5)(18:8)
(18:11)(19:13)(25:4)(27:20)(32:12)(32:20)(42:13)(44:3)
(45:8)(45:13)(46:10)(46:11)(46:14)(49:11)(50:18)
(50:25)(51:19)(52:8)(52:22)(53:2)(54:18)(54:19)(54:20)
(55:7)
needed (15:20)(16:1)(16:8)(23:5)(35:13)
needs (15:6)(15:7)(17:24)(17:25)(28:25)(35:18)(40:4)
(43:7)(43:8)(43:10)(44:1)(44:2)(44:3)(44:9)(44:12)
(44:13)(46:10)(50:13)(54:24)(56:24)(56:25)
neil (39:22)(42:25)(48:13)
never (5:7)(27:10)
new (12:20)(34:1)
news (3:15)(4:4)(4:7)(5:22)
next (5:25)(9:3)(16:13)(53:5)
night (4:25)
nine (13:5)(14:15)(19:10)(21:21)(24:14)(29:24)(32:13)
nobody (24:10)(24:12)(32:22)
noise (25:16)
none (19:6)(37:21)
normal (44:15)
normally (17:3)(47:4)
not (3:5)(4:1)(4:24)(5:4)(5:19)(6:22)(10:5)(12:4)
(12:8)(12:10)(13:20)(17:12)(18:3)(19:2)(19:23)(20:9)
(20:17)(20:25)(21:12)(22:2)(22:12)(22:13)(24:2)(24:4)
(24:16)(24:17)(24:19)(24:24)(26:16)(26:18)(27:2)
(27:18)(28:14)(29:9)(29:15)(29:23)(30:10)(30:17)(31:4)
(31:18)(31:19)(32:2)(33:8)(35:4)(35:8)(35:10)(36:5)
(37:2)(37:3)(37:4)(37:11)(37:18)(37:23)(38:11)(38:13)
(38:20)(38:23)(39:18)(40:20)(41:23)(43:11)(43:18)
(46:10)(46:17)(47:14)(47:15)(47:19)(47:25)(48:2)(48:3)
(48:4)(48:16)(51:2)(51:8)(51:13)(51:23)(52:4)(52:12)
(52:20)(53:18)(54:2)(54:12)(57:5)(58:10)
notary (59:24)
nothing (11:7)(51:14)(58:7)
notice (14:11)(15:19)
notification (16:7)
notified (15:25)(23:3)(23:4)
now (5:15)(13:2)(14:3)(21:4)(22:18)(25:22)(27:22)
(28:16)(28:18)(30:9)(32:6)(38:10)(43:17)(47:19)(48:9)
(49:8)(49:17)(51:18)
nuances (14:20)
number (3:18)(9:5)(9:7)(20:1)(34:7)(38:8)(40:12)
numbers (36:8)

**O**

object (46:8)(46:9)
obligation (14:22)(14:23)(15:5)
obligations (31:24)
obtain (27:20)(31:20)(34:3)(48:20)
obviously (30:2)(43:5)
occasion (24:2)
occasions (48:16)
occur (55:16)
occurred (14:1)(43:20)
october (12:18)(13:25)(28:10)
off (5:19)(41:21)(55:21)
offhand (29:23)
office (6:14)(6:23)(7:18)(20:5)(21:24)(21:25)(22:4)
(25:23)(26:9)(27:2)(29:7)(29:14)(30:19)(31:6)(31:11)
(35:24)(37:4)(38:14)(41:5)(41:12)(41:18)(41:21)(42:20)
(43:1)(43:2)(45:11)(46:2)(46:3)(49:3)(49:6)(50:12)
(50:23)(57:11)(57:12)(59:6)
officer (10:10)(10:11)(20:23)(37:9)
officers (15:22)(36:10)(37:20)(37:22)
okay (3:6)(3:8)(4:3)(4:10)(4:18)(6:15)(6:19)(7:5)
(7:12)(7:13)(7:20)(8:9)(8:18)(14:7)(26:22)(31:12)
(34:1)(37:12)(39:15)(41:23)(42:5)(48:5)(52:1)(52:5)
(53:19)(55:10)(58:8)
one (3:18)(4:2)(13:11)(20:1)(25:25)(29:12)(29:13)
(33:22)(36:9)(42:21)(46:22)(51:13)(54:13)
only (6:24)(29:22)(30:7)(36:2)(36:18)(37:16)(38:12)
(38:21)(39:16)(45:18)(50:20)(51:10)(54:14)(57:9)

**onto** (17:6)(17:7)
**operated** (12:14)
**opinion** (35:1)
**option** (55:3)(55:4)
**options** (4:23)
**order** (11:13)(11:15)(20:20)(45:24)(47:10)(58:3)
**ordered** (41:16)
**original** (39:10)
**originally** (47:3)
**originals** (30:24)
**originating** (19:22)
**other** (5:9)(6:1)(8:1)(8:23)(10:7)(13:8)(13:15)(15:17)
(16:5)(16:17)(18:17)(20:19)(25:7)(27:9)(27:20)(27:21)
(30:2)(43:24)(45:6)(45:11)(46:12)(46:22)(50:24)(52:21)
(55:2)(56:7)(56:12)(57:1)(57:3)(58:11)
**others** (7:11)(24:15)
**otherwise** (5:6)(11:9)(22:21)
**our** (5:9)(5:10)(14:6)(19:12)
**out** (4:20)(4:23)(5:8)(15:16)(18:5)(28:7)(28:22)(32:2)
(33:14)(35:14)(37:14)(40:15)(41:25)(42:6)(43:12)(44:8)
(45:9)(45:19)(50:21)(51:20)(53:11)(54:3)(56:4)(56:11)
(57:19)
**outset** (4:19)
**over** (4:14)(10:7)(13:15)(16:20)(29:20)(33:10)(35:25)
(41:5)(41:11)(41:18)(49:18)(55:23)(55:24)(55:25)(58:10)
**overall** (24:8)
**overdue** (47:13)(47:16)(48:7)
**overriding** (16:22)
**overwritten** (16:21)
**own** (39:10)(43:15)

**P**

**pandemic** (5:16)(52:16)
**paper** (15:23)
**paradox** (1:22)(59:22)
**paradoxreporting** (1:23)
**parameters** (21:19)
**pardon** (44:19)(49:9)
**parker** (1:23)(59:5)(59:22)
**part** (18:15)(18:23)(25:4)(38:14)(38:19)(39:12)
**participants** (21:19)
**participate** (3:14)(4:22)
**participated** (33:6)
**participating** (6:11)
**participation** (55:21)
**particular** (22:19)(24:5)(34:19)(40:18)
**parties** (52:4)
**party** (14:8)(17:20)(18:9)(18:24)(35:8)(54:14)
**party's** (14:8)
**patrol** (14:24)(14:25)
**pattern** (43:18)
**pending** (11:10)(31:17)(32:15)(47:5)(47:20)
**people** (3:19)(10:13)(10:17)(46:12)(52:25)(53:2)
**perhaps** (11:8)
**period** (12:20)(13:15)(55:24)
**person** (4:22)(10:18)(14:10)(27:4)
**persons** (16:7)(51:10)
**person's** (40:24)
**pertained** (29:25)
**phone** (6:14)(7:17)(7:18)(10:5)(40:24)(41:4)(41:21)
(41:23)
**phonetic** (29:18)(34:14)(35:15)(47:11)
**physical** (46:8)(46:9)
**physically** (52:25)(53:2)
**piecemeal** (54:2)
**pinkerton's** (43:1)
**pinkston** (29:18)(29:21)(39:22)(40:10)(41:24)(48:13)
(49:18)
**place** (1:9)(16:19)(16:22)(19:5)(50:24)(57:2)(57:22)
**placed** (15:19)(47:4)
**plaintiff** (1:4)(6:4)(6:8)(6:16)(11:15)(13:11)(59:10)
**plaintiffs** (2:4)(6:4)(6:11)(7:6)(7:7)(13:9)(14:17)
(18:18)(26:12)(26:15)(29:24)(33:18)(45:6)
**plaintiff's** (6:3)(12:13)(22:8)(31:16)(34:22)
**plan** (57:22)
**planning** (47:5)(47:7)
**plans** (46:6)
**point** (3:10)(10:14)(12:13)(19:12)(22:25)(28:4)(28:21)

(28:22)(30:18)(32:6)(33:22)(36:9)(38:22)(38:24)(39:17)
(43:18)(46:16)(46:21)(46:23)(47:6)(47:12)(51:7)(54:17)
(56:10)(56:11)(56:14)(57:11)
**pointed** (28:3)(36:12)
**points** (46:19)
**portion** (22:1)
**position** (4:24)(45:17)(46:5)
**possess** (15:10)
**possessed** (39:23)
**possession** (38:7)(39:16)(56:21)(56:23)
**possible** (18:6)(23:20)(50:19)
**possibly** (18:21)
**practical** (19:15)(55:18)
**practice** (20:21)(43:19)
**practices** (27:5)
**preamble** (17:17)
**preceding** (26:11)
**preempt** (16:21)
**preliminary** (11:4)
**prepared** (40:23)
**present** (12:22)(20:25)(35:11)(53:2)
**presently** (46:3)
**preservation** (11:18)(20:3)(27:11)
**preserve** (11:14)(14:8)(14:13)(14:23)(15:3)(15:12)
(16:8)(17:8)(17:16)(17:21)(18:10)(18:25)(19:9)(19:14)
(19:17)(20:1)(20:17)(23:5)(27:3)(28:23)(35:11)(35:14)
(40:4)(43:22)(51:7)(51:17)
**preserved** (16:2)(16:18)(17:19)(18:20)(19:19)(19:22)
(20:10)(20:13)(20:25)(22:5)(22:6)(23:17)(23:21)(23:24)
(25:11)(25:13)(28:14)(32:20)(35:18)(35:19)(36:3)
(42:10)(43:8)(45:10)(46:2)(46:10)
**preserving** (11:17)(22:23)(40:5)
**press** (4:12)(4:17)(22:3)
**presumably** (25:10)
**presume** (57:9)
**pretty** (28:7)(40:9)(50:10)
**previous** (19:19)(19:24)(48:16)
**previously** (46:8)
**prior** (19:20)(21:15)(42:20)(45:11)(47:7)
**probably** (38:20)(45:6)
**problem** (19:22)(20:18)(24:7)(24:8)(32:5)(32:10)
(32:18)(32:21)(33:18)(34:22)(35:5)(35:16)(53:1)(57:15)
(57:17)
**problems** (33:13)
**procedure** (17:14)(27:5)(42:8)
**proceed** (11:3)
**proceedings** (1:16)(3:10)(5:3)(5:5)(59:8)
**proceeds** (3:18)(27:19)
**produce** (31:15)(38:18)
**produced** (19:7)(30:22)(33:17)(39:12)(54:4)
**production** (28:9)(28:18)
**productive** (42:6)
**prohibits** (5:1)
**properly** (27:10)
**prosecution** (34:16)
**protected** (35:18)
**protested** (30:1)
**prove** (27:7)
**provide** (52:2)(52:15)
**provided** (16:7)(26:2)(53:18)(59:9)
**provides** (17:17)
**providing** (53:20)
**public** (20:11)(20:13)(44:14)(59:24)
**pull** (33:14)
**punitive** (13:12)
**purpose** (32:2)(41:24)
**purposes** (17:8)(26:6)(36:25)
**put** (5:8)(5:21)(9:13)(19:5)(24:19)(56:8)(58:3)

**Q**

**question** (4:24)(13:19)(13:22)(17:13)(17:24)(17:25)
(18:19)(20:15)(26:6)(26:9)(30:6)(36:20)(39:5)(39:6)
(40:18)
**quite** (48:14)

**R**

**raise** (43:17)(46:23)
**raised** (4:24)

**reached**

**reached** (4:20)
**reaches** (54:10)
**read** (12:2)
**ready** (11:3)
**real** (28:3)
**realistic** (53:11)
**realize** (27:19)(52:16)
**realizing** (32:22)
**really** (18:5)(20:18)(32:2)(40:4)(47:14)(57:1)
**rear** (37:5)
**reason** (12:12)(17:6)(19:1)(25:6)(25:8)(44:6)(45:11)
(45:21)(49:3)(57:9)
**reasonable** (14:9)(17:11)(17:21)(18:10)(18:25)
**recall** (24:2)(24:17)(29:24)(41:20)
**receive** (27:1)(27:18)
**recently** (38:7)(47:8)
**reckless** (34:20)(34:21)
**reconciled** (50:14)
**reconstruct** (44:7)
**reconstructed** (45:23)(55:3)(55:10)
**record** (5:5)(5:19)(20:12)
**recorders** (5:19)
**recording** (1:17)(5:1)(5:3)(5:5)(5:6)(16:20)(33:13)
(59:8)
**recordings** (16:5)(16:17)(26:8)(33:10)(33:14)(33:21)
**records** (15:24)(16:1)(23:16)
**recover** (57:23)
**recovered** (18:7)
**re-create** (50:19)
**referred** (16:15)
**referring** (24:23)(25:1)(37:6)
**refers** (25:1)(36:18)(37:16)
**reflect** (24:13)(51:2)
**reflects** (51:1)
**regard** (24:20)(28:22)
**regarding** (20:10)(23:23)(24:5)(27:20)
**reiterate** (46:5)(46:6)
**relate** (20:5)
**related** (32:23)(57:3)
**relates** (17:14)(26:14)
**relating** (15:16)(31:15)(34:4)
**relative** (15:10)(20:12)(23:21)(48:18)
**relatives** (7:7)
**release** (29:8)(29:9)(29:14)(29:15)
**released** (30:2)
**relevant** (15:12)(18:22)(19:10)(19:17)(21:20)(26:7)
(27:16)(32:13)(32:15)(42:22)(43:5)(43:15)(43:19)(43:23)
**relief** (11:21)
**remains** (54:6)(54:22)
**remember** (22:11)(29:12)(29:22)
**removed** (22:18)
**repeated** (8:21)(46:8)
**replace** (18:12)
**replaced** (17:22)(42:15)
**report** (52:3)(52:15)(53:6)
**reporter** (3:24)(4:3)(59:6)(59:23)
**reporters** (3:15)(4:4)(5:18)(5:22)(9:23)(9:24)
**reporting** (1:22)(59:22)
**reports** (15:16)(15:22)
**repositories** (15:23)
**repository** (50:22)
**represent** (6:10)(8:8)(8:11)(20:8)(23:20)(41:3)
**representation** (8:6)(18:4)(40:13)
**representatives** (6:4)
**represented** (42:24)
**representing** (6:17)(9:25)(10:8)(10:10)(10:11)
**represents** (13:9)(13:10)
**request** (20:3)(24:3)(27:11)(28:7)(28:8)(28:17)(33:8)
(34:24)(35:3)
**requested** (11:21)(21:25)(24:1)(28:23)
**requests** (20:19)(30:17)(30:19)(46:24)(46:25)(47:4)
(47:13)(47:17)(47:22)
**requiring** (11:13)
**resistance** (57:5)
**respect** (16:14)(30:5)
**respond** (28:20)(28:25)(40:6)
**responded** (46:25)
**response** (12:5)(12:8)(19:3)(22:16)(28:15)

**shandle**

**responses** (3:9)
**responsive** (28:17)
**rest** (56:12)
**restore** (18:12)
**restored** (17:22)(42:15)
**restoring** (57:15)
**result** (15:4)(23:13)(27:4)(52:24)
**resulted** (12:17)
**retain** (15:20)(45:19)
**reveal** (42:2)
**review** (22:10)(24:11)(31:19)(40:16)(53:3)
**reviewed** (44:3)
**reviewing** (53:20)
**rid** (44:17)
**right** (4:4)(5:14)(7:25)(8:1)(8:14)(9:4)(9:10)(9:14)
(9:15)(9:16)(9:19)(9:22)(10:3)(10:25)(11:3)(11:7)
(12:11)(13:2)(23:1)(25:22)(25:24)(26:4)(27:22)(29:23)
(31:22)(32:11)(37:15)(37:25)(39:19)(43:17)(47:19)
(49:1)(55:13)(57:21)(58:8)
**rights** (14:19)
**riley** (1:3)(8:12)(11:12)(22:23)(28:6)(29:13)(41:1)
(43:4)
**rise** (22:19)
**risk** (54:2)
**robin** (2:8)(6:7)(7:16)(8:24)(9:24)(22:15)(27:23)
(33:2)(39:4)(40:8)(47:24)(55:14)
**robust** (57:11)
**rockvale** (1:24)
**roseanne** (4:9)(4:15)
**r's** (59:1)
**rule** (5:1)(5:20)(17:14)(17:17)(18:15)(42:7)(42:13)
(54:23)
**rules** (3:17)(5:8)(42:8)
**run** (21:19)(57:17)
**rutherford** (59:4)

### S

**safe** (58:12)
**said** (19:23)(24:11)(25:6)(29:3)(29:4)(33:21)(33:22)
(39:24)(44:20)(49:16)(49:25)
**same** (5:17)(9:8)(11:23)(33:24)(33:25)(40:9)(50:1)
(50:4)
**sanctions** (55:5)(55:7)
**satisfied** (18:3)
**say** (10:16)(22:1)(24:7)(24:9)(25:10)(25:15)(26:11)
(26:13)(26:20)(26:25)(27:24)(31:9)(33:12)(44:22)(46:4)
(46:22)(47:10)(48:15)(49:5)(51:5)(51:22)(53:20)(57:4)
**saying** (21:2)(21:4)
**schedules** (52:17)
**scheduling** (47:8)(47:9)
**scratch** (53:17)
**search** (21:19)
**seat** (37:5)
**second** (3:12)(7:15)(9:10)(18:8)(18:23)(42:13)(44:12)
(46:21)(54:1)
**secure** (17:1)
**see** (6:23)(7:4)(12:4)(42:4)(50:14)(55:2)
**seem** (27:25)
**seems** (15:2)(33:3)(35:6)(44:22)
**seen** (41:9)
**send** (23:16)(28:14)(48:23)
**sense** (36:13)
**sent** (28:6)(40:2)(52:12)(54:13)(54:18)
**sequentially** (23:3)(23:25)
**series** (14:21)(19:6)
**served** (46:24)
**server** (12:13)(12:20)(12:21)(12:25)(13:24)(14:1)
(14:4)(17:2)(17:4)(17:7)(25:1)(25:3)(25:11)(36:18)
(42:12)(42:18)(42:20)(44:15)(45:12)(45:21)(46:1)(46:7)
(46:9)(50:20)(51:14)(51:18)(54:16)
**serves** (35:4)
**service** (4:7)
**sets** (17:23)
**setting** (11:8)
**seven** (13:10)
**several** (8:6)
**shall** (6:8)
**shandle** (1:3)(8:12)(11:12)(40:25)

**sharon**                    **that**

**sharon**  (2:14)(7:24)(10:1)(20:23)(21:22)
**she**  (8:21)
**shed**  (45:15)
**sheriff**  (1:8)(1:10)(33:12)(49:10)(49:16)(50:23)
**sheriff's**  (10:9)(12:14)(12:15)(19:8)(20:5)(21:24)
(25:22)(27:2)(30:11)(30:20)(30:22)(31:4)(31:11)(31:12)
(34:4)(34:10)(36:1)(37:4)(43:2)(43:21)(45:16)(46:3)
(46:12)(49:6)(50:1)(50:17)(52:20)(56:22)(56:25)(57:7)
(57:11)(57:12)(57:16)
**short**  (20:15)(41:10)(53:5)
**shortly**  (33:16)
**should**  (5:13)(5:16)(9:9)(15:19)(15:24)(16:7)(17:18)
(18:19)(32:19)(36:22)(42:7)(42:10)(47:10)
**show**  (27:9)
**sight**  (28:24)
**simple**  (18:3)
**since**  (5:4)(13:23)
**single**  (39:25)
**sir**  (3:5)(3:7)(6:7)(6:20)(9:21)(55:20)
**sit**  (9:10)
**sitting**  (19:4)
**situation**  (54:15)
**smoothly**  (3:18)
**software**  (12:16)
**sole**  (28:19)(29:3)(35:6)
**some**  (3:15)(3:17)(4:19)(5:9)(10:8)(10:10)(11:8)
(12:12)(12:24)(20:20)(25:7)(28:5)(29:9)(30:22)(32:10)
(32:19)(38:24)(42:2)(42:25)(43:14)(45:6)(45:11)(47:17)
(48:7)(48:12)(52:24)(53:17)(55:5)(56:1)(57:11)(57:13)
**somebody**  (3:21)(25:16)(38:18)(44:16)(46:13)
**somebody's**  (47:16)
**someone**  (9:12)(20:23)(27:7)
**someplace**  (17:1)
**something**  (17:7)(18:4)(28:3)(43:7)(49:17)(50:13)
(52:18)(53:6)
**sometimes**  (36:12)
**somewhere**  (28:20)(46:2)
**soon**  (51:15)(53:16)
**sorry**  (4:14)(29:20)(30:4)(31:9)(48:17)
**sort**  (21:19)
**sound**  (59:8)
**sounds**  (42:17)(49:2)(56:15)
**source**  (19:22)(28:19)(29:3)(30:7)(35:7)(38:21)
**speak**  (3:19)(9:2)(10:19)(10:20)(29:20)
**speaker**  (3:5)(3:7)(4:1)(4:8)(4:11)(4:15)(6:22)(7:3)
(26:24)(27:14)(29:19)(30:13)(30:16)(31:1)(31:7)(31:10)
(31:17)(32:4)(32:9)(32:25)(44:18)(49:13)(49:15)(49:25)
(51:4)(55:11)(58:2)(58:5)
**speaking**  (3:22)(10:21)(14:7)(30:8)(47:1)
**specific**  (15:13)(22:17)(28:7)(28:11)(40:12)
**specifically**  (17:15)(24:19)
**split**  (40:14)
**spoke**  (4:14)
**spoken**  (3:20)(3:21)
**spoliation**  (28:6)(28:15)
**staff**  (39:25)
**stage**  (11:8)
**standpoint**  (44:13)
**start**  (6:2)(6:5)(53:17)
**starting**  (19:12)(56:10)(56:14)
**state**  (32:5)(35:1)(46:16)(47:2)(59:3)(59:24)
**stated**  (45:5)(45:16)(49:16)(50:3)
**statement**  (50:3)
**states**  (1:1)
**status**  (52:15)(53:6)
**stay**  (53:10)(58:11)
**steger**  (9:23)
**step**  (16:10)
**steps**  (17:21)(18:10)(18:25)(19:14)(19:16)(54:24)
**still**  (2:16)(31:16)(40:3)(42:25)(43:13)(45:10)
(50:22)(51:10)(54:6)(54:22)
**stops**  (14:17)(15:16)(18:18)(21:9)(34:4)(34:12)(34:17)
(51:1)(51:3)
**stored**  (12:23)(16:14)(17:16)(17:18)(18:16)(46:7)
(46:10)
**storing**  (16:25)
**straight**  (3:23)

**strongly**  (51:22)
**stuff**  (40:4)
**subject**  (14:25)(15:25)(21:10)(24:14)(33:25)
**substance**  (10:15)
**substantial**  (23:22)(24:3)
**such**  (16:16)(16:19)(27:8)(27:11)
**sued**  (14:11)
**suggest**  (56:15)(56:19)
**suggestion**  (55:15)(55:19)(56:17)
**suit**  (8:8)
**suits**  (8:7)
**summarize**  (11:20)
**superiors**  (41:16)
**suppose**  (6:5)
**supposed**  (15:8)(15:9)(15:11)(15:12)(16:10)(16:13)
(16:18)(16:19)
**supposedly**  (40:22)
**sure**  (3:18)(16:25)(22:2)(28:21)(38:3)(40:5)(40:7)
(45:5)(48:24)(51:16)(51:23)
**survive**  (41:23)
**survived**  (41:22)
**susceptible**  (16:24)(17:5)
**suspicious**  (45:7)
**synopsis**  (54:19)
**system**  (21:1)(21:15)(24:18)(37:19)

**T**

**take**  (11:9)(16:19)(17:11)(17:20)(18:9)(18:24)(54:25)
**taken**  (11:5)(19:8)(19:14)(34:15)(43:4)
**takes**  (16:22)
**taking**  (6:25)(27:25)
**talk**  (3:17)(25:4)(34:9)(36:15)(38:4)(42:12)(55:7)
**talked**  (22:14)
**talking**  (4:16)(10:7)(24:22)(25:2)(26:8)(26:12)(33:1)
(33:5)(34:25)(36:9)(37:19)(43:18)(47:13)(49:5)(49:7)
(49:14)(49:24)(53:25)(55:22)(58:10)
**talks**  (36:17)
**tbi**  (33:14)
**tee**  (48:8)
**telephone**  (3:14)(4:22)
**telephonic**  (5:14)(5:16)(5:21)
**television**  (30:3)
**tell**  (3:12)(6:9)(10:4)(23:8)(23:10)(23:22)(27:6)
(32:23)(39:24)(42:1)(42:22)(44:4)(44:10)(51:11)(52:13)
(54:21)
**telling**  (8:20)(18:1)(31:13)(31:14)(32:1)(34:2)
**ten**  (29:24)
**tennessee**  (1:1)(1:24)(59:3)(59:6)(59:23)(59:24)
**terabyte**  (25:14)(25:18)(26:10)(38:8)
**term**  (24:25)(36:4)
**terms**  (33:24)
**testing**  (37:24)
**than**  (14:10)(20:19)(26:13)(34:8)(35:17)(41:10)(46:13)
(49:4)
**thank**  (4:13)(4:18)(6:19)(7:13)(7:25)(8:14)(8:18)
(9:15)(44:18)(44:20)(45:3)(55:11)(56:18)(58:12)
**that**  (3:12)(3:18)(3:22)(4:24)(5:1)(5:7)(5:13)(5:22)
(10:13)(10:17)(10:18)(10:20)(11:4)(11:9)(11:20)(11:24)
(11:25)(12:4)(12:7)(12:12)(12:13)(12:16)(12:20)(13:2)
(13:3)(13:5)(13:7)(13:19)(13:23)(14:1)(14:2)(14:3)
(14:4)(14:6)(14:11)(14:14)(14:24)(14:25)(15:2)(15:5)
(15:6)(15:8)(15:13)(15:14)(15:15)(15:20)(15:21)(15:25)
(16:1)(16:8)(16:10)(16:13)(16:16)(16:17)(16:19)(16:20)
(16:22)(16:23)(16:25)(17:2)(17:4)(17:5)(17:7)(17:9)
(17:11)(17:17)(17:18)(17:24)(17:25)(18:2)(18:4)(18:11)
(18:13)(18:19)(18:21)(19:1)(19:9)(19:10)(19:19)(19:22)
(20:6)(20:12)(20:17)(20:22)(21:4)(21:6)(21:8)(21:9)
(21:10)(21:12)(21:14)(21:17)(21:18)(21:24)(22:2)(22:3)
(22:4)(22:5)(22:6)(22:9)(22:18)(22:22)(22:24)(23:2)
(23:4)(23:5)(23:7)(23:16)(23:20)(23:22)(24:4)(24:6)
(24:10)(24:11)(24:13)(25:1)(25:3)(25:6)(25:7)(25:10)
(25:15)(25:20)(26:13)(26:14)(26:20)(26:22)(26:23)
(26:25)(27:3)(27:6)(27:13)(27:16)(27:17)(27:19)(27:21)
(28:3)(28:5)(28:10)(28:13)(28:18)(28:21)(28:24)(29:1)
(29:3)(29:10)(29:16)(29:17)(30:1)(30:5)(30:10)(30:13)
(30:21)(30:25)(31:3)(31:5)(31:13)(31:14)(31:19)(31:20)
(31:21)(31:23)(32:2)(32:5)(32:7)(32:9)(32:13)(32:14)
(32:15)(32:21)(32:22)(33:5)(33:9)(33:10)(33:16)(34:2)

that that

(34:8)(34:11)(34:13)(34:16)(34:23)(34:24)(34:25)(35:3)
(35:9)(35:11)(35:14)(35:15)(35:17)(35:19)(35:20)
(35:21)(35:24)(36:2)(36:11)(36:13)(36:16)(36:22)
(37:16)(37:17)(37:18)(37:21)(38:8)(38:17)(38:20)
(38:21)(38:25)(39:8)(39:9)(39:12)(39:16)(39:17)(40:3)
(40:6)(40:7)(40:10)(40:13)(40:14)(40:17)(40:20)(40:22)
(40:25)(41:8)(41:11)(41:17)(42:9)(42:10)(42:12)(42:14)
(42:17)(42:18)(42:24)(43:7)(43:10)(43:13)(43:15)
(43:19)(43:20)(43:23)(44:1)(44:2)(44:9)(44:12)(44:13)
(44:14)(44:16)(44:23)(45:6)(45:12)(45:14)(45:15)
(45:16)(45:19)(45:22)(45:24)(46:5)(46:6)(46:7)(46:9)
(46:14)(46:16)(46:18)(46:21)(46:23)(47:6)(47:8)(47:13)
(47:18)(48:8)(48:12)(48:16)(49:2)(49:3)(49:8)(49:9)
(49:12)(49:17)(49:18)(49:20)(50:1)(50:2)(50:3)(50:4)
(50:7)(50:11)(50:12)(50:13)(50:15)(50:16)(50:19)
(50:21)(51:1)(51:3)(51:6)(51:11)(51:14)(51:16)(51:18)
(51:21)(52:8)(52:12)(52:16)(52:18)(52:21)(52:23)(53:1)(53:5)
(53:7)(53:8)(54:2)(54:8)(54:15)(54:23)(54:25)(55:4)
(55:15)(55:23)(56:5)(56:6)(56:8)(56:10)(56:11)(56:14)
(56:15)(56:20)(56:21)(56:24)(57:2)(57:9)(57:12)(57:14)
(57:18)(58:5)(59:7)

**that that** (28:22)

**that's** (5:24)(8:21)(9:19)(11:11)(11:21)(16:10)(17:9)
(18:4)(18:20)(19:12)(19:17)(20:1)(22:24)(24:7)(26:18)
(28:10)(30:25)(31:23)(32:2)(34:15)(35:19)(37:6)(39:18)
(40:9)(40:19)(41:14)(43:7)(48:4)(48:6)(49:15)(50:10)
(50:13)(53:1)(54:12)(54:17)(55:3)(56:16)(56:19)

**the** (1:16)(2:4)(2:12)(3:3)(3:6)(3:8)(3:10)(3:12)
(3:23)(3:24)(4:3)(4:4)(4:10)(4:13)(4:16)(4:18)(4:20)
(5:1)(5:2)(5:3)(5:4)(5:5)(5:8)(5:9)(5:12)(5:13)(5:15)
(5:16)(5:17)(5:18)(5:20)(5:25)(6:1)(6:2)(6:9)(6:11)
(6:15)(6:19)(6:21)(7:1)(7:2)(7:5)(7:6)(7:10)(7:14)
(7:15)(7:20)(7:25)(8:6)(8:9)(8:12)(8:14)(8:16)(8:18)
(8:23)(9:3)(9:4)(9:5)(9:7)(9:9)(9:15)(9:19)(9:22)
(9:23)(10:1)(10:4)(10:5)(10:8)(10:10)(10:13)(10:14)
(10:15)(10:17)(10:23)(10:25)(11:1)(11:3)(11:6)(11:8)
(11:10)(11:15)(11:17)(11:21)(11:23)(12:3)(12:11)
(12:12)(12:14)(12:15)(12:17)(12:25)(13:1)(13:2)(13:3)
(13:9)(13:14)(13:15)(13:16)(13:18)(13:23)(13:24)(14:1)
(14:4)(14:5)(14:7)(14:10)(14:11)(14:13)(14:17)(14:21)
(14:23)(14:24)(14:25)(15:1)(15:2)(15:3)(15:6)(15:8)
(15:12)(15:14)(15:21)(15:24)(16:3)(16:6)(16:8)(16:10)
(16:13)(16:22)(16:25)(17:4)(17:13)(17:15)(17:17)
(17:19)(17:23)(17:24)(17:25)(18:1)(18:2)(18:8)(18:11)
(18:13)(18:15)(18:18)(18:23)(19:1)(19:2)(19:8)(19:10)
(19:17)(19:18)(19:20)(19:22)(20:4)(20:5)(20:13)(20:15)
(20:17)(20:18)(21:1)(21:2)(21:3)(21:8)(21:9)(21:10)
(21:15)(21:16)(21:17)(21:21)(21:23)(21:24)(21:25)
(22:2)(22:3)(22:4)(22:5)(22:7)(22:19)(22:22)(22:23)
(22:24)(23:1)(23:4)(23:7)(23:12)(23:13)(23:16)(23:18)
(24:1)(24:3)(24:5)(24:6)(24:7)(24:9)(24:11)(24:13)
(24:14)(24:17)(24:18)(24:20)(24:21)(24:23)(24:25)
(25:1)(25:6)(25:10)(25:15)(25:16)(25:20)(25:22)(25:24)
(26:2)(26:4)(26:7)(26:9)(26:11)(26:12)(26:13)(26:14)
(26:17)(26:18)(26:19)(27:2)(27:12)(28:1)(28:4)(28:6)
(28:9)(28:17)(28:18)(28:19)(29:3)(29:4)(29:5)(29:7)
(29:10)(29:14)(29:21)(29:22)(30:1)(30:2)(30:6)(30:7)
(30:8)(30:9)(30:11)(30:15)(30:17)(30:18)(30:19)(30:23)
(31:3)(31:5)(31:9)(31:11)(31:12)(31:13)(31:14)(31:15)
(31:16)(31:17)(31:22)(32:1)(32:2)(32:6)(32:8)(32:11)
(32:14)(32:15)(32:16)(32:17)(32:23)(33:6)(33:8)(33:10)
(33:11)(33:15)(33:16)(33:17)(33:19)(33:20)(33:24)
(33:25)(34:1)(34:2)(34:6)(34:7)(34:9)(34:10)(34:11)
(34:14)(34:15)(34:18)(34:20)(34:22)(34:24)(34:25)
(35:1)(35:3)(35:5)(35:6)(35:8)(35:10)(35:11)(35:12)
(35:13)(35:15)(35:22)(35:24)(35:25)(36:1)(36:4)(36:8)
(36:11)(36:12)(36:15)(36:16)(36:17)(37:3)(37:5)(37:7)
(37:8)(37:9)(37:10)(37:12)(37:14)(37:15)(37:19)(37:22)
(37:25)(38:3)(38:6)(38:10)(38:14)(38:15)(38:20)(38:21)
(38:24)(39:3)(39:6)(39:9)(39:10)(39:12)(39:15)(39:16)
(39:19)(40:2)(40:9)(40:11)(40:12)(40:14)(40:15)(40:22)
(40:25)(41:4)(41:5)(41:8)(41:11)(41:12)(41:18)(41:20)
(41:21)(42:5)(42:8)(42:11)(42:13)(42:14)(42:18)(42:19)
(42:20)(42:22)(42:24)(43:4)(43:11)(43:14)(43:21)
(43:23)(44:6)(44:9)(44:10)(44:12)(44:14)(44:15)(44:19)
(44:23)(44:25)(45:2)(45:4)(45:6)(45:7)(45:8)(45:10)
(45:12)(45:16)(45:18)(45:20)(45:21)(45:22)(45:25)
(46:1)(46:2)(46:4)(46:6)(46:7)(46:9)(46:12)(46:16)

**three**

(46:17)(46:18)(46:19)(46:20)(46:23)(46:24)(47:7)(47:9)
(47:17)(47:20)(48:1)(48:3)(48:5)(48:9)(48:10)(48:21)
(49:1)(49:3)(49:4)(49:5)(49:10)(49:11)(49:16)(50:1)
(50:2)(50:4)(50:5)(50:6)(50:7)(50:10)(50:12)(50:15)
(50:16)(50:19)(50:20)(50:22)(50:23)(51:2)(51:5)(51:6)
(51:7)(51:8)(51:9)(51:10)(51:11)(51:15)(51:16)(51:20)
(52:1)(52:3)(52:4)(52:5)(52:7)(52:13)(52:16)(52:20)
(53:6)(53:7)(53:15)(53:22)(54:1)(54:2)(54:8)(54:9)
(54:11)(54:14)(54:15)(54:17)(54:18)(54:19)(54:20)
(54:21)(54:24)(55:5)(55:13)(55:18)(55:21)(55:22)
(55:23)(56:1)(56:2)(56:4)(56:5)(56:7)(56:8)(56:11)
(56:12)(56:15)(56:18)(56:20)(56:21)(56:24)(56:25)
(57:4)(57:6)(57:7)(57:7)(57:9)(57:10)(57:11)(57:14)(57:15)
(57:16)(57:17)(57:18)(57:21)(57:23)(58:4)(58:8)(59:7)
(59:8)(59:9)

**their** (5:19)(14:18)(15:20)(16:9)(27:7)(36:10)(42:3)
(43:15)(45:17)(56:8)

**them** (6:8)(15:11)(15:13)(21:20)(22:8)(22:9)(23:8)
(23:10)(27:10)(28:1)(31:8)(31:10)(31:13)(39:2)(44:23)
(47:14)(48:7)(57:10)

**themselves** (3:16)(3:20)(6:2)(7:12)(10:18)(41:21)

**then** (3:21)(5:8)(8:1)(9:24)(13:8)(17:10)(17:23)
(18:11)(19:15)(19:16)(28:8)(29:14)(31:18)(32:17)
(32:20)(33:16)(33:22)(35:14)(37:23)(41:17)(43:3)(44:3)
(50:8)(53:10)(54:21)(55:3)(56:5)(56:9)(56:25)(58:8)

**there** (3:24)(4:4)(7:5)(7:11)(8:23)(11:4)(11:10)
(11:12)(11:22)(13:8)(14:11)(14:15)(15:5)(15:15)(15:25)
(16:4)(18:12)(18:19)(19:25)(21:4)(21:5)(28:22)(29:12)
(33:10)(33:15)(36:2)(36:13)(38:11)(38:13)(38:23)
(38:25)(40:16)(44:6)(45:21)(47:12)(49:19)(57:24)

**there's** (4:3)(18:6)(18:21)(19:15)(20:3)(25:24)(28:3)
(29:6)(29:9)(35:15)(35:17)(35:20)(36:11)(38:4)(38:25)
(40:19)(44:6)(45:15)(49:18)(50:14)(52:11)(52:18)(57:1)

**these** (5:14)(5:21)(12:2)(12:5)(12:8)(12:12)(13:13)
(14:21)(14:24)(15:4)(15:16)(16:5)(18:16)(18:18)(18:22)
(19:3)(19:5)(19:10)(19:17)(20:5)(20:10)(20:19)(21:10)
(21:20)(22:8)(23:2)(23:21)(23:23)(24:5)(24:14)(25:9)
(26:7)(27:16)(28:20)(29:24)(32:13)(33:14)(36:10)
(37:22)(43:16)(43:23)(48:18)(48:23)(51:1)(51:15)
(52:22)(57:2)(57:3)

**they** (3:19)(10:19)(15:20)(15:25)(16:8)(21:18)(21:19)
(21:24)(22:4)(23:4)(23:12)(23:15)(25:13)(26:20)(27:7)
(35:2)(35:24)(37:19)(37:23)(41:15)(41:25)(42:1)(42:2)
(44:22)(44:24)(46:24)(50:7)(53:1)(54:20)(54:21)(55:16)
(56:6)(56:7)(56:8)(56:16)(57:25)

**they're** (8:25)(40:5)(46:20)

**they've** (37:24)

**thing** (3:12)(5:25)(15:6)(16:13)(18:8)(18:11)(29:22)
(44:9)(44:12)(45:8)(46:4)(46:22)(48:22)(50:2)(50:4)
(54:14)

**things** (15:5)(17:23)(27:24)(28:20)(44:15)(53:3)(54:13)

**think** (29:2)(30:24)(30:25)(31:3)(32:5)(32:7)(32:8)
(34:24)(35:3)(35:17)(35:20)(37:19)(39:16)(40:5)(41:17)
(41:22)(44:13)(45:15)(45:18)(48:15)(48:21)(52:4)(52:7)
(52:22)(53:14)(56:19)(56:24)(56:25)(57:1)(57:21)

**thinking** (46:21)

**third** (18:11)(46:4)

**third-party** (45:19)(46:15)(55:1)

**this** (3:24)(3:25)(4:6)(4:8)(6:11)(7:16)(8:3)(8:10)
(8:15)(8:24)(9:13)(9:20)(9:22)(10:14)(11:11)(17:13)
(18:15)(18:16)(18:23)(19:14)(19:23)(20:1)(20:4)(20:8)
(21:15)(21:22)(21:23)(22:3)(22:15)(22:18)(22:25)
(23:23)(24:1)(26:5)(27:23)(28:13)(28:23)(30:18)(32:3)
(32:5)(32:13)(32:16)(32:19)(32:22)(33:3)(34:1)(35:5)
(35:7)(35:10)(35:12)(35:14)(36:20)(38:1)(38:4)(38:14)
(38:19)(38:22)(38:23)(39:17)(39:21)(41:2)(41:15)
(41:20)(42:5)(42:6)(42:7)(42:21)(43:9)(43:18)(44:8)
(44:15)(44:21)(45:15)(46:7)(46:21)(47:12)(47:14)
(48:14)(51:6)(51:7)(51:17)(51:24)(52:12)(52:19)(53:11)(53:12)
(54:7)(54:17)(55:14)(55:20)(56:12)(57:2)(57:4)(57:6)
(58:3)(58:9)

**those** (4:23)(10:13)(13:10)(13:11)(15:19)(15:21)
(15:24)(16:1)(16:6)(23:18)(25:12)(33:9)(37:20)(39:17)
(46:19)(47:19)(55:19)(56:20)(56:21)

**though** (39:15)

**thought** (5:7)(6:24)(45:5)(50:7)

**thousand** (27:9)

**three** (20:17)(46:19)(51:19)

**through** (13:25)(17:22)(18:13)(31:23)(32:21)(38:12)
(42:15)(43:14)(46:17)
**thumb** (25:14)
**thus** (43:11)
**tidwell** (2:9)(8:3)(8:4)(10:2)(10:8)(39:20)(39:21)
(40:10)(41:2)(41:3)(41:14)(43:3)
**tight** (9:10)
**time** (3:19)(3:22)(6:24)(10:19)(12:20)(13:16)(14:14)
(22:2)(32:10)(35:8)(46:16)(46:18)(47:6)(47:12)(52:7)
**times** (4:16)
**timetable** (53:9)
**timing** (45:7)
**today** (3:11)(3:25)(5:20)(6:21)(7:6)(11:11)(19:4)
(32:3)(32:22)(50:3)(52:11)
**together** (57:25)
**told** (19:18)(29:15)(31:18)(31:19)(35:24)(39:23)
(50:12)(52:25)
**tom** (34:14)
**tomorrow** (52:10)
**took** (56:1)
**topic** (5:12)
**totally** (43:21)
**traffic** (14:17)(15:16)(18:18)(21:9)(34:4)(34:12)
(34:17)
**train** (27:10)
**transactions** (24:6)
**transcribed** (1:17)
**transcript** (59:7)
**transferred** (42:19)
**transmission** (11:17)
**transportations** (34:19)
**treat** (5:13)(5:16)(5:17)
**tried** (48:15)
**trouble** (3:4)(3:10)(9:18)
**truly** (18:1)(18:6)(45:9)(45:18)(55:9)
**truth** (51:9)
**try** (7:18)(20:20)(25:16)(35:13)(43:19)(48:10)(54:5)
(57:18)(57:22)
**trying** (24:7)(32:6)(41:19)(44:7)(55:16)
**turn** (5:19)(15:22)(41:5)(41:18)
**turned** (41:11)
**two** (9:23)(11:10)(15:5)(20:2)(20:16)(36:2)(41:10)
(51:19)(56:20)
**typically** (27:17)

---

## U

**unaltered** (46:15)
**unavoidable** (52:25)
**unconstitutional** (20:21)
**under** (15:3)(42:13)(54:23)(55:4)
**underlying** (21:15)
**understand** (26:23)(27:12)(34:13)(41:20)(45:4)(48:1)
(49:8)(52:11)(54:12)(55:10)
**understanding** (21:23)(22:6)(23:2)(37:21)(39:8)(41:14)
**understands** (21:2)(52:23)
**understood** (5:24)(26:19)
**unfortunately** (52:9)
**unidentified** (3:5)(3:7)(4:1)(4:8)(4:11)(4:15)(6:22)
(7:3)(26:24)(27:14)(29:19)(30:13)(30:16)(31:1)(31:7)
(31:10)(31:17)(32:4)(32:9)(32:25)(44:18)(49:15)
(49:25)(51:4)(55:11)(58:2)(58:5)
**united** (1:1)
**unless** (3:8)
**until** (45:25)(46:5)(53:11)(55:8)
**unusual** (27:18)(54:14)
**urgently** (11:5)
**usability** (34:23)
**use** (33:12)(34:23)(56:2)
**using** (26:7)

---

## V

**variety** (54:25)
**various** (14:19)(14:25)(16:6)(40:15)(42:23)
**verify** (49:11)
**version** (39:16)
**very** (22:17)(33:3)(41:9)(53:5)
**video** (11:18)(12:15)(12:17)(12:19)(12:21)(13:1)(13:3)
(13:24)(15:2)(15:4)(17:4)(18:2)(18:17)(19:21)(20:12)

**video** (20:24)(21:5)(21:8)(22:9)(22:25)(23:20)(24:3)(24:4)
(24:11)(27:15)(28:11)(30:2)(30:14)(33:10)(33:23)(34:3)
(35:2)(35:7)(35:25)(36:3)(36:18)(36:19)(36:21)(36:23)
(37:8)(37:9)(37:15)(37:20)(37:21)(38:5)(39:25)(40:7)
(41:4)(41:8)(41:17)(43:3)(48:17)(49:4)(51:18)(53:7)
(53:16)(54:16)(55:24)(57:2)
**video-cam** (26:10)
**videos** (15:20)(16:4)(31:5)(33:17)(33:22)(37:1)(37:16)
(38:8)(39:12)(39:17)(39:24)
**videotapes** (16:16)
**view** (22:1)
**violation** (14:18)
**virtually** (11:22)

---

## W

**wait** (33:20)
**want** (16:20)(16:21)(22:1)(25:3)(27:7)(27:25)(28:21)
(38:6)(38:19)(53:22)
**wanted** (3:17)(4:21)(22:4)
**wants** (27:7)
**was** (4:24)(5:11)(6:24)(7:11)(8:20)(11:25)(12:21)
(13:7)(13:14)(13:24)(14:5)(15:3)(18:9)(18:13)(18:23)
(19:9)(19:10)(19:25)(20:10)(20:13)(20:16)(22:1)(22:5)
(22:6)(23:21)(25:2)(25:16)(28:10)(29:3)(29:12)(29:13)
(29:22)(29:23)(30:10)(32:9)(34:3)(34:8)(34:20)(34:25)
(35:3)(36:5)(37:16)(39:12)(40:5)(40:20)(40:24)(41:4)
(41:11)(41:12)(41:15)(41:16)(41:17)(41:25)(42:11)
(42:14)(42:18)(44:8)(45:9)(45:10)(45:14)(45:25)(46:1)
(46:7)(46:10)(49:22)(50:19)(51:20)(54:16)(56:19)
(57:10)(57:23)
**wasn't** (25:9)(44:16)
**way** (18:6)(18:12)(19:14)(45:18)(46:11)(50:20)
**wednesday** (53:5)
**week** (38:12)(53:5)
**weekly** (52:15)
**well** (6:9)(18:25)(21:3)(24:21)(27:12)(30:8)(30:15)
(31:22)(33:23)(35:22)(36:14)(37:18)(39:6)(42:5)(45:4)
(48:5)(48:6)(49:11)(50:5)(52:13)(53:22)(54:11)(56:18)
**we'll** (6:5)(9:2)(10:6)(31:22)(31:23)(32:1)(33:14)
(42:12)(48:24)(53:10)(57:18)
**were** (1:17)(13:6)(13:15)(14:15)(14:18)(14:25)(15:1)
(15:15)(15:18)(15:22)(15:25)(16:4)(19:5)(19:6)(19:7)
(19:14)(19:16)(20:16)(21:14)(21:24)(24:7)(24:18)
(25:10)(25:11)(29:14)(29:15)(31:18)(31:19)(37:19)
(39:13)(41:15)(47:2)(51:15)
**we're** (10:5)(11:11)(18:4)(26:8)(30:8)(32:7)(35:7)
(36:9)(48:20)(49:18)(53:10)(54:2)(57:24)
**we've** (27:10)(48:23)(50:11)
**what** (5:11)(7:4)(10:16)(12:25)(17:3)(19:14)(19:16)
(20:2)(21:2)(21:3)(21:14)(21:18)(24:7)(25:2)(25:4)
(26:19)(27:16)(27:17)(27:21)(28:8)(29:8)(30:9)(30:25)
(31:24)(32:1)(32:12)(32:21)(35:13)(36:1)(37:6)(42:1)
(42:13)(43:10)(43:12)(43:21)(44:5)(44:8)(44:10)(44:11)
(45:5)(45:17)(46:8)(47:6)(48:6)(48:9)(48:10)(49:16)
(50:21)(51:20)(52:10)(52:13)(52:14)(53:9)(53:21)
(53:22)(54:3)(54:4)(54:5)(54:6)(54:12)(54:19)(54:21)
(54:22)(54:23)(55:16)(56:4)(56:5)(56:10)(56:19)(57:23)
**whatever** (17:6)(40:7)(49:3)(53:16)(57:16)
**what's** (4:14)(38:13)(38:22)(38:23)(44:4)(44:11)(54:5)
(55:17)
**whatsoever** (24:6)
**when** (1:16)(4:25)(7:20)(14:8)(14:10)(14:11)(14:21)
(16:11)(19:5)(20:22)(26:6)(27:1)(34:24)(40:2)(41:14)
(44:8)(49:5)(52:25)
**whenever** (42:2)
**where** (1:16)(20:2)(25:9)(25:12)(34:25)(39:23)(42:1)
(42:7)(46:9)(54:15)
**where's** (25:20)
**whether** (4:21)(5:3)(15:23)(18:6)(18:9)(19:4)(19:7)
(23:25)(24:13)(25:6)(25:7)(26:16)(32:23)(34:11)(35:1)
(36:8)(42:14)(42:22)(45:9)(45:22)(46:5)(46:11)(48:11)
(50:22)(51:1)(51:2)(51:9)(51:10)(55:9)(57:1)
**which** (1:16)(5:14)(13:6)(14:15)(14:17)(15:17)(16:5)
(16:15)(17:15)(22:18)(24:14)(26:14)(28:7)(28:9)(29:13)
(29:24)(32:19)(34:19)(38:5)(39:13)(40:4)(41:5)(42:7)
(50:16)(53:12)
**while** (7:18)(57:24)
**who** (6:3)(6:15)(7:5)(7:6)(7:11)(7:14)(10:21)(21:18)

**whomever**

(31:9)(34:14)(35:8)(37:20)(43:25)(45:20)(46:13)(51:10)
**whomever** (16:3)
**who's** (7:22)(37:9)
**why** (6:2)(8:21)(10:5)(11:11)(45:14)(52:13)(54:17)
**wilkey** (1:7)(8:11)(8:16)(10:10)(10:11)(14:16)(15:17)
(18:17)(20:13)(21:10)(21:21)(24:15)(29:23)(29:25)
(31:15)(31:16)(31:18)(32:24)(34:11)(38:16)(40:1)
(42:23)(43:6)(43:16)(43:24)(51:1)(51:3)(55:25)
**wilkey's** (26:3)(26:10)(39:13)
**will** (3:12)(3:16)(20:4)(27:6)(29:17)(46:15)(47:18)
(48:8)(48:20)(52:2)(52:3)(53:9)(53:17)(56:15)(57:20)
(58:8)(58:11)
**william** (2:6)(6:18)(7:8)(44:21)(54:8)(58:6)
**wilson** (8:12)
**window** (37:14)
**with** (4:5)(4:6)(4:16)(6:2)(6:5)(6:12)(6:21)(7:2)
(10:6)(11:17)(13:16)(13:18)(14:19)(15:1)(16:14)(18:3)
(18:18)(22:7)(22:13)(23:13)(26:22)(29:7)(31:25)(33:6)
(33:13)(35:5)(35:16)(38:6)(39:22)(41:25)(43:8)(45:20)
(47:18)(51:14)(53:6)(53:20)(55:21)(55:22)(56:3)(57:15)
(57:18)(59:6)
**within** (48:12)
**without** (53:20)
**wonder** (36:8)
**wondering** (7:11)
**word** (44:22)
**words** (56:7)
**work** (31:22)(31:23)(32:2)(32:21)(52:17)(53:1)(54:13)
(57:19)
**worked** (52:18)
**working** (9:1)
**worth** (40:12)
**would** (5:18)(5:20)(7:1)(12:7)(13:23)(16:24)(17:3)
(17:4)(17:6)(17:8)(18:20)(20:2)(20:25)(24:17)(27:17)
(27:18)(29:19)(35:20)(40:25)(42:1)(43:4)(43:19)(45:19)
(45:20)(46:4)(53:4)(53:14)(53:19)(54:8)(56:16)(57:4)
(57:5)(57:15)(57:25)(58:5)(58:11)
**wouldn't** (57:14)
**written** (12:5)(12:8)(15:7)(15:9)(15:15)(16:7)(16:20)
(19:5)(23:9)(23:12)
**www** (1:23)

## Y

**yeah** (7:1)(27:12)(32:8)(36:15)(45:2)(48:5)(54:11)
(55:18)
**year** (22:2)(26:11)(40:1)(55:25)
**years** (51:19)
**year's** (40:11)
**yes** (4:6)(6:7)(7:3)(7:10)(9:6)(9:21)(10:24)(11:1)
(20:15)(23:6)(31:1)(31:2)(34:5)(36:24)(49:22)(51:25)
(55:20)(58:4)
**yesterday** (4:20)(12:4)
**yet** (13:21)(21:12)(24:16)(28:9)(28:20)(55:7)
**you** (3:9)(3:12)(3:20)(3:21)(4:13)(4:14)(4:18)(5:21)
(5:22)(6:6)(6:9)(6:10)(6:12)(6:19)(7:10)(7:13)(7:25)
(8:14)(8:18)(9:5)(9:15)(10:4)(10:5)(10:19)(10:20)
(10:22)(11:5)(12:7)(16:19)(16:20)(16:21)(16:23)(16:24)
(17:2)(17:3)(17:4)(17:6)(19:18)(20:11)(21:3)(21:4)
(21:5)(21:16)(22:7)(23:3)(23:4)(23:7)(23:8)(23:9)
(23:14)(23:22)(24:11)(24:12)(24:16)(25:2)(25:10)(27:6)
(27:25)(28:15)(28:21)(29:4)(29:20)(30:4)(30:24)(30:25)
(31:3)(31:13)(31:14)(31:24)(32:1)(33:6)(33:12)(33:13)
(33:21)(33:22)(34:2)(34:9)(36:2)(36:8)(38:17)(39:8)
(39:15)(40:15)(43:17)(44:3)(44:9)(44:10)(44:18)(44:20)
(45:3)(46:23)(47:2)(47:3)(47:6)(47:15)(47:21)(48:1)
(48:3)(48:5)(48:6)(49:4)(49:5)(49:11)(49:25)(50:2)
(50:3)(51:13)(51:14)(51:15)(51:20)(52:7)(52:13)(52:14)
(53:5)(53:8)(53:19)(53:22)(54:4)(55:11)(55:18)(56:12)
(56:18)(57:17)(58:3)(58:10)(58:12)
**your** (4:14)(5:21)(6:8)(6:13)(6:17)(7:3)(7:8)(8:3)
(8:10)(8:17)(8:21)(8:24)(9:6)(10:24)(11:1)(19:18)
(19:23)(20:15)(21:7)(21:13)(21:22)(22:12)(22:15)(23:2)
(23:6)(23:10)(23:15)(23:19)(24:10)(25:19)(26:5)(26:24)
(26:25)(27:23)(29:1)(29:2)(29:6)(29:16)(30:16)(31:1)
(31:2)(31:8)(31:24)(32:4)(33:2)(33:3)(33:13)(34:5)
(36:4)(36:7)(36:24)(37:18)(38:1)(39:4)(39:8)(39:11)
(39:20)(40:8)(40:17)(41:2)(44:20)(46:25)(47:5)(48:12)
(48:14)(51:4)(51:11)(51:21)(51:25)(52:9)(52:15)(53:7)

**whomever** (16:3)
**who's** (7:22)(37:9)

**you've**

(53:9)(53:13)(53:19)(54:7)(55:11)(55:14)(57:20)(58:2)
(58:7)
**you're** (3:9)(3:22)(7:20)(16:25)(24:23)(25:1)(37:6)
(39:16)(48:6)(54:12)
**yourself** (10:20)
**yourselves** (3:22)(8:2)
**you've** (3:20)(45:5)