UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SHANDLE MARIE RILEY, ) | |
| ) | Lead Case No. 1:19-cv-304[1] |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Christopher H. Steger |
| HAMILTON COUNTY GOVERNMENT, ) | |
| DANIEL WILKEY, individually and in his ) | |
| capacity as deputy sheriff for Hamilton ) | |
| County Government, and JACOB ) | |
| GOFORTH, individually and in his ) | |
| capacity as deputy sheriff for Hamilton ) | |
| County Government, ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff Maxwell Jarnagin's motion to certify a class pursuant to Federal Rule of Civil Procedure 23 (Doc. 423). Jarnagin seeks an order certifying a class consisting of "people who were physically and inappropriately searched by Officer Daniel Wilkey in a public place where the search included inappropriate and unconstitutional touching of the person's body . . . limited to those individuals whose searches were captured on video." (Doc. 424, at 3.) For the reasons set forth below, the motion will be **DENIED**.

### I.    BACKGROUND

On December 17, 2019, Jarnagin filed suit against Defendants Daniel Wilkey and Hamilton County, Tennessee, in the Circuit Court for Hamilton County, Tennessee. (*See* Doc. 1

---

[1] All citations to the record refer to documents filed in the lead case—1:19-cv-304—unless otherwise indicated.

in Case No. 1:20-cv-44.) The case was subsequently removed (*id.*) and consolidated with various other cases against Wilkey, Hamilton County, and other Defendants (Doc. 53).

Jarnagin's claims against Wilkey arise from a traffic stop and alleged unconstitutional search that occurred in Hamilton County, Tennessee, on March 30, 2019. (*See* Doc. 1-1, at 2, in Case No. 1:20-cv-44.) During that traffic stop, Jarnagin alleges that Wilkey ordered him out of the car, handcuffed him, and "searched" him by inappropriately and unlawfully touching his genitals. (*Id.* at 3.) Jarnagin's claims against Hamilton County arise from the County's alleged deliberate indifference to the violation of his and others' constitutional rights and a pattern, custom, or practice of allowing its employees to violate the constitutional rights of citizens. (*Id.* at 11.) Jarnagin purports to bring his claims on behalf of a class of similarly situated persons (*id.* at 3–8) and has filed a motion for class certification pursuant to Federal Rule of Civil Procedure 23 (Doc. 423). Jarnagin's motion for class certification is ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 23 allows "members of a class" to sue or be sued "on behalf of all members" of the class. Fed. R. Civ. P. 23(a); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.") (citation and internal quotation marks omitted)) [hereinafter *Dukes*]. To proceed as a class under Rule 23, the parties seeking class certification must show that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Dukes*, 564 U.S. at 349 (describing these requirements as "numerosity, commonality, typicality, and adequate representation").

After satisfying Rule 23(a), the parties seeking certification must also take one of three paths under Rule 23(b). Class certification under Rule 23(b)(3) requires (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"—predominance—and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"—superiority. Fed. R. Civ. P. 23(b)(3). In determining whether the named plaintiffs have satisfied the predominance and superiority requirements, the Court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350–52. Rather, the burden is on the party seeking certification to "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* Often, the "rigorous analysis" required of courts at the class-certification stage "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. However, Rule 23 does not give courts "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citing *Dukes*, 564 U.S. at 351 n.6). "Merits

questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (citing *Dukes*, 564 U.S. at 351 n.6).

### III. ANALYSIS

#### A. Timeliness

As a preliminary matter, the Court addresses Defendants' arguments concerning the timeliness of Jarnagin's motion. (*See* Doc. 430, at 2–4.)

Following the scheduling conference and consolidation of the cases in this action, the Court set an initial schedule governing this consolidated action. (Doc. 54.) The initial scheduling order provided that "all discovery on class-certification issues shall be completed by September 18, 2020," and set the deadline for Jarnagin to file his motion for class certification as October 16, 2020. (*Id.* at 2–3.)

On September 30, 2020, the parties filed a joint motion to amend the scheduling order (Doc. 272), which the Court granted on November 2, 2020 (Doc. 294). Because the deadline for class discovery had already expired at the time the parties' moved to amend the scheduling order, the Court did not include a new deadline for the completion of class discovery in the amended scheduling order. (*See id.*) However, the Court did reset the deadline for the motion for class certification to January 11, 2021. (*Id.* at 2.)

On January 11, 2021, Jarnagin did not file a motion for class certification and instead filed a motion to reset the deadline for filing a such a motion, asking that the motion be allowed to be filed thirty days after his counsel could depose Defendant Daniel Wilkey. (Doc. 308.) It appears that this motion was not resolved when the parties filed their second joint motion to amend the scheduling order (Doc. 394). On September 13, 2021, the Court granted the joint

4

motion and amended the scheduling order for a second time. (*See* Doc. 420.) However, because the previous deadline to file a motion for class certification had passed, the Court did not include such a deadline in the most recent scheduling order (*see id.*), though it had apparently never ruled on the motion for extension. Three days after the entry of the most recent scheduling order, Jarnagin filed his motion for class certification (Doc. 423).

Defendants now argue that Jarnagin's motion for extension was untimely pursuant to this Court's judicial preferences, rendering his motion for class certification untimely as well. (Doc. 430, at 3.) Section 5(F) of the undersigned's judicial preferences states:

> Motions for extensions of time to file all other motions and responses must be made well in advance of the deadline the moving party seeks to extend. The moving party must demonstrate why the requested extension is necessary and will bear the burden of specifically defining the bases for and extent of its request. The fact and length of extensions is in the Court's discretion.

Although Jarnagin did not file his motion for extension "well in advance of the deadline," the Court will not deny his motion on the grounds that it was untimely, because his motion for extension was not properly resolved before he filed the motion for class certification. Nevertheless, the Court will deny the motion on its merits, as explained below.

**B.     Merits**

In his memorandum in support of his motion for class certification, Jarnagin mistakenly asks the Court to "balance all the factors in Rule 23" and "weigh the importance of each factor." (Doc. 424, at 15.) But this is not the standard for class certification. "Subsection (a) of Rule 23 contains for prerequisites which must *all* be met before a class can be certified," and "[o]nce those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least *one* of the subcategories of Rule 23(b)." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)

("No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b)."). Jarnagin has not shown that Rule 23(a)'s requirements of numerosity or typicality are satisfied.[2] Therefore, the Court cannot grant his motion certify a class.

## C. Rule 23(a) Requirements

### 1. *Numerosity*

To be entitled to class certification, a named plaintiff must first show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The number of prospective class member required to satisfy the numerosity requirement is case-specific and requires examination of the underlying facts. *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980). The requirement imposes no "absolute limitations" on class size. *Id.*; *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) ("[T]here is no strict numerical test[.]"). The requirement is generally satisfied by "substantial" numbers. *Daffin*, 458 F.3d at 552. Furthermore, to establish numerosity, "impracticability of joinder must be positively shown, and cannot be speculative." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 541 (6th Cir. 2012) (quoting *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir.2005)).

In support of his argument that the putative class is sufficiently numerous, Jarnagin simply states "[t]he putative class is made up of several hundred persons." (Doc. 424, at 7.) Jarnagin offers no citation to the record in support of this assertion and does not otherwise support his statement with evidence in his motion or memorandum in support thereof. (*See*

---

[2] Because the Court finds that Jarnagin has decisively failed to satisfy these requirements, it need not consider whether Jarnagin has potentially satisfied any of the remaining Rule 23 requirements.

Docs. 423, 424.) Jarnagin does briefly summarize the facts of eight other pending cases against Wilkey and others, but does not state whether there is video evidence of each of these incidents and, thus, does not show that they are members of the asserted class. (*See* Doc. 424, at 4–5.) To obtain class certification, Jarnagin must do more than allege that the requirements are met: he must present facts that support his assertions that the Rule 23 requirements are met. *See Dukes*, 564 U.S. at 350–51 ("[H]e must be prepared to prove that there are *in fact* sufficiently numerous parties[.]").

At present, there are eight cases against Wilkey and Hamilton County, including Jarnagin's case, and two other cases have been dismissed. There is nothing in the record from which the Court could conclude that the number of class members is hundreds more than the number of currently pending cases. Although there is no precise test for numerosity, the Court cannot conclude that there are "substantial" numbers of putative class members. *See Gen. Tel. Co. of the Nw.*, 446 U.S. at 330 (suggesting that a class of fifteen members "would be too small to meet the numerosity requirement"); *see also id.* at 330 n.14 (collecting cases in which courts have refused to certify classes consisting of fewer than fifty members).

Moreover, Jarnagin does not argue that joinder of these cases or any other case is impracticable. And, indeed, these cases are proceeding in the same court, with many of the same attorneys, and the parties have agreed that jurisdiction and venue are appropriate. However, these cases have not been joined, because the parties have elected to pursue individual actions rather than join with each other. Because of the lack of facts suggesting that Jarnagin's mere assertion of numerosity is accurate or even likely to be accurate, the Court concludes the class is not sufficiently numerous to satisfy Rule 23(a)(1).

7

## 2. Typicality

A named plaintiff must also show that their claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct . . . . A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.

*Sprague*, 133 F.3d at 399 (quoting *Am. Med. Sys.*, 75 F.3d at 1082). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Id.* The typicality requirement "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *Am. Med. Sys.*, 75 F.3d at 1082. It illuminates "whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 350 n.5 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)).

Jarnagin asserts that the typicality requirement is satisfied because he "was molested by Wilkey on the side of a public road" and "[t]he putative class members are those people who were similarly molested in public." (Doc. 424, at 9.) Although Jarnagin's claims against Hamilton County are perhaps typical of other putative class members' claims against the County in that they require a showing of *Monell* liability, each of these claims is dependent on the determination that an officer of the County violated that individual's constitutional rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the

point."). And whether a constitutional violation occurred depends on the circumstances of each particular case. *See, e.g.*, *Samson v. California*, 547 U.S. 843, 848 (2006) ("Under our general Fourth Amendment approach we examine the totality of the circumstances to determine whether a search is reasonable within the meaning of the Fourth Amendment." (citations, alterations, and internal quotation marks omitted)).

This is not a circumstance where there are numerous claims arising out of the same event. The alleged unconstitutional searches occurred on different days, at different locations, and involve different pretextual reasons for the stops and searches. These varying circumstances also render each plaintiff's claims subject to different defenses. For example, because some inappropriate searches took place before others, some plaintiffs' claims may be subject to statute-of-limitations defenses.[3] Further, some of these incidents involved other officers, and many individual plaintiffs who would be potential class members have sued additional parties whom Jarnagin did not sue. Additionally, some of the plaintiffs in other cases have alleged repeated harassment and inappropriate searches. All of these considerations lead the Court to conclude that Jarnagin's claims are not typical of the class claims.

IV. CONCLUSION

For these reasons, Jarnagin's motion for class certification (Doc. 423) is **DENIED**.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[3] Jarnagin has not suggested limiting the class to only those persons unconstitutionally searched within a particular time period, and, if he had, the number of potential class members would surely shrink even more, further defeating numerosity.