**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: March 21, 2024

Mr. Andrew Cronin Clarke
Andrew C. Clarke
One Commerce Square, Seventeenth Floor
Memphis, TN 38103

Mr. James Exum III
Chambliss, Bahner & Stophel
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

Mr. Robin R. Flores
4110-A Brainerd Road
Chattanooga, TN 37411

Mr. Matthew D. Tidwell
Mr. William Gerald Tidwell Jr.
Tidwell and Associates
1810 McCallie Avenue
Chattanooga, TN 37404

Re: Case Nos. 23-5387/23-5388, *Mitchell, et al v. Hamilton County, et al*
Originating Case No. : 1:19-cv-00304 : 1:19-cv-00305

Dear Counsel,

The Court issued the enclosed opinion today in these cases.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Ms. LeAnna Wilson

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0138n.06

Nos. 23-5387/5388

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |
|---|---|
| JAMES MYRON MITCHELL, <br><br> Plaintiff-Appellee, <br><br> LATISHA SHANA MENIFEE, <br><br> Plaintiff, <br><br> v. <br><br> HAMILTON COUNTY, TENNESSEE, <br><br> Defendant, <br><br> DANIEL CAMERON WILKEY (23-5387) and BOBBY BREWER (23-5388), individually and in their capacities as Deputy Sheriffs for Hamilton County, Tennessee, <br><br> Defendants-Appellants. | **FILED** <br> Mar 21, 2024 <br> KELLY L. STEPHENS, Clerk <br><br> ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE <br><br> OPINION |

Before: KETHLEDGE, BUSH, and READLER, Circuit Judges.

KETHLEDGE, Circuit Judge.   James Mitchell claims that Deputy Sheriffs Daniel Wilkey and Bobby Brewer used excessive force and unreasonably strip-searched him after they detained him for possession of marijuana. Wilkey and Brewer appeal the district court's partial denial of their motions for summary judgment. We affirm in part, reverse in part, and dismiss in part.

I.

We take the district court's view of the facts in the light most favorable to Mitchell, unless video evidence clearly contradicts it. *Hayden v. Green*, 640 F.3d 150, 152 (6th Cir. 2011); *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Here, we have video from two dash-cams.

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

One night in July 2019, James Mitchell got a ride from Latisha Menifee in Soddy Daisy, Tennessee. Just before 9:30 p.m., Menifee passed Deputy Sheriffs Wilkey and Brewer, who were parked in separate patrol cars along the two-lane highway. Wilkey pulled out, with Brewer following, and stopped Menifee for a tinted-window violation. Wilkey and Brewer smelled marijuana, and Mitchell readily admitted that he had smoked some in the car.

At Brewer's direction, Mitchell got out of the passenger seat with his hands raised, turned to face the car, and put his hands on the roof. Mitchell submitted to Brewer's pat down, during which Brewer removed cash and a small baggie of marijuana from Mitchell's front pants pocket. Meanwhile, Wilkey handcuffed Menifee and left her standing between her car and his patrol car. Wilkey noticed Mitchell lifting a hand a few inches, but Mitchell did not resist when the deputies pulled his arms down and cuffed his hands behind his back. Mitchell said he was not "reaching for the stuff," and Wilkey said, "if that's all you've got, then I'll write you a ticket." Neither the validity of the stop nor the existence of probable cause to arrest Mitchell for possessing marijuana is at issue here.

The deputies walked Mitchell to the front of the patrol car, where they stood in its headlights. Mitchell denied having anything else on him. Wilkey patted down Mitchell's pockets and pressed Mitchell's groin area, causing him to grunt and tell them that he had a hernia. Wilkey asked about his hernia but continued to bunch up and pull on the front of Mitchell's pants. Wilkey then moved to Mitchell's waist area—tugging, twisting, and shaking Mitchell's loose-fitting pants from behind without finding anything. When Wilkey reached between Mitchell's legs to grab his crotch from behind, Mitchell grunted, and Wilkey told him to "hold still." Wilkey then reached around and prodded Mitchell's left groin area further, felt something "hard," and asked, "what's right there?" Mitchell groaned, bent forward, and protested that it was his hernia. Wilkey and

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

Brewer lifted Mitchell's arms behind him; Brewer told Mitchell several times to "stop tensing up"; and Wilkey pushed Mitchell's head down onto the patrol car. At that point, Wilkey had frisked Mitchell for a full minute and a half.

Mitchell, who still had his head down and his arms restrained behind him, spread his fingers and pressed his hands downward. The deputies warned Mitchell to "stop reaching in there" and to "tell us what it is." Mitchell responded, "I'll give it to you right now, man," and louder, "I'll give it to you." But Wilkey suddenly pulled Mitchell's arm, kneed Mitchell twice, and yanked Mitchell and Brewer to the ground. There, Brewer held Mitchell down while Wilkey punched Mitchell's thigh in a series of at least seven "pain compliance strikes." Shouting back and forth, Wilkey accused Mitchell of "reaching for something on us," and Mitchell denied that he would do anything to them, said he was about to "give it" to them, and insisted that he was not resisting. Wilkey and Brewer rolled Mitchell onto his side, turned him onto his back, lifted and pulled his legs, and searched Mitchell's pants further. Mitchell (and Menifee) said Brewer also hit and kneed Mitchell during the several minutes they were on the ground; but Brewer denied that he did.

As the deputies searched Mitchell, one of them said he felt something; Mitchell shouted that it was his "dick" and pleaded, "don't do me like that, man." Mitchell finally told them he had a "piece of plastic" on him and would give it to them. Wilkey told Brewer to take Mitchell's clothes off, and Brewer pulled his pants off and shook them out without finding anything. The deputies then lifted Mitchell up and each pulled his boxers down or out to visually inspect his buttocks and genitals with a flashlight. Lastly, Wilkey got some gloves and, while Brewer held Mitchell, Wilkey pulled Mitchell's boxers down, smacked his bare buttocks, and took a plastic baggie with drug residue from his backside. Wilkey set the baggie down and finished searching Mitchell's buttocks and groin area before pulling his boxers up. Wilkey denies that he touched

3

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

Mitchell's privates; but Mitchell says Wilkey "bumped" his anus twice. Wilkey picked up a syringe by the back tire of the patrol car and found some crack cocaine behind Menifee's car. When they found no contraband inside her car, Wilkey issued Menifee a ticket and took Mitchell to jail. Mitchell later sought treatment for contusions and a possible anal tear.

Mitchell thereafter sued Deputies Wilkey and Brewer and their employer Hamilton County alleging claims under 42 U.S.C. § 1983 and Tennessee law. Wilkey and Brewer moved for summary judgment, which the district court granted in part and denied in part. These appeals followed. Both deputies argue that they are entitled to qualified immunity on Mitchell's § 1983 claims that they each used excessive force, failed to prevent the other's use of excessive force, and subjected him to an unreasonable roadside strip search. They also argue that, if they prevail on those § 1983 claims, they are entitled to summary judgment on Mitchell's state-law claims for assault, battery, and negligence.

II.

Our interlocutory jurisdiction extends only to questions of law, which we review de novo. *Bey v. Falk*, 946 F.3d 304, 311–12 (6th Cir. 2019). The legal question is whether Wilkey or Brewer are entitled to qualified immunity, on the facts as we must construe them here. *Hayden*, 640 F.3d at 152. "Determinations of qualified immunity require us to answer two questions: first, whether the officer violated a constitutional right; and second, whether that right was clearly established in light of the specific context of the case." *Id*. at 153. We are free to answer those questions in whichever order we see fit. *Id*.

A.

"The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). We examine an officer's use of force

4

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

from "the perspective of a reasonable officer on the scene" and with "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary" under the circumstances. *Id.* (quotations omitted). That standard requires us to "consider the amount of force used, on the one hand, and '(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight,' on the other." *Jarvela v. Washtenaw Cnty.*, 40 F.4th 761, 764 (6th Cir. 2022) (quotation omitted).

Here, for one thing, the offense that provided probable cause to arrest Mitchell—possession of about a gram of marijuana—was not particularly severe: in Tennessee, simple possession is a Class A misdemeanor. Tenn. Code Ann. § 39-17-418(c)(1). Nor was the tinted-window violation that justified the stop in the first place. For another thing, the video confirms that Mitchell got out of the car as instructed, did not object to Brewer's pat down, and submitted to the deputies' authority without resisting being handcuffed. Mitchell denied having anything else on him; but he was generally compliant, submitted to Wilkey's thorough frisking, and displayed no aggressive behavior toward the deputies (or anyone else).

The district court denied qualified immunity to Wilkey because, it said, a jury could conclude that Wilkey's use of force against Mitchell—specifically, "kneeing [him], taking him to the ground, and repeatedly punching him"—was objectively unreasonable under the circumstances. Wilkey now argues that his force was reasonable because he felt a "hard object" in Mitchell's groin and Mitchell had repeatedly attempted "to reach into his pants to, presumably, either wield the foreign object as a weapon or conceal or destroy it as evidence." (Wilkey Br., p. 21.) But the video from Wilkey's dash-cam does not contradict the district court's finding. Specifically, the video shows that, when the deputies told Mitchell to stop "reaching," Mitchell

5

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

stood handcuffed between them with his arms raised behind him—hardly poised to retrieve, much less wield or destroy, whatever Wilkey might have felt in Mitchell's groin. Moreover, when we view the evidence in Mitchell's favor, a genuine issue of fact existed whether Mitchell's movements amounted to active resistance.

Nor does Wilkey's reliance on our decision in *Pennington* dictate a contrary result. *See Pennington v. Terry*, 644 F. App'x 533, 543–47 (6th Cir. 2016). There, the officer used a taser to keep a subdued suspect from swallowing pills and to avoid a potential overdose and the imminent destruction of evidence. *Id.* at 535–36. We held that, under the relevant case law, the officer lacked notice that his conduct was unlawful. *Id.* at 544. But here no reasonable officer would have believed Mitchell's "tensing" or "reaching" posed a risk of overdosing or the imminent destruction of evidence.

Brewer, for his part, argues that he never struck Mitchell. But the district court found that there was a genuine dispute whether Brewer hit or kneed Mitchell while they were on the ground. True, the video from Brewer's dash-cam confirms that it was Wilkey who inflicted the half-dozen "pain compliance strikes." But Mitchell says that Brewer landed some punches and kneed him in the back while he was on the ground. Menifee also said she saw Brewer hit Mitchell, and her vantage point was from the opposite direction and closer than Brewer's dash-cam. Brewer's dash-cam produced a dark and, at times, blurry video that does not clearly contradict the district court's finding. *Scott*, 550 U.S. at 380. We therefore lack jurisdiction to revisit the district court's finding on this point. *See Bunkley v. City of Detroit*, 902 F.3d 552, 560 (6th Cir. 2018) ("[W]e may not decide a challenge aimed solely at the district court's determination of the record-supported evidence, but we may decide a challenge with any legal aspect to it.")

6

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

To overcome qualified immunity, Mitchell also must show that his asserted right was clearly established at the time. That means the contours of the right must have been defined enough that "every reasonable official" in the defendant's shoes would have understood that the conduct would cross the constitutional line. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam). In this circuit, at the time of the incident here, "a clearly established legal norm preclude[d] the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *Harris v. City of Circleville*, 583 F.3d 356, 366–67 (6th Cir. 2009). Specifically, we have found it was objectively unreasonable for officers to tackle a handcuffed and generally compliant detainee who had jumped up from a kneeling position after officers shot his dog. *Smoak*, 460 F.3d at 783–84. And, in another case, we denied qualified immunity to officers who struck the legs of a subdued and handcuffed detainee who said he could not kneel. *Harris*, 583 F.3d at 367. We have also concluded that officers used excessive force when they repeatedly hit an arrestee who had been incapacitated and handcuffed. *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 687 (6th Cir. 2006).

When the facts are construed in Mitchell's favor, a reasonable officer in Wilkey or Brewer's shoes would have understood that tackling and punching (Wilkey) or hitting and kneeing (Brewer) a handcuffed arrestee who posed no immediate threat to safety, was generally compliant, and was not actively resisting, would violate the Fourth Amendment.

B.

Both deputies challenge Mitchell's claim that they are each liable for the other's use of force. An officer may be liable for another officer's use of excessive force when that officer "observed or had reason to know that excessive force would be or was being used" and "had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425,

7

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

429 (6th Cir. 1997). Here, Wilkey argues only that this claim must fail because Brewer never struck Mitchell. But Mitchell says Brewer did strike him, and the video does not clearly show otherwise. Likewise, Brewer argues that he had no duty to intervene because Wilkey used reasonable force as a matter of law. Again, a jury could conclude otherwise. We therefore lack jurisdiction to review either argument.

Brewer also contends that he lacked a realistic opportunity to intervene in Wilkey's use of force. *Id*. at 429; *Smoak*, 460 F.3d at 784–85. True, Wilkey might not have warned Brewer that he was about to take down Mitchell, but Brewer then held Mitchell against the ground while Wilkey repeatedly punched him. A reasonable juror could therefore find that Brewer had the opportunity and means to intervene in Wilkey's use of force. *Turner*, 119 F.3d at 429–30; *see also Goodwin v. City of Painesville*, 781 F.3d 314, 329 (6th Cir. 2015).

C.

The deputies challenge the denial of qualified immunity on Mitchell's claim that his strip search violated the Fourth Amendment. The Fourth Amendment prohibits unreasonable searches, but "what is reasonable depends on the context within which a search takes place." *Maryland v. King*, 569 U.S. 435, 461–62 (2013) (quotation omitted). Here, Mitchell's custodial arrest, based on probable cause, authorized a full warrantless search of his person and the property in his immediate possession for weapons or contraband. *United States v. Robinson*, 414 U.S. 218, 227 (1973); *see also Riley v. California*, 573 U.S. 373, 386 (2014). And when officers book a detainee into custody, they may conduct "a relatively extensive exploration" of the detainee's person and require "at least some detainees to lift their genitals or cough in a squatting position." *King*, 569 U.S. at 462 (citations omitted).

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

Even so, a search incident to arrest also "must be reasonable in its scope and manner of execution." *Id.* at 448. As in other Fourth Amendment contexts, reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In doing so, we "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

Here, the district court denied qualified immunity on Mitchell's claim about the scope and manner of the search incident to arrest—specifically, taking Mitchell's pants off, pulling his boxers down, and exposing and reaching into his anal area on the side of the road and in view of Menifee. The deputies argued the search was reasonable because it was a dark night, exposure was not prolonged, and Mitchell gave them probable cause to believe he was hiding evidence or contraband in his boxers. Wilkey and Brewer are entitled to qualified immunity unless Mitchell shows both (1) that the deputies violated a constitutional right and (2) that the right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). We only address the second requirement here.

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas*, 595 U.S. at 5 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). A case "directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)). "Specificity is especially important in the Fourth Amendment context" because "it is sometimes difficult for an officer to determine how the relevant legal doctrine" applies "to the factual situation the officer confronts." *Id.* at 6 (cleaned up) (quotation omitted). That means, except in an "obvious" case where the standard

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

provides the answer, the plaintiff must point to pre-existing Supreme Court or Sixth Circuit precedent that would have put a reasonable officer on notice that his specific conduct was unlawful. *Id.*; *see also Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992–93 (6th Cir. 2017). Mitchell has not done that.

The district court likewise acknowledged the absence of materially similar Supreme Court or Sixth Circuit cases that would have put Wilkey or Brewer on notice that their search of Mitchell would have violated the Fourth Amendment. Instead, the district court relied on *Timberlake v. Benton*, 786 F. Supp. 676, 691 (M.D. Tenn. 1992). That reliance was misplaced: among other reasons, *Timberlake* involved a strip search without probable cause of a minor who was never placed under arrest. Nor is this an "obvious" case in which the general rule from *Bell* would give "fair and clear" warning that that the specific conduct would violate that right. *See Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam). Here, the deputies asserted a legitimate interest in the search incident to arrest and had probable cause to believe Mitchell was still concealing evidence or contraband. "[W]hen the constitutional test is one of interest-balancing, the point at which the constitutional shades into the unconstitutional will necessarily be gray." *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 488 (6th Cir. 2017). Such is the case here.

D.

Finally, Wilkey and Brewer appeal from the denial of summary judgment on Mitchell's state-law assault, battery, and negligence claims. But our pendent jurisdiction reaches only those issues that are "inextricably intertwined" with the issues properly before us. *Browning v. Edmonson Cnty.*, 18 F.4th 516, 529–30 (6th Cir. 2021). And here our analysis of qualified immunity does not necessarily determine the merits of those state-law claims. We therefore lack pendent jurisdiction to consider that argument.

Nos. 23-5387/5388, *Mitchell v. Hamilton County, et al.*

\*          \*          \*

The district court's denial of qualified immunity on Mitchell's claims of excessive force and failure to intervene in the use of excessive force is affirmed; the court's denial of qualified immunity on Mitchell's claims of unreasonable search incident to arrest is reversed; and the defendants' appeals from the denial of summary judgment on the state-law claims are dismissed for lack of jurisdiction.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 23-5387/5388

JAMES MYRON MITCHELL,

    Plaintiff - Appellee,

LATISHA MENIFEE,

    Plaintiff,

    v.

HAMILTON COUNTY, TENNESSEE,

    Defendant,

DANIEL CAMERON WILKEY (23-5387) and BOBBY BREWER (23-5388), in their individual and official capacities as a Deputy Sheriffs for Hamilton County, Tennessee,

    Defendants - Appellants.

**FILED**
Mar 21, 2024
KELLY L. STEPHENS, Clerk

Before: KETHLEDGE, BUSH, and READLER, Circuit Judges.

# JUDGMENT

On Appeals from the United States District Court
for the Eastern District of Tennessee at Chattanooga.

THESE CASES were heard on the records from the district court and were submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the appeals are DISMISSED IN PART and the district court's order is otherwise AFFIRMED IN PART and REVERSED IN PART.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

Kelly L. Stephens, Clerk